

# General Security Indemnity Company of Arizona
## (THE "COMPANY")

**HOME OFFICES**
2338 W. ROYAL PALM ROAD,
SUITE J
Phoenix, AZ 85021

**ADMINISTRATIVE OFFICES**
One Seaport Plaza
199 Water Street, 21ˢᵗ Floor
New York, New York 10038-3526
Telephone No: +(1) 212-480-1900
U.S. Toll-Free (outside NY) 800-326-3299

## *PROPERTY DECLARATIONS*

### NOTICES

1) <u>Duty to Defend or Investigate</u>: The Company shall have no duty to defend or investigate any claim or suit unless and until all limits of all underlying insurance policies have been exhausted by payment of judgments, claims or settlements.

2) <u>Duty to Pay Claims</u>: If any underlying insurance policy has no duty to pay a claim for injury or damage for a reason other than exhaustion of an aggregate limit of insurance, then Company shall have no obligation to make any payment under this policy.

3) Coverage is excluded in any country and for any transaction where such coverage is unlawful as determined by the Government of the United States of America or its agencies.

4) Assignment of the Policy shall not be valid except with the written consent of the Company.

POLICY NUMBER: FA0064010-2019-1      RENEWAL OF POLICY NUMBER: FA0038015-2018-1

ITEM 1      NAMES AND ADDRESSES

Insured's Name:      JW ALUMINUM COMPANY

Insured's Address:      Street: 435 OLD MOUNT HOLLY ROAD

     City, State, Zip: GOOSE CREEK, SC 29445

     Country: USA

Broker's Name:      MARSH INC.

Broker's Address:      Street: 3560 LEXOX ROAD, SUITE 2400

     City, State, Zip: ATLANTA, GA 30326

     Country: USA

ITEM 2      POLICY PERIOD    From DEC 31, 2019   To DEC 31, 2020      at 12:01 AM standard time at the address of the Insured





# General Security Indemnity Company of Arizona
## (THE "COMPANY")

| **HOME OFFICES** | **ADMINISTRATIVE OFFICES** |
|---|---|
| 2338 W. ROYAL PALM ROAD, SUITE J | One Seaport Plaza |
| Phoenix, AZ 85021 | 199 Water Street, 21st Floor |
| | New York, New York 10038-3526 |
| | Telephone No: +(1) 212-480-1900 |
| | U.S. Toll-Free (outside NY) 800-326-3299 |

| ITEM 3 | COVERAGES |
|---|---|

| COVERAGES | LIMIT OF INSURANCE | PREMIUM FOR COVERAGE PROVIDED BY COMPANY |
|---|---|---|
| See Reference Number : <br><br> FA0064010-2019-1 | USD 31,250,000 being 12.5% of USD 250,000,000  ☒  each and every occurrence <br><br> Deductibles, attachment points and sublimits as per attached Reference Number.    FA0064010-2019-1 | See Reference <br><br> Number : <br><br> FA0064010-2019-1 |

Conformity to Statute. Any provision or stipulation of the Policy which is in conflict with the statutes of the state(s) wherein the property covered hereunder is located is hereby amended to conform to such statutes. The Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of the Policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in the Policy.

**ITEM 4**  PREMIUM FOR COVERAGE PROVIDED BY COMPANY

Coverage  **USD$ 90,125.00**

TRIA  TRIA coverage excluded except for where such coverage is mandatory, then the premium for such coverage is 0 (ZERO).

**USD$.....0.00**

Total (Coverage +TRIA)  **USD$ 90,125.00**

**ITEM 5**  CLAIMS NOTIFICATION

Any notification under this policy should be made to the following:

CLAIMS DEPARTMENT
GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA
SBSAmericasClaims@scor.com

IN WITNESS WHEREOF, General Security Indemnity Company of Arizona has caused the Policy to be executed by its duly authorized representative:

Signed at: _____New York, NY_____   _____   Date: ___April 29, 2020_____

Signature:_____   Print Name & Title: Louis Panas
VP, Senior Property Underwriter





# General Security Indemnity Company of Arizona
### (THE "COMPANY")

| **HOME OFFICES** | **ADMINISTRATIVE OFFICES** |
|---|---|
| 2338  W. ROYAL PALM ROAD, | One Seaport Plaza |
| SUITE J | 199 Water Street, 21st Floor |
| Phoenix, AZ 85021 | New York, New York 10038-3526 |
| | Telephone No: +(1) 212-480-1900 |
| | U.S. Toll-Free (outside NY) 800-326-3299 |

**Please be advised that this Policy will be issued through a surplus lines insurer on whose behalf we are authorized to act. Compliance with applicable laws and payment of taxes is the responsibility of the Insured, the insurance agent or insurance broker.**



by:

Date: 4/29/2020

**General Security Indemnity Company of Arizona**

This Endorsement, effective 12:01 am December 31, 2019 forms part of Policy Number:FA0064010-2019-1

issued to: JW Aluminum Company

By: General Security Indemnity Company of Arizona

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Policyholder Notice

## Terrorism Risk Insurance Program Reauthorization Act of 2019

This endorsement modifies insurance provided under this policy:

This Notice addresses requirements of the Terrorism Risk Insurance Act of 2002, and any amendments or extensions thereto, including the Terrorism Risk Insurance Program Reauthorization Act of 2019 (hereinafter "Act").

**Definitions**

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States: to be an act of terrorism; to be an act that is violent or dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside of the United States in the case of United States missions or certain air carriers or vessels; to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured terrorism loss" means any loss resulting from an "act of terrorism" (including an act of war, in the case of workers compensation) that is covered by primary or excess or umbrella property and casualty insurance issued by an insurer if the loss occurs in the United States or at United States missions or to certain air carriers or vessels.

"Insurer deductible" means the amount established in the Act that must be paid by the insurer issuing your policy before the federal government can pay its share of the compensation for insured terrorism losses.

**Notice of Federal Share of Losses, Premium Charge, and potential reduction in coverage under your Policy**

YOU SHOULD KNOW THAT COVERAGE WHICH MAY BE PROVIDED BY THIS POLICY FOR INSURED TERRORISM LOSSES IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR, BIOLOGICAL OR CHEMICAL EVENTS. UNDER THIS FORMULA, THE UNITED STATES PAYS 80% OF INSURED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**General Security Indemnity Company of Arizona**

This Endorsement, effective 12:01 am December 31, 2019 forms part of Policy Number:FA0064010-2019-1

issued to: JW Aluminum Company

By: General Security Indemnity Company of Arizona

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If you elected to purchase coverage for insured terrorism losses, the premium charge for this coverage is shown in the Declarations or an extension to the Declarations.

If you rejected this offer of coverage, coverage for statutorily mandated fire coverage resulting from such acts, if applicable to your coverage, is provided at no additional premium charge

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



## General Security Indemnity Company of Arizona

This Endorsement, effective 12:01 am December 31, 2019 forms part of Policy Number:FA0064010-2019-1

issued to: JW Aluminum Company

By: General Security Indemnity Company of Arizona

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Exclusion of Certified Acts of Terrorism
### Exclusion of Other Acts of Terrorism
### Exclusion of Non-US Terrorism

This endorsement modifies insurance provided under this policy:

### 1. Definitions

"We, "us," "our" and "insurer" means General Security Indemnity Company of Arizona.

"You" means the insured listed in the declarations to this policy.

"United States" means as defined by Section 102(15) of the federal Terrorism Risk Insurance Act and any amendments thereto

### 2. Definitions of Certified Act of Terrorism and Other Act of Terrorism,

"**Certified act of terrorism**" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism according to the U.S. federal Terrorism Risk Insurance Act and any subsequent federal law amending it (collectively, "TRIA"). The criteria contained in TRIA for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, that are attributable to all types of insurance that is subject to the TRIA; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"**Other act of terrorism**" means any act or activity, which is not certified as a "certified act of terrorism" pursuant to TRIA, against persons, organizations or property of any nature, located anywhere in the world, by any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s):

   a. That involve the following or preparation for one or more of the following:

      1. Use or threat of force or violence; or

      2. Commission or threat of a dangerous act; or

      3. Commission or threat of an act that interferes with or disrupts an electronic, photonic, optoelectronic, communication, information, or mechanical system (including the use or operation, as a means of inflicting harm, of any computer, computer system, computer software program, malicious or improperly written code, computer virus or trojan, or any other electronic, photonic or optoelectronic system); and

   b. When one or both of the following applies:

© 2019 General Security Indemnity Company of Arizona
All Rights Reserved.
May not be copied without permission.

**General Security Indemnity Company of Arizona**

This Endorsement, effective 12:01 am December 31, 2019 forms part of Policy Number:FA0064010-2019-1

issued to: JW Aluminum Company

By: General Security Indemnity Company of Arizona

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

1. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy or put the public, or any section of the public, in fear; or

2. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology or any similar purpose.

**3. Exclusion of Certified Act of Terrorism and Other Act of Terrorism**

The provisions of this endorsement shall control over any other conflicting provisions in the policy. Except as required by Paragraph 6, this policy does not apply to any bodily injury, property damage, personal injury, advertising injury, loss, damage, cost, claim or suit, expense, punitive damages, exemplary damages, or any other demand for money under the policy to which this endorsement is attached, or any underlying insurance that is caused by, exacerbated by or which arises, directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism."

**4. Exclusion of Actions in Relation to a Certified Act of Terrorism and an Other Act of Terrorism**

This policy does not apply to loss, damage, cost or expense of any nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, retaliating against, suppressing or in any way relating to a "certified act of terrorism" or an "other act of terrorism."

**5. Exclusion of Punitive and Exemplary Damages**

This policy does not cover claims for punitive and exemplary damages that are caused by, exacerbated by or which arise, directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism."

**6. Non-applicability of Exclusion to Certain Fire Losses**

If a "certified act of terrorism" or an "other act of terrorism" that is located anywhere

a. within the United States, or
b. to an air carrier (as defined in section 40102 of title 49, United States Code), or
c. to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States),

results in fire, and the direct physical loss or damage to property insured under this policy is located in any state which, at the time of such fire, has certain mandatory fire following coverage requirements following a "certified act of terrorism" or an  "other act of terrorism," the exclusion provided by this endorsement shall not apply to such loss or damage caused by that fire, but shall be subject however to all  the terms and conditions of this policy as modified by application of all of the following provisions:

a. Coverage for fire following a "certified act of terrorism" or an "other act of terrorism" applies, as required to comply with the minimum requirements to be covered under statutes, regulations and judicial decisions applicable to this policy, only to direct physical loss or

© 2019 General Security Indemnity Company of Arizona
All Rights Reserved.
May not be copied without permission.

Date: 4/29/2020

**General Security Indemnity Company of Arizona**

This Endorsement, effective 12:01 am December 31, 2019 forms part of Policy Number:FA0064010-2019-1

issued to: JW Aluminum Company

By: General Security Indemnity Company of Arizona

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

damage to property insured under this policy, excluding time element coverage and coverage provided under business income and/or extra expense  coverage, legal liability coverage, leasehold interest Coverage, or the net leasehold coverage, where such exclusion is permitted, and

b. Such coverage for fire following a "certified act of terrorism" or an "other act of terrorism" is limited,  as required to comply with the minimum requirements to be covered under statutes, regulations and judicial decisions applicable to this policy to the amount which it would cost to repair or replace the insured property, on the date of loss, with material of like kind and quality, with proper deduction for obsolescence and physical depreciation within two consecutive calendar years after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture.

**7. Minimum Requirements of Coverage**

Notwithstanding any other provisions of this policy, this policy will pay only for the amount of damages required to comply with the minimum requirements to be covered under statutes, regulations and judicial decisions applicable to this policy.  If the applicable law or regulation in any state permits the Commissioner or Director of Insurance or anyone within the state insurance department to grant us or any other insurer approval to vary the terms and conditions of the standard fire policy, and such approval has been granted in that state as of the effective date of this policy, this policy shall not provide coverage beyond the minimum requirements of the terms and conditions approved by such person of authority.

In the event that any portion of this exclusion or clause thereof is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

**8. No Coverage Implied**

The terms and conditions of this policy shall always apply, and the limitations of any exclusion or exceptions to such exclusion, or the inapplicability or omission of an exclusion, shall not serve to create coverage for any loss which would otherwise be excluded under this policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



Date: 4/29/2020



# ELECTRONIC DATA ENDORSEMENT A (NMA 2914)

**1.    Electronic Data Exclusion**

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

a)    This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programs, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes, but is not limited to, 'Trojan Horses', 'worms' and 'time or logic bombs'.

b)    However, in the event that a peril listed below results from any of the matters described in paragraph a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils:
Fire
Explosion

**2.    Electronic Data Processing Media Valuation**

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any ELECTRONIC DATA contained thereon, providing such media is repaired, replaced or restored.

Such cost of reproduction shall include all reasonable and necessary amounts, not to exceed USD_50,000,000 any one loss, incurred by the Assured in recreating, gathering and assembling such ELECTRONIC DATA.

If the media is not repaired, replaced or restored, the basis of valuation shall be the cost of the blank media.

However, this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

## ENDORSEMENT

### Sanction Limitation and Exclusion Clause

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

All other terms and conditions remain unchanged.



## COMMUNICABLE DISEASE EXCLUSION

**The purpose of this Exclusion is to specifically clarify the intent of the renewal Policy regarding damage or expense caused by communicable disease.  It is not meant to indicate that any cover for such damage or expense is currently provided.**

**This Endorsement modifies the insurance provided pursuant to the Policy as follows:**

1.      This policy, subject to all applicable terms, conditions and exclusions, covers losses attributable to direct physical loss or physical damage occurring during the period of insurance. Consequently and notwithstanding any other provision of this policy to the contrary, this policy does not insure any loss, damage, claim, cost, expense or other sum, directly or indirectly arising out of, attributable to, or occurring concurrently or in any sequence with a Communicable Disease or the fear or threat (whether actual or perceived) of a Communicable Disease.

2.       For the purposes of this endorsement, loss, damage, claim, cost, expense or other sum, includes, but is not limited to, any cost to clean-up, detoxify, remove, monitor or test:

   2.1. for a Communicable Disease, or

   2.2. any property insured hereunder that is affected by such Communicable Disease.

3.       As used herein, a Communicable Disease means any disease which can be transmitted by means of any substance or agent from any organism to another organism where:

   3.1. the substance or agent includes, but is not limited to, a virus, bacterium, parasite or other organism or any variation thereof, whether deemed living or not, and

   3.2. the method of transmission, whether direct or indirect, includes but is not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between organisms, and

   3.3. the disease, substance or agent can cause or threaten damage to human health or human welfare or can cause or threaten damage to, deterioration of, loss of value of, marketability of or loss of use of property insured hereunder.

4.      This endorsement applies to all coverage extensions, additional coverages, exceptions to any exclusion and other coverage grant(s).

All other terms and conditions of the Policy remain the same.



JW ALUMINUM COMPANY

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy, pages 1 – 61.

Provided that:

1.      The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.      The liability of each of the Insurers shall not exceed the Participation Limit set against its name with the exception of loss adjustment and professional fees which cost shall be 100% assume by the Insurers on each applicable layer of Insurance.

3.      In the event an occurrence results in liability payable under more than one policy issued to the Named Insured being insured, coinsured and/or reinsured in whole or in part by the Company or any of its affiliated or agent companies, the maximum amount payable in the aggregate under all such policies shall be the applicable limits of liability indicated in this Policy regardless of the number of coverages, locations or perils involved.

**Insured:**  JW Aluminum Company, JW Holding Company, JW Aluminum Jackson Inc. and its affiliated, subsidiary, and associated companies and/or corporations and the insured's interest in partnerships and joint ventures as now exist or may hereafter be constituted or acquired and any party in interest which the insured is responsible to insure

**Policy Period:  December 31, 2019 to December 31, 2020**

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurers | Policy No. | Participation | Signature |
|---|---|---|---|
| ACE American Insurance Company | EPRN14338688 | 45% | |
| Westport Insurance Corporation | NAP045191707 | 27.5% | |
| AIG Specialty Insurance Company | 18257132 | 15% | |
| General Security Indemnity Company of Arizona | FA0064010-2019-1 | 12.5% | _(signature)_ |

Producer:
Marsh USA, Inc.
3560 Lenox Road, Suite 2400
Atlanta, GA  30326

by:
Date: 4/29/2020

JW ALUMINUM COMPANY

**TABLE OF CONTENTS**
**(Order In Which They Appear)**

Page

DECLARATIONS........................................................................................4
DEDUCTIBLES (PER OCCURRENCE):...........................................................6
ALL-RISK POLICY....................................................................................8
I. INSURING AGREEMENT........................................................................8
A. Perils Insured.....................................................................................8
B. Territorial Limits.................................................................................8
C. Property Insured.................................................................................8
D. Newly Acquired Locations....................................................................9
E. Additional Coverages..........................................................................9
    1.  Debris Removal..........................................................................9
    2.  Demolition and Increased Cost of Construction.............................9
    3.  Expediting Expense...................................................................10
    4.  Fire and Police Department Service Charge..................................10
    5.  Hazardous Substances or Contaminants......................................10
    6.  Miscellaneous Unnamed Locations.............................................10
    7.  Pairs and Sets..........................................................................11
    8.  Transit.....................................................................................11
II. EXCLUSIONS......................................................................................12
III. PREMIUM.........................................................................................15
IV. CONDITIONS......................................................................................16
A. Abandonment.....................................................................................16
B. Action Against Company......................................................................16
C. Appraisal............................................................................................16
D. Assignment.........................................................................................16
E. Assistance and Cooperation of the Insured............................................16
F. Brands and Labels...............................................................................16
G. Cancellation.......................................................................................16
H. Company's Options.............................................................................17
I. Deductibles.........................................................................................17
J. Due Diligence......................................................................................17
K. Errors in Description............................................................................17
L. Inspection...........................................................................................17
M. Limits and Sublimits of Liability..........................................................17
N. Loss Payable.......................................................................................18
O. Misrepresentation...............................................................................18
P. Other Insurance..................................................................................18
Q. Report of Values.................................................................................18
R. Requirements In Case of Loss..............................................................19
S. Salvage and Recovery.........................................................................19
T. Special State Requirements..................................................................19
U. Subrogation........................................................................................19
V. Suspension.........................................................................................20
W. Term of Insurance..............................................................................20
X. Vacant/Unoccupied Premises...............................................................20
Y. Valuation............................................................................................20
V. DEFINITIONS......................................................................................21
A. Earth Movement..................................................................................21
B. Flood..................................................................................................21
C. Hazardous Substances or Contaminants................................................21
D. Insured...............................................................................................22
E. Occurrence.........................................................................................22
F. Premises Described..............................................................................22

by: _____

Date: 4/29/2020

**JW ALUMINUM COMPANY**

G. Product Recall ............................................................................................................22
H. Time Element...............................................................................................................22
I.  Valuable Papers and Records.....................................................................................22
ENDORSEMENT - ACCOUNTS RECEIVABLE ..............................................................23
ENDORSEMENT - AUTHORITIES EXCLUSION ............................................................24
ENDORSEMENT - BIOLOGICAL OR NUCLEAR EXCLUSION ......................................25
ENDORSEMENT - BUSINESS INTERRUPTION ACTUAL LOSS SUSTAINED ..............26
ENDORSEMENT - BRIDGE WORDING............................................................................30
ENDORSEMENT - CONTINGENT BUSINESS INTERRUPTION .....................................31
ENDORSEMENT - CONTROL OF DAMAGED MERCHANDISE .....................................35
ENDORSEMENT - COURSE OF CONSTRUCTION ........................................................36
ENDORSEMENT - DATA DISTORTION / CORRUPTION EXCLUSION ...........................37
ENDORSEMENT - EDP EQUIPMENT & MEDIA..............................................................38
ENDORSEMENT - EXTENDED PERIOD OF INDEMNITY ..............................................39
ENDORSEMENT - EXTRA EXPENSE .............................................................................40
ENDORSEMENT - FINE ARTS ........................................................................................43
ENDORSEMENT - INGRESS / EGRESS .........................................................................44
ENDORSEMENT - LEASEHOLD INTEREST ...................................................................45
ENDORSEMENT - NAMED WINDSTORM DEFINITION ..................................................46
ENDORSEMENT - POLITICAL RISK EXCLUSION..........................................................47
ENDORSEMENT - SERVICE INTERRUPTION ENDORSEMENT ...................................48
ENDORSEMENT - TEMPORARY REMOVAL OF PROPERTY .........................................49
ENDORSEMENT - VALUABLE PAPERS AND RECORDS ENDORSEMENT ...................50
ENDORSEMENT - NAMED SUPPLIERS AND CUSTOMERS ..........................................51
ENDORSEMENT - PROFESSIONAL FEES .....................................................................52
ENDORSEMENT - REPORTED VALUES .........................................................................53
ENDORSEMENT - SCHEDULE OF LOCATIONS ...........................................................54
ENDORSEMENT - NAMED ADJUSTER ..........................................................................55
ENDORSEMENT – RADIOACTIVE CONTAMINATION....................................................56
ENDORSEMENT – MOLTEN MATERIAL.........................................................................57
ENDORSEMENT – SUE AND LABOR .............................................................................58
ENDORSEMENT – CONFLICT IN WORDING ENDORSEMENT .....................................59
APPENDIX - EARTHMOVEMENT ZONES AND TIER 1 AND TIER 2 WIND AREAS ....................................



**JW ALUMINUM COMPANY**

## DECLARATIONS

**NAMED INSURED:**   JW ALUMINUM COMPANY, JW HOLDING COMPANY, JW ALUMINUM JACKSON INC. AND ITS AFFILIATED, SUBSIDIARY, AND ASSOCIATED COMPANIES AND/OR CORPORATIONS AND THE INSURED'S INTEREST IN PARTNERSHIPS AND JOINT VENTURES AS NOW EXIST OR MAY HEREAFTER BE CONSTITUTED OR ACQUIRED AND ANY PARTY IN INTEREST WHICH THE INSURED IS RESPONSIBLE TO INSURE

**MAILING ADDRESS:**   435 OLD MT. HOLLY ROAD
GOOSE CREEK, SC  29445

**LOSS PAYABLE CLAUSE:**   LOSS, IF ANY, TO BE ADJUSTED WITH AND PAYABLE TO INSURED, WHOSE RECEIPT SHALL CONSTITUTE A RELEASE IN FULL OF ALL LIABILITY UNDER THIS POLICY AS REGARDS SUCH LOSS.

**TERM OF INSURANCE:**   FROM 12/31/2019 TO 12/31/2020 AT 12:01 A.M. STANDARD TIME, AT THE LOCATION OF THE PROPERTY INVOLVED.

**PREMIUM:**   *USD $721,001 100% Annual*

**LIMIT OF LIABILITY:**   THE LIMIT OF LIABILITY UNDER THIS POLICY SHALL IN NO EVENT EXCEED THE AMOUNT SHOWN BELOW FOR ANY ONE ACCIDENT OR DISASTER OR ANY ONE SERIES OF ACCIDENTS OR DISASTERS ARISING OUT OF ANY ONE OCCURRENCE.

**POLICY LIMIT OF LIABILITY:**   $250,000,000 ANY ONE OCCURRENCE

**SUBLIMITS: SUBLIMITS ARE PER OCCURRENCE UNLESS SHOWN OTHERWISE.**

THE SUBLIMITS BELOW ARE PART OF AND NOT IN ADDITION TO THE POLICY LIMIT OF LIABILITY. SUBLIMITS ARE 100% AND ARE SUBJECT TO PERCENTAGE PARTICIPATION AS SPECIFIED IN THE PARTICIPATION PAGE.

| | | | |
|---|---|---|---|
| A. | Earth Movement in Non High Hazard Zones: | $100,000,000 | Annual Aggregate, except; |
| | Earth Movement in Pacific Northwest Zones: | $ 40,000,000 | Annual Aggregate, except; |
| | Earth Movement in New Madrid Zones: | $ 40,000,000 | Annual Aggregate, except; |
| | Earth Movement in High Hazard Zones and the entire States of California, Alaska, Hawaii and the Island of Puerto Rico: | No Coverage | |
| B. | Flood (except locations in Zones A&V): | $100,000,000 | Annual Aggregate, except; |
| | Flood in locations in Zones A&V (including subzones) and Flood in St. Louis, MO, Combined: | $ 20,000,000 | Annual Aggregate |
| C. | Named Windstorm: | $200,000,000 | Tier 1 Only |
| D. | Accounts Receivable: | $ 5,000,000 | |
| E. | Business Interruption: | $ 80,153,418 | |

by: _____
Date: 4/29/2020

**JW ALUMINUM COMPANY**

| | | | |
|---|---|---|---|
| F. | Business Interruption Extended Period of Indemnity: | 180 Days | |
| G. | Civil / Military Authority (Business Interruption Section): | 45 Consecutive Days; 10 Mile Limit | |
| H. | Contingent Business Interruption (Direct Suppliers/ Receivers): | $ 5,000,000 | |
| I. | Contingent Business Interruption (Unnamed Direct Suppliers/Receivers): | $ 2,500,000 | |
| J. | Debris Removal: | $ 25,000,000 | or 25% of adjusted direct property loss, whichever is greater |
| K. | Electronic Data Processing and Media: | $ 50,000,000 | |
| L. | Errors and Omissions: | $ 5,000,000 | |
| M. | Expediting Expense: | $ 5,000,000 | |
| N. | Extra Expense: | $ 10,000,000 | |
| O. | Fine Arts: | $ 1,000,000 | |
| P. | Demolition and Increased Cost of Construction: | $ 25,000,000 | |
| Q. | Impounded Water: | 30 Consecutive Days | |
| R. | Ingress/Egress: | 45 Consecutive Days; 10 Mile Limit | |
| S. | Professional Fees: | $ 1,000,000 | |
| T. | Newly Acquired Property: | $ 25,000,000 | 90 Day Reporting |
| U. | Service Interruption (Combined PD & TE): | $ 25,000,000 | within 5 miles of scheduled plant location |
| V. | Hazardous Substances: | $ 1,000,000 | |
| W. | Property in the Course of Construction: | $ 10,000,000 | |
| X. | Radioactive Contamination: | $ 5,000,000 | |
| Y. | Sue and Labor: | $ 10,000,000 | |
| Z. | Transit: | $ 5,000,000 | |
| AA. | Miscellaneous Unnamed Locations: | $ 5,000,000 | |
| BB. | Valuable Papers and Records: | $ 5,000,000 | |
| CC. | Fire Fighting Expenses: | $ 1,000,000 | |
| DD. | Temporary Removal of Property: | $ 10,000,000 | 90 Days |
| EE. | Royalties: | $ 1,000,000 | |
| FF. | Water, Liquid, Power of Molten Material Damage: | $ 10,000,000 | |

by:
Date: 4/29/2020

| GG. | Boiler and Machinery: | $250,000,000 | Per Accident, except; |
| | Ammonia Contamination: | $ 1,000,000 | Per Accident, except; |
| | Hazardous Materials: | $ 1,000,000 | Per Accident |

## DEDUCTIBLES (PER OCCURRENCE):

ALL DEDUCTIBLES LISTED BELOW ARE PER OCCURRENCE EXCEPT WITH RESPECT TO COVERAGE PROVIDED UNDER THE BOILER & MACHINERY ENDORSEMENT (IF PROVIDED) WHICH SHALL BE ANY ONE ACCIDENT.

PROPERTY DAMAGE:   $1,000,000 EXCEPT

FLOOD ZONE A (INCLUDING SUBZONES) – PD:   2% OF THE REPORTED PROPERTY VALUES AT THE LOCATION(S) INVOLVED IN THE LOSS SUBJECT TO A MINIMUM OF $1,000,000 PER OCCURRENCE, EXCESS OF AVAILABLE NFIP PROGRAM LIMITS WHETHER PURCHASED OR NOT

NAMED WINDSTORM - PD:   2% OF THE REPORTED PROPERTY VALUES AT THE LOCATION(S) INVOLVED IN THE LOSS SUBJECT TO A MINIMUM OF $500,000 PER OCCURRENCE AT LOCATIONS IN TIER 1 COUNTIES PER APPENDIX.

EARTH MOVEMENT – PD:   2% OF THE REPORTED PROPERTY VALUES AT THE LOCATION(S) INVOLVED IN THE LOSS SUBJECT TO A MINIMUM OF $1,000,000 PER OCCURRENCE AT LOCATIONS IN NEW MADRID AND PACIFIC NORTHWEST ZONES PER APPENDIX.

TRANSIT:   $250,000 PER CONVEYANCE

TIME ELEMENT:   10 TIMES 100% AVERAGE DAILY BI VALUE* AT THE TIME OF LOSS, EXCEPT;

$826,000 APPLIES TO MOUNT HOLLY LOCATION.

SERVICE INTERRUPTION:   48 HOUR WAITING PERIOD AND THE ABOVE DEDUCTIBLES SHALL APPLY.

*AS RESPECTS BUSINESS INTERRUPTION, WITH RESPECT TO ALL CLAIMS FOR LOSS, DAMAGE, OR EXPENSE ARISING OUT OF ANY ONE OCCURRENCE, FROM THE TOTAL AMOUNT OF ANY LOSS, DAMAGE OR EXPENSE FOR WHICH THE COMPANY WOULD BE LIABLE UNDER BUSINESS INTERRUPTION SECTION, THERE SHALL FIRST BE DEDUCTED THE AMOUNT OBTAINED BY MULTIPLYING "THE 100% PLANT BUSINESS INTERRUPTION DAILY VALUE" DECLARED BY THE INSURED AT THE TIME OF LOSS BY THE FACTOR OF 10 AND THE INSURANCE UNDER SAID ITEM SHALL NOT APPLY TO ANY PART OF SUCH AMOUNT DEDUCTED.

"THE 100% PLANT BUSINESS INTERRUPTION DAILY VALUE" DECLARED BY THE INSURED AT THE TIME OF SUCH LOSS, DAMAGE OR EXPENSE AS DESCRIBED ABOVE SHALL MEAN THE ACTUAL AMOUNT OF GROSS EARNINGS, LESS CHARGES AND EXPENSES WHICH DO NOT NECESSARILY CONTINUE DURING THE INTERRUPTION OF BUSINESS, THAT WOULD HAVE BEEN EARNED HAD NO LOSS OR DAMAGE OCCURRED, DIVIDED BY THE ACTUAL NUMBER OF WORKING DAYS, HAD NO LOSS OCCURRED DURING THE PERIOD OF INTERRUPTION OF THE BUSINESS WITH DUE

by: _____

Date: 4/29/2020

CONSIDERATION BEING GIVEN TO THE EXPERIENCE OF THE BUSINESS BEFORE THE DATE OF LOSS OR DAMAGE AND THE PROBABLE EXPERIENCE THEREAFTER HAD NO LOSS OCCURRED.

AS RESPECTS REAL AND PERSONAL PROPERTY , ALL CLAIMS FOR LOSS, DAMAGE OR EXPENSE ARISING OUT OF ANY ONE OCCURRENCE SHALL BE ADJUSTED AS ONE CLAIM AND FROM THE AMOUNT OF EACH SUCH ADJUSTED CLAIM THERE SHALL BE DEDUCTED THE SUM STATED ON THE DECLARATIONS PAGE.

DEDUCTIBLES FOR PROPERTY DAMAGE AND TIME ELEMENT SHALL BE APPLIED SEPARATELY.

**PROPERTY COINSURANCE:**              NOT APPLICABLE

**BUSINESS INTERRUPTION COINSURANCE:**  NOT APPLICABLE

by: _____

Date: _4/29/2020_

## ALL-RISK POLICY

### I.   INSURING AGREEMENT

In consideration of the premium paid, and subject to the terms and conditions of this Policy, the Company (ies) listed on the Participation Page, hereafter referred to as the "Company", agree to pay the Named Insured, as stated in the Declarations, for loss as described in this Policy.

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is, and is not, covered.

Words and phrases which begin with a capital letter, other than those which begin a sentence, have special meaning.  Refer to the Definition section or to the applicable section headings of the policy or any endorsements thereto.

###### A.   Perils Insured

This policy insures against all risks of direct physical loss or damage to Property Insured from perils not otherwise excluded, subject to the terms and conditions of this policy.

In the event of such direct physical loss or damage to any Property Insured at the Premises Described in the Declarations, and such damage, without the intervention of any other independent cause, results in a sequence of events which causes physical damage to other Property Insured by this policy, then this policy will cover such resulting loss or damage. Nothing in this clause shall be deemed to extend this insurance to property which is otherwise specifically excluded from coverages by the terms of this policy.

###### B.   Territorial Limits

This policy covers Property Insured within the fifty (50) states of the United States of America, the District of Columbia, Puerto Rico and Canada;

###### C.   Property Insured

This policy covers the following kinds of property at the Premises Described in the Declarations unless otherwise excluded:

1.   Real property, including improvements and betterments, owned by the Insured, or in which the Insured has an insurable interest; and

2.   Personal property owned by the Insured; and

3.   Personal property of others which the Insured, prior to a loss, has agreed to insure against the types of losses covered by this policy; and

4.   Personal property of others in the custody of the Insured and for which the Insured is legally liable; but only to the extent of the Insured's legal liability therefore.  This Company agrees to defend any suit against the Insured alleging liability for the damage or destruction of such personal property, even if the allegations of the suit are false, fraudulent, or groundless.  The Company may make such investigation or settlement of such suit as the Company deems appropriate.

5.   Personal property of employees, other than motor vehicles.

by: _____

Date: _4/29/2020_

This policy also covers the following kinds of property, owned by the Insured or others in the custody of the Insured and for which the Insured is legally liable:

6. electrical transmission and distribution lines, line transformers, towers and poles, cables, pipes and pipelines, and equipment or apparatus connected therewith while situated on or within 1 mile of the Premises Described in the Declarations.

D. Newly Acquired Locations

Subject to its terms and conditions, this policy also covers property at Newly Acquired Locations, rented, purchased or in the course of construction, acquired after the inception date of this policy for a period of ninety (90) days from the date of acquisition. Permanent coverage may be provided subject to notification to and acceptance by the Company at terms to be agreed upon at the time of acceptance. There shall be no liability under this coverage for loss or damage caused by or resulting from the perils of Zone A Flood or Earth Movement in Alaska, California, Hawaii and Puerto Rico.

The Company's total liability under this provision shall be limited to the Sublimit of Liability for Newly Acquired Locations specified in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

E. Additional Coverages

1. Debris Removal

This policy shall also pay the cost of removing debris of Property Insured that is destroyed or damaged by a Peril Insured herein at Premises Described in the Declarations. The Company's total liability for such payment shall not exceed the greater of (1) 25% of the Company's liability, prior to the application of any deductible(s), for the direct physical loss or damage to Property Insured which necessitated the debris removal, or (2) $25,000,000. However, in no event shall the Company's liability exceed the amount actually expended by the Insured for the removal of debris. This provision does not include the cost of removing Hazardous Substances or Contaminants from Property Excluded, nor for the cost to remove, restore or replace such property. The coverage that is provided by this provision is part of, and not in addition to, the limits of liability specified elsewhere in this policy.

No liability shall exist under this provision unless such costs are reported to the Company within one hundred eighty (180) days of the date of the Occurrence or the expiration of this policy, whichever shall be earlier.

2. Demolition and Increased Cost of Construction

If at the time of any direct physical loss or damage insured against by this policy there is in force any law, ordinance, rule or regulation regulating the construction, repair, replacement or use of buildings or structures, then this policy is extended to cover:

a. the additional loss sustained in demolishing any undamaged portion of the buildings or structures necessitated by such law, ordinance, rule or regulation; and

b. the cost incurred in actually rebuilding both the damaged and demolished portions of such buildings or structures in a manner to satisfy such law, ordinance, rule or regulation.

No liability is assumed under this provision for any increase of loss associated with the enforcement of any law or ordinance, which requires the Insured, or others, to:

by: _____

Date: 4/29/2020

**JW ALUMINUM COMPANY**

a.  test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess, the effects of Hazardous Substances or Contaminants;

The total liability under this provision shall not exceed the actual expenditure incurred in demolishing the undamaged portion of the building(s) or structure(s) involved, plus the lesser of the following:

a.  the actual expenditure incurred, not including the cost of land, in rebuilding on another site; or

b.  the cost of rebuilding on the same site.

The Company's total liability under this provision shall not exceed the greater of $25,000,000 or, where specified, the Sublimit of Liability for Demolition and Increased Cost of Construction shown in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

3. Expediting Expense

This policy shall also pay for the reasonable extra cost to make temporary repairs and to expedite the permanent repair or replacement of Property Insured damaged by a Peril Insured, including overtime and the extra cost of express or other rapid means of transportation.

The Company's total liability under this provision shall be limited to the Sublimit of Liability for Expediting Expenses specified in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

4. Fire and Police Department Service Charge

This policy is extended to cover reasonable expenses charged by fire or police departments as a result of a loss as insured hereunder.

5. Hazardous Substances or Contaminants

If, as a result of an Occurrence insured hereunder, any property on the Premises Described in the Declarations is damaged, contaminated or polluted by Hazardous Substances or Contaminants, the Company shall be liable under this policy and any of its endorsements, for the additional expenses incurred for cleanup, repair or replacement, or disposal of that damaged, contaminated or polluted property.  As used here, additional expenses shall mean expenses incurred beyond those for which the Company would have been liable if no Hazardous Substances or Contaminants had been involved in the Occurrence.

The Company's total liability under this provision shall be limited to the greater of $1,000,000 or, where specified, the Sublimit of Liability for Hazardous Substances or Contaminants shown in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

6. Miscellaneous Unnamed Locations

This policy is extended to cover Property Insured while at fixed locations not included in the Premises Described in the Declarations.  This coverage applies to physical loss or damage and Time Element coverages, excluding Flood Zones A and V (including subzones) and Earth Movement in Alaska, California, Hawaii and Puerto Rico.

by:

Date: 4/29/2020

The Insured shall, as of the inception date of this policy, and within ninety (90) days of each anniversary thereafter, send to the Company a statement of the insurable values of such locations as of the most recent inception or anniversary date. These statements shall be the basis for premium to be charged for this coverage. Failure to provide such statement in the time required shall void this extension.

Coverage under this extension shall not apply to signs, tracks, trestles, bridges, tunnels, electrical transmission and distribution lines, line transformers, towers and poles, cables, pipes and pipelines, equipment or apparatus connected to any of the preceding, property contained within any vehicle or other conveyance, or property in the due course of transit.

Liability under this provision shall not exceed the greater of $5,000,000 or, where specified, the Sublimit of Liability for Miscellaneous Unnamed Locations shown in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

7. Pairs and Sets

In the event of direct physical loss or damage to any article or articles which are part of a pair or set, this policy is extended to cover the fair and reasonable proportion of the pair or set. Due consideration shall be given to the importance of said article or articles, but in no event shall such loss or damage be construed automatically to mean the total loss of the pair or set, and due consideration shall be given to any remaining value.

8. Transit

This policy is extended to cover direct physical loss or damage not otherwise excluded to Property Insured while in transit within the territorial limits of this policy. This shall include Property Insured while in transit in the coastal waters of the United States or Puerto Rico to a distance of twelve (12) miles, Property Insured while in transit between the continental United States or Alaska and Canada, or Property Insured while in transit between the continental United States and Alaska. This includes any means of conveyance, from the commencement of loading and continuously thereafter, including the location of any repair, temporary storage, consignment or exhibition, including deviation and delay, until unloaded at the place of final destination. This policy shall also pay for direct physical loss or damage to property sold and shipped by the Insured, in which the Insured retains an interest, under terms terminating the shipper's responsibility short of points of delivery, and shall pay for direct physical loss or damage caused by any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery, or resulting from the acceptance by the Insured or by its agents of fraudulent bills of lading, shipping and delivery orders, or similar fraudulent documents.

The Insured may accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting their liability, but this provision shall not inure to the benefit of any carrier, bailee, warehouseman, or processor.

The Insured's rights shall not be prejudiced by any agreements exempting lightermen from liability.

This policy excludes property of others, and the Insured's legal liability therefor, being hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier as defined by either the Interstate Commerce Commission or other regulatory agencies. In addition, this provision shall not include coverage for any conveyance used as the mode of transportation for property in transit.

This policy excludes property on waterborne shipments to and from any point and Hawaii, Alaska and Puerto Rico, except within their 12 miles of coastal waters; but shall not exclude

by: _____
Date: 4/29/2020

waterborne shipments between the continental United States and Alaska while within the coastal waters of the United States or Canada to a distance of twelve (12) miles.

The Company's total liability under this provision shall be limited to the Sublimit of Liability for Transit specified in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

## II.   EXCLUSIONS

### A.   Property Excluded

This policy does not insure against loss or damage to the following property:

1. Accounts, bills, currency, deeds, evidences of debt or title, money, notes, securities, fine arts, jewelry, furs, precious metals, or precious stones.

2. Land, land improvements, water, crops, animals, shrubs, plants, trees or standing timber. This exclusion shall apply to the cost of reclaiming, restoring, or repairing any of the foregoing. "Land Improvements," as used herein, shall mean any alteration in the natural condition of land including, without limitation, grading, and earthen dikes or similar works. "Land Improvements," as used herein, shall also mean open pit or surface mines, including all benches, berms, cuts, walls, roads, and other land structures constituting a part of such mine, including all unmined ore. However, "Land Improvements" shall not mean pavements or sidewalks.

3. Aircraft, watercraft or spacecraft; vehicles, if such vehicles are otherwise insured for physical loss or damage.

4. Underground mines, tunnels, wells or caverns, and any property contained therein.

5. Dams, watershafts, power tunnels, dikes, gates and flumes.

6. Retaining walls not constituting part of a building, docks, piers, or wharves, and property located thereon, all when such loss is caused by ice, water pressure, or collision.

7. Offshore property, except that structures and their contents extending from land or shore, and floating docks permanently moored to a dock, river bank or shore are not to be considered as offshore.

8. Nuclear reactor power plants, including all auxiliary property on the site or any other nuclear reactor installation.

9. Any nuclear fuel or raw materials used in the nuclear fuel process at any point in the fuel cycle.

10. Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers.

11. Raw, in-process, or finished stock or materials when the loss is caused by errors, omissions, or defects in the design or manufacturing process or by defective materials which result in damage to said stock or materials while it is being manufactured, processed, tested, or worked upon.

12. Machinery, equipment or other property when such property is otherwise protected by the contractor's, manufacturer's or supplier's guaranty, obligation or warranty, whether or not such contractor, manufacturer or supplier is included in the name of the Insured or as an additional

Date: 4/29/2020

Named Insured, but only to the extent of such guaranty, obligation or warranty. However, if Time Element coverage is provided under this policy, such Time Element coverage shall apply as if this exclusion were not present.

**B.  Conditions of Property Exclusions**

This policy does not insure against:

1.  Any defect or fault in material, workmanship, or design or in planning, zoning, surveying, siting, or developing property. However, if such a defect or fault results in direct physical loss or damage otherwise insured by this policy, then this policy shall cover only such resulting loss or damage. The Company shall not be liable for the costs of rectifying or making good such defect or fault.

2.  Wear and tear, deterioration, rust, corrosion or erosion, all unless loss by a peril otherwise insured against hereunder ensues, and then the Company shall be liable only for such ensuing loss.

3.  Gradual cracking, settling, shrinkage, bulging, expansion or other gradually developing defects, all unless loss by a peril otherwise insured against hereunder ensues, and then the Company shall be liable only for such ensuing loss.

4.  The cracking of any part of a gas turbine exposed to the products of combustion, all unless loss by a peril otherwise insured against hereunder ensues, and then the Company shall be liable only for such ensuing loss.

5.  Contamination, shrinkage, evaporation, loss of weight, or loss of contents of containers by leakage, all unless loss by a peril otherwise insured against hereunder ensues, and then the Company shall be liable only for such ensuing loss.

6.  Insect or vermin damage, unless loss by a peril otherwise insured against hereunder ensues, and then the Company shall be liable only for such ensuing loss.

7.  Electrical breakdown of any electrical machine or electrical apparatus while said equipment is undergoing an insulation breakdown test, all unless loss by a peril otherwise insured against hereunder ensues, and then the Company shall be liable only for such ensuing loss.

**C.  Perils Excluded**

This policy does not insure loss or damage caused by or resulting from any of the following, regardless of any other cause or event that contributes concurrently or in any other sequence to the loss or damage:

1.  a.  Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack,

    i.  by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or

    ii.  by military, naval or air forces; or

    iii.  by an agent of any such government, power, authority or forces;

    it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such a government, power; authority or forces;

by: _____
Date: _4/29/2020_

    b.   insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority.

2.   Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this policy. However, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy.

3.   Infidelity or dishonesty of the Insured, or any officer, director, proprietor or partner thereof, acting alone or in collusion with others, or the infidelity or dishonesty of any officer, director, proprietor or partner of any proprietorship, partnership, corporation or association engaged by the Insured to perform any service or perform any act in connection with any Property insured by this policy.

4.   Any shortage of property discovered upon the taking of inventory, or any unexplained or mysterious disappearance of property.

5.   Accumulated effects of smog, smoke, vapor, or gas from agricultural or industrial operations.

6.   Any increase in loss due to:

    a.   the enforcement of any law, ordinance, regulation, rule or ruling requiring, restricting, or affecting the repair, alteration, use, occupancy, operation, construction or installation of any property, or requiring the tearing down of any property, including the cost of removing its debris, except as provided under the Demolition and Increased Cost of Construction provision of the Additional Coverages section;

    b.   the suspension, lapse, termination or cancellation of any license, contract, lease or permit; or

    c.   any injunction or process of any court.

7.   Lack of incoming electricity, fuel, water, gas, steam or refrigerant caused by an Occurrence not at the Premises Described in the Declarations; but, if such a lack of service causes direct physical loss or damage not otherwise excluded to property otherwise insured by this policy while located on the Premises Described in the Declarations, then this policy shall cover such resulting loss or damage.

8.   The cost of removing any product subject to a Product Recall, whether the removal is voluntarily undertaken by the Insured or mandated by any executive, legislative, administrative or judicial order, and any Time Element losses resulting from such removal.

9.   Any act, error, decision, or omission, or the failure to act or decide, whether committed by the Insured or by others in (a) planning, zoning, surveying, siting, or developing property, (b) establishing or enforcing building codes or standards for construction or materials, (c) designing, specifying, furnishing work, materials, parts, or equipment, or constructing, remodeling, grading, compacting, or maintaining:  (i) buildings or structures, (ii) improvements, changes in or additions to land or other real or personal property, or (iii) roads, water, sewers, drainage systems, levees, dikes, or other facilities of any kind, all whether such property or facilities are covered by this policy or are away from premises covered by this policy; but this exclusion shall apply only if a cause of loss otherwise excluded by this policy contributes to direct physical loss or damage or is the cause of direct physical loss or damage.

10. a.   The failure, malfunction or inadequacy of any of the following, whether belonging to any Insured or to others:  computer hardware, including microprocessors; computer application software; computer operating systems and related software; computer networks; microprocessors not part of any computer system; or any other computerized or electronic

by: _____

Date: 4/29/2020

equipment or components; or any other products, and any services, data or functions that directly or indirectly use or rely on, in any manner, any of the foregoing due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates, times, or instructions, including, but not limited to, the inability of computer software to recognize, process, distinguish, interpret, or accept the year 2000 or any other year, including a leap year; or

b. any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or for the Insured to determine, rectify or test for any potential or actual problems described in paragraph a. above.

c. In addition, the Company shall not be liable for the repair, replacement or modification of any items listed in paragraph a. above to correct any deficiencies or change any features.

However, if direct physical loss or damage not otherwise excluded ensues, then this Company shall be liable only for such ensuing loss or damage.

11. The release, discharge, or dispersal of toxic or hazardous substances, contaminants or pollutants, all whether direct or indirect, proximate or remote, or in whole or in part caused by, contributed to or aggravated by any physical damage insured against by this policy, except as specifically provided for under the Additional Coverages, Hazardous Substances or Contaminants extension.

### D. Other Exclusions

1. This policy does not insure loss or damage caused by or resulting from any of the following, regardless of any other cause or event that contributes concurrently or in any other sequence to the loss or damage:

   a. Indirect or remote loss or damage.

   b. Delay or loss of market; penalties for noncompletion of, or delay in completion of, any contract or noncompliance with any contract conditions; fines, penalties or punitive damages; or any costs incurred to eliminate or reduce any of the foregoing.

   c. Interruption of business or other Time Element losses, unless specifically endorsed hereon.

   d. Increase in hazard by any means within the control or knowledge of any officer, director, proprietor or partner of the Insured.

2. This policy does not insure against:

   a. Extremes or changes of temperature or changes in relative humidity, all whether atmospheric or not; exposure to light; change in color or flavor or texture or finish; condensation, dampness, depletion, disease, wet or dry rot, inherent vice, latent defect, mildew, mold, spoilage, or decay; unless such damage results directly from other direct physical damage not otherwise excluded by this policy.

## III.  PREMIUM

The Premium shown in the Declarations shall be for the first twelve (12) month period commencing with the effective date of this agreement.  This amount shall be subject to adjustment for the coverage of newly constructed properties or properties otherwise acquired or sold during that period, at terms to be agreed upon at the time of such acquisition, sale, or commencement of construction.

Premium for subsequent twelve (12) month periods may be adjusted at each anniversary computed at the rates in effect for such period.

by: _____
Date: 4/29/2020

## IV.  CONDITIONS

### A.  Abandonment

There shall be no abandonment to the Company of any property.

### B.  Action Against Company

No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, and unless commenced within twelve (12) months from the date of the Occurrence.

### C.  Appraisal

If the Insured and this Company fail to agree on the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty (20) days of such demand.  The appraisers shall first select a competent and disinterested umpire, and, if failing for fifteen (15) days to agree upon such umpire, then, on the request of the Insured or this Company, such umpire shall be selected by a judge of a state or federal court of record in the state in which the damaged property is located.  The appraisers shall then appraise the loss, stating separately the loss to each item; and, failing to agree, shall submit their differences, only, to the umpire.  An award in writing, so itemized, of any two when filed with this Company shall determine the amount of loss and shall be binding and final.  Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

### D.  Assignment

Assignment or transfer of this policy shall not be valid except with the prior written consent of the Company.

### E.  Assistance and Cooperation of the Insured

The Insured shall cooperate with the Company, and upon the Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in conducting suits.

### F.  Brands and Labels

In case of damage to property that is covered by this policy and bears a brand, trademark, or label that in any way carries or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal of such brands, trademarks or identifying characteristics.  The cost of such removal shall be borne by the Insured.

### G.  Cancellation

The Company may cancel this insurance by giving the Insured written notice stating when, not less than ninety (90) days thereafter, (ten [10] days for nonpayment of premium) such cancellation shall be effective.  This insurance may be canceled at any time by the Insured by surrender of this policy to the Company or by mailing or delivery to the Company written notice stating when thereafter such cancellation shall take effect.

by: _____

Date: 4/29/2020

Return premium shall be allowed the Insured on a pro rata basis if the Company cancels and on a short rate basis if the Insured cancels.

Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of Cancellation, but such payment shall be made as soon as practicable.

### H.  Company's Options

It shall be optional for this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind, size, capacity and quality within a reasonable time, on giving notice of its intention to do so within thirty (30) days after the receipt of proof of loss herein required.

### I.  Deductibles

There shall be deducted from the amount of each claim for loss or damage arising out of one Occurrence, as defined herein, the amount stated in this policy as Deductible.  Except as set forth below or as specifically endorsed hereon, in the event that more than one Deductible amount applies to any one Occurrence, then only the largest Deductible amount for that Occurrence shall be applied.

If this policy insures against both Property Damage and Time Element losses, the deductible amount(s) as shown in this policy shall apply separately to each such coverage, unless otherwise noted herein or endorsed hereon, even if both are involved in a single Occurrence.

If Time Element coverage(s) is endorsed to this policy, the terms of the deductibles applying to such coverage(s) shall be as set forth in such endorsement(s).

### J.  Due Diligence

The Insured shall, at the Insured's own expense, take all reasonable precautions to prevent imminent loss or damage to the Property Insured.  The Insured shall also consider all reasonable recommendations of the Company to prevent direct physical loss or damage to the Property Insured.

### K.  Errors in Description

Any error in the description of the Premises Described as shown in the Declarations of this policy shall not operate to the prejudice of the Insured.

### L.  Inspection

The Company shall be permitted, but not obligated, to inspect, at all reasonable times, the property of the Insured.  Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of, or for the benefit of, the named Insured or others, to determine or warrant that such property is safe or healthful, nor that such property complies with laws, regulations, codes, or engineering or industry standards.

### M.  Limits and Sublimits of Liability

The Company shall not be liable for more than the amount shown in the Declarations as the Policy Limit of Liability for any one Occurrence.  The inclusion of more than one Insured shall not operate to increase the limits of the Company's liability.

This policy may contain Sublimits of Liability applicable to specific coverages, specific causes of loss, specific kinds of loss, or specific locations.  Any applicable sublimits are set forth in the

Date: 4/29/2020

Declarations. The Company shall not be liable for more than the amount of the Sublimit of Liability for any coverage for which there is a Sublimit of Liability specified in the Declarations. Each Sublimit of Liability shown in the Declarations is a part of, but is not in addition to, the Policy Limit of Liability. The Sublimit of Liability specified in the Declarations as applicable to a specific cause of loss shall apply to all losses arising out of any one Occurrence, whether such losses include damage to real or personal property, Time Element loss (if such coverage is separately endorsed hereon), or both.

EXAMPLES:

(1) Assume the policy contains a Time Element sublimit of $20,000,000 and a Flood sublimit of $5,000,000. A flood occurs, and the Insured sustains a property damage loss of $10,000,000 and a Business Interruption (Time Element) loss of $10,000,000. The Insured can recover only $5,000,000 (total for both the property damage and for the Time Element losses) because the applicable Sublimit of Liability for Flood is $5,000,000.

(2) Assume the policy contains a Time Element sublimit of $5,000,000 and a Flood sublimit of $15,000,000. A flood occurs, and the Insured sustains an $8,000,000 property damage loss and a Business Interruption (Time Element) loss of $10,000,000. The Insured can recover only $13,000,000 ($8,000,000 for property damage and $5,000,000 for Time Element) because the Time Element sublimit is $5,000,000.

The insurance provided by this policy as respects the perils of Earth Movement and Flood shall be subject to the annual aggregate sublimits as shown in the Declarations. The Company shall not be liable for more than the amount specified in the Declarations as annual aggregate for any one policy year as respects losses caused by the perils of Earth Movement and Flood. However, fire or explosion which occur as a direct result of a Flood or Earth Movement shall not: (1) be limited to the Flood or Earth Movement Sublimit, nor; (2) contribute to the annual aggregate for Flood or Earth Movement.

N. Loss Payable

Loss, if any, shall be adjusted with the Named Insured and shall be payable to the Insured and to any Mortgagee, Loss Payee, or other Named Insured, or as otherwise directed by the Insured.

O. Misrepresentation

This entire policy shall be void if any Insured, whether before or after a loss, has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or has committed any act of fraud, attempted fraud or false swearing touching any matter relating to this insurance or the subject thereof.

P. Other Insurance

The Company shall not be liable for loss under this policy if, at the time of loss, there is any other insurance which would attach if this insurance had not been effected, whether collectible or not. This insurance shall apply only as excess, and in no event as contributory insurance, and then only after all other insurance has been exhausted.

Q. Report of Values

Within ninety (90) days of each anniversary, the Insured shall file with this Company a statement of the 100% replacement cost values compiled as of the Insured's most recently ended fiscal year.

In the event the Insured fails to furnish the above values which are acceptable to this Company, then this Company shall not be liable under this policy for a greater proportion of any loss to

by:
Date: 4/29/2020

Property insured than the amount shown on the Reported Values Endorsement bears to the 100% replacement cost at the time of the loss.

R.  Requirements in Case of Loss

When any insured loss or damage occurs, written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable. The Insured shall protect the property from further damage and separate the damaged and undamaged personal property. The Company shall have reasonable time and opportunity to examine the property and the premises of the Insured before repairs are undertaken or physical evidence of the loss or damage is removed, except for protection or salvage.

The Insured shall submit a proof of loss statement, signed and sworn to by the Insured, as soon as practicable after a loss, but in no event later than ninety (90) days thereafter. It shall be in such a form as the Company may require, stating the knowledge and belief of the Insured as to the time and origin of the loss, the interest of the Insured and all others in the property, the value of the property involved, and the amount of loss or damage. It shall also show all encumbrances thereon; all other contracts of insurance, whether valid or not, covering any of said property; and any changes in the title, use, occupancy, location, possession, or exposures of said property since the issuance of the policy, and, if required and obtainable, shall furnish verified plans of the buildings, fixtures, and machinery destroyed or damaged.

The Insured, as often as may be reasonably required, shall produce for examination all books of account, bills, business records, invoices and other vouchers, or any other documents reasonably related to the procurement of this policy or to the scope and extent of the loss at such reasonable time and place as may be designated by this Company, and shall permit extracts and copies thereof to be made.

The Insured, and any officer, director, or employee thereof, shall, as often as may be reasonably requested by this Company, submit to examination under oath by any person named by this Company, while not in the presence of any other Insured, about any matter relating to this insurance or to any claim, and the Insured shall sign and return the original transcript of the examination within thirty (30) days after submission to the Insured.

S.  Salvage and Recovery

When, in connection with any loss hereunder, any salvage or recovery is received subsequent to the payment of such loss, the loss shall be recalculated on the basis on which it would have been determined had the amount of salvage or recovery been known at the time the loss was originally determined. Any amounts thus found to be due either party from the other shall be paid promptly.

T.  Special State Requirements

Any and all provisions of this policy which are in conflict with the statutes of the State wherein this Policy is applicable are understood, declared, and acknowledged by this Company to be amended to conform to such statutes.

U.  Subrogation

In the event of any payment under this policy, the Company shall be subrogated to the Insured's rights of recovery therefore against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the Occurrence to prejudice such rights. However, permission is granted the Insured to waive subrogation provided such waiver is entered into by the Insured in writing, prior to the loss insured hereunder. Any recovery as a result of subrogation proceedings shall, after deduction of all expenses of such action, including attorneys' fees, be prorated

Date: _4/29/2020_

between the Insured and the Company in the proportion that the amount of the loss paid by each bears to the total provable loss.

V. Suspension

Upon the discovery of a dangerous condition with respect to any Object insured by this policy, any representative of the Company may immediately suspend the insurance applicable to said Object by written notice mailed or delivered to the Insured at the address of the Insured as specified in the Declarations, or at the location of the Object. The insurance so suspended may be reinstated by the Company, but only by an endorsement issued to form a part of this policy. The Insured shall be allowed the unearned portion of the premium paid for such suspended insurance, pro rata, for the period of suspension.

As used in this policy, Object shall mean any boiler, fired or unfired pressure vessel, refrigerating or air conditioning system, piping and its accessory equipment and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

W. Term of Insurance

"Term of Insurance", as shown in the Declarations of this policy, shall mean that period of time from 12:01 A.M. to 12:01 A.M., Standard Time, as to each of said dates shown, at the place where the loss occurs.

X. Vacant/Unoccupied Premises

Permission is given to cease operations, or for the premises to be vacant or unoccupied for ninety (90) consecutive days and for more than ninety (90) consecutive days provided:

1. the same degree of fire protection and watch service is maintained as existed at the time of the discontinuance of normal operations; and,

2. that written notice is given to the Company prior to the ninetieth (90) consecutive day.

Y. Valuation

Unless otherwise endorsed hereon, adjustment of loss under this policy shall be:

1. on raw materials, supplies and other merchandise not manufactured by the insured, the replacement cost; and

2. on stock in process, the value of raw materials and labor expended plus the related proportion of overhead charges; and

3. on finished goods manufactured by the insured, the regular cash selling price at the location where the loss occurs, less all discounts and charges to which the finished goods would have been subject had no loss occurred; and

4. on Valuable Papers and Records, the value blank plus the cost of transcription from duplicates or from originals, but this policy does not insure against the cost of reconstructing such records, unless endorsed hereon; and

5. on media, data, programs or other software stored on, or for use with, any computer or other electronic and electromechanical data processing and production equipment, the cost of reproducing such media, data, programs or other software from duplicates or backups or from originals of the previous generation of the data, programs or software,

but this policy does not insure against any other cost, including research, engineering, or programming, of restoring or recreating data or programs lost, unless endorsed hereon; and

6.  on catalysts or refractory material, the actual cash value of the material which equals the replacement cost at the time of loss or damage times the Remaining Useful Life Factor. The term Remaining Useful Life Factor means the normal useful life of the material in months minus the number of months the material had been in use at the time of the loss or damage, divided by the normal useful life of the material in months; and

7.  on all other property covered by this policy, the cost to repair or replace the damaged property with materials of like kind, size, capacity and quality subject to:

    a.  liability under these terms shall not exceed the smallest of the following:

        i.   the cost to repair, rebuild or replace on the same site with material of like kind, size, capacity and quality, whichever is smallest; or

        ii.  the actual expenditure incurred in repairing, rebuilding or replacing on the same or another site but not to exceed size and operating capacity that existed at the time of loss, whichever is smallest.

    b.  in the event of direct physical loss or damage to property which is not repaired, rebuilt or replaced within two (2) years from the date of direct physical loss or damage, this Company shall not be liable for more than the actual cash value (with proper deduction for depreciation) of the property destroyed.

All of the above to be computed as of the time and at the place of loss when, with due diligence and dispatch, rebuilding, repairing or replacement of the damaged or destroyed property could be effected.

## V.    DEFINITIONS

### A.    Earth Movement

The term Earth Movement shall mean any natural or man-made earth movement, including, but not limited to, earthquakes, shocks, tremors, landslides, avalanches, subsidence, sinkhole collapse, mud flow, rock fall, volcano, or any other similar earth movement.

### B.    Flood

The term Flood means flood waters, waves, tide or tidal water, storm surge, tsunami, the release of water, the accumulation of rain or surface water, or the rising (including the overflowing or breaking of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams or other natural or man-made bodies of water, whether or not driven by wind.

### C.    Hazardous Substances or Contaminants

The term Hazardous Substances or Contaminants means any solid, liquid, gaseous, or thermal irritant, contaminant, or pollutant, which includes, but is not limited to, smoke, soot, vapor, fumes, acids, alkalis, chemicals, bacteria, fungi, mold, viruses, spores, vaccines, and waste. Waste includes materials to be reconditioned, recycled, or reclaimed.

by:

Date: 4/29/2020

**JW ALUMINUM COMPANY**

D.    Insured

The term Insured means any Named Insured and any Additional Insured.  The term Named Insured means the entity or entities specified in the Declarations as the Named Insured(s). The term Additional Insured means the entity or entities specified in the Declarations, or in any Endorsements to this policy, as an Additional Insured.


E.    Occurrence

The term Occurrence shall mean any loss or series of losses arising out of one event, regardless of the number of locations affected.  However, as respects the perils of Earth Movement and Flood, the term Occurrence shall mean the sum total of all the losses sustained by the Insured as the result of damage from Earth Movement or Flood which arise during a continuous period of seventy-two (72) hours.  The Insured may elect the moment from which each of the aforesaid periods of seventy-two (72) hours shall commence; but no two such seventy-two (72) hour periods shall overlap.

Occurrence shall not mean "continuous or repeated exposure to conditions" unless physical loss or damage insured against by this policy ensues, and then this policy shall only cover such ensuing loss or damage; nor shall Occurrence mean "loss of use of tangible property that has not been physically injured or destroyed."

F.    Premises Described

The term Premises Described means any location described in the Declarations of this policy or included as a Miscellaneous Unnamed Location or as a Newly Acquired Location, if applicable.

G.    Product Recall

The term Product Recall means withdrawal of any product of any kind or nature from the market or from use because of known or suspected defect or deficiency therein.

H.    Time Element

The term Time Element means any and all loss due to the interruption of the Insured's normal business operations, including, but not limited to, business interruption, extra expense, loss of rental income, and other similar economic losses, but this definition shall not otherwise expand or modify the coverage, if any, provided by this Policy or its Endorsements.

I.    Valuable Papers and Records

The term Valuable Papers and Records shall mean abstracts, drawings, exposed film, manuscripts, maps, and records.  The term Valuable Papers and Records shall not include media, data, programs or other software stored on, or used with, any computer or other electronic or electromechanical data processing and production equipment.

## ENDORSEMENT - ACCOUNTS RECEIVABLE

This policy is extended to cover any shortage in collection of accounts receivable, resulting from direct physical loss or damage insured against by this policy to the Insured's books of account or other records, subject to the following conditions:

**A.** In the event of loss hereunder, the Insured shall use all reasonable diligence and dispatch, including legal action, if necessary, to effect collection of outstanding accounts receivable, the records for which have been destroyed, and the extra cost, if any, incurred thereby shall constitute a claim to the extent that it reduces the loss hereunder. This Company shall also be liable for interest charges on any loan to offset impaired collections pending repayment of such sum uncollectible as the result of such damage or destruction.

**B.** Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

**C.** The settlement of any loss hereunder shall be made within ninety (90) days from the date of such damage or destruction, and all amounts recovered by the Insured on accounts receivable outstanding at the time of such damage or destruction shall belong, and be paid to, this Company by the Insured up to a total not exceeding the amount of loss paid hereunder, but all recoveries in excess of that amount shall belong to the Insured.

**D.** In the event it is possible to reconstruct the Insured's accounts receivable records after they have been damaged or destroyed so that no shortage in collection of accounts receivable is sustained, this Company shall be liable only for the cost of material and time required, with the exercise of due diligence and dispatch, to re-establish or reconstruct such accounts receivable records, but only so far as not covered by any other form of insurance.

**E.** This endorsement does not apply to loss due to bookkeeping, accounting or billing errors or omissions, or errors or omissions in machine programming or instructions to machines, or computer error or malfunction of any kind or nature.

**F.** This endorsement does not apply to loss due to alteration, falsification, manipulation, concealment, destruction or disposal of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

**G.** The Insured agrees to use any suitable property or service owned or controlled by the Insured or obtainable from other sources in reducing the loss under this endorsement.

The Company's total liability under this provision shall be limited to the amount of the Sublimit of Liability for Accounts Receivable specified in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

by:

Date: 4/29/2020

## ENDORSEMENT - AUTHORITIES EXCLUSION

It is hereby understood and agreed that with respect to the property section only:

Except as specifically stated in this policy or endorsement attached thereto, the company shall not be liable for loss, damage, costs, expenses, fines, or penalties incurred, sustained by or imposed on the Insured at the order of any Government Agency, Court, or other Authority arising from any cause whatsoever.

However, if any time element coverage is afforded by this policy or endorsements thereto, the coverage is extended to include any increase in the actual loss sustained by the Insured, resulting directly from an interruption of business covered hereunder, during the length of time not exceeding forty-five (45) consecutive days, when as a direct result of damage to or destruction of covered property by the peril(s) insured against, access to the premises or commencement of repairs is delayed at the order of any Government Agency, Court, or other Authority.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

by:

Date: 4/29/2020

## ENDORSEMENT - BIOLOGICAL OR NUCLEAR EXCLUSION

This policy does not insure against any loss, damage, cost or expense caused by or resulting from any of the following, regardless of any other cause or event contributing concurrently or in any sequence thereto:

1.  The unlawful possession, use, release, discharge, dispersal or disposal of any bacteriological, viral, radioactive or similar agents or matter regardless of who is responsible for the act and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

2.  The unlawful possession, use, release, discharge, detonation, dispersal or disposal of any device or material capable of producing a nuclear reaction or the spread of radioactivity, regardless of who is responsible for the act and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

by:

Date: 4/29/2020

### ENDORSEMENT - BUSINESS INTERRUPTION ACTUAL LOSS SUSTAINED

**A. INSURING AGREEMENT**

The policy to which this Time Element endorsement is attached is extended to cover loss directly resulting from the necessary interruption of the business incurred by the Insured during the Period of Interruption. This loss must result directly from direct physical loss or damage insured against by this policy. In addition, the loss or damage must be to property not otherwise excluded by this policy, utilized by the Insured, and located at Premises Described in the Declarations.

**1. Actual Loss Sustained**

The Company agrees to pay the Insured the amount of Actual Loss Sustained resulting directly from the necessary interruption of business caused by direct physical loss or damage insured herein.

The term Actual Loss Sustained shall mean the sum of:

a. loss of net profits on the business prevented, and

b. that part of the following fixed charges and expenses which the business did not earn, but would have earned, had the insured direct physical loss or damage not occurred:

(1) salaries and wages of officers, executives, department managers, employees under contract (except that employees subject to a collective bargaining agreement are not "under contract" as used herein) and other essential employees, pensions and directors' fees, but not including the Insured's ordinary payroll expense; and

(2) manufacturing, selling, administrative expenses and any other item contributing to the overhead expenses of the Insured.

**2. Expenses**

The Company agrees to pay the amount of expense, over and above normal operating expense, which is necessarily incurred by the Insured or the Company to reduce or avert interruption of business, but only to the extent that the total amount which otherwise would have been paid is thereby reduced. All extra expenses so incurred shall be a part of, and not in addition to, the Limit of Liability specified in condition C.7. of this endorsement.

**B. EXCLUSIONS**

The Company shall not be liable for any Actual Loss Sustained:

1. For any time during which business would not, or could not, have been conducted had direct physical loss or damage to the Premises Described in the Declarations, as insured against hereunder, not occurred.

2. Resulting from damage to finished products manufactured by the Insured, nor for the time required for their reproduction.

3. Resulting from loss or damage to property in transit or property in the course of construction.

4. Resulting from loss or damages for breach of contract or for late or noncompletion of orders.

5. Resulting from the suspension, cancellation or lapse of any contract, license, lease or order except that the Company will be liable under this endorsement for only such loss as affects the Insured's earnings during, and limited to, the Period of Interruption covered under this endorsement.

by: _____

Date: _4/29/2020_

## C. CONDITIONS

### 1. Period of Interruption

The liability of the Company under this endorsement shall be limited to the Period of Interruption. The term Period of Interruption shall mean:

a. the length of time as would be required, with the exercise of due diligence and dispatch, to rebuild, repair or replace such described property as has been lost or damaged with materials of like kind, size, capacity and quality. It shall also include such additional time required to make it ready for operations under the same or equivalent physical operating conditions that existed prior to the direct physical loss or damage, unless otherwise provided in this endorsement. The Period of Interruption shall not include any additional time required for making changes to buildings, equipment or contents, regardless of the reason(s) for the changes, except as provided for in the Demolition and Increased Cost of Construction provision of the Additional Coverages section, nor does it include any additional time required for restaffing or retraining employees or for delay of any kind caused by labor disputes including strikes; and

b. such additional time as may be required, with the exercise of due diligence and dispatch, to repair or replace damaged or destroyed valuable papers and records, but not to exceed the time that would be required for transcription from originals or duplicates, whether or not the originals or duplicates are available; and

c. such additional time as may be required, with the exercise of due diligence and dispatch, to repair or replace damaged or destroyed media, data and programming for electronic and electromechanical data processing and production equipment, but not to exceed the time that would be required for reproduction from duplicates or from the previous generation of the data, whether or not the duplicates or previous generation are available.

The liability of the Company under this endorsement shall not be limited by the expiration of this policy.

### 2. Deductibles

In addition to the Deductible Condition of this policy, the following may also apply:

If a number of hours/days apply as a Time Element deductible, then this Company shall not be liable for any losses under this Time Element endorsement occurring during the specified number of hours/days immediately following the Occurrence.

If a multiple of the Average Daily Value deductible is indicated for Time Element coverage, then the deductible amount shall be calculated as follows. With respect to any loss or expense for which the Company would be liable under the Time Element coverage(s), there shall first be deducted the amount obtained by multiplying the Average Daily Value for the affected location(s) at the time of such loss by the factor shown in the Declarations of the policy. The Average Daily Value will be determined by dividing the actual amount of net profits, fixed charges and expenses that would have been earned had no loss occurred by the actual number of working days, had no loss occurred, during the period of interruption, with due consideration being given to the experience of the business before the loss and the probable experience thereafter.

### 3. Interruption by Civil or Military Authority

This policy is also extended to include the Actual Loss Sustained by the Insured, during the length of time not exceeding forty-five (45) consecutive days, when access to or from Premises Described in the Declarations is specifically prohibited by order of civil or military authority. Such prohibition must be as a direct result of a peril not otherwise excluded to property of a type not otherwise excluded

by: _____
Date: _4/29/2020_

**4. Impounded Water**

In the event that water used as a raw material or for power or for other manufacturing purpose, stored behind dams or in reservoirs situated on the described premises, is released from storage as the result of damage as insured against hereunder, to such dam or reservoir, or equipment connected therewith, this endorsement covers loss, if any, caused by lack of adequate water supply from such sources. The length of time shall be limited to no more than thirty (30) consecutive days, after such length of time as would be required, with the exercise of due diligence and dispatch, to repair or replace the damaged dam, reservoir or equipment. Nothing herein shall imply that any direct physical loss or damage to any such dam, reservoir or equipment is covered by any other provision of this policy.

**5. Resumption of Operations**

As soon as possible after the direct physical loss or damage, the Insured, with due diligence and dispatch, shall resume business, in whole or in part, and make up lost business within a reasonable period of time (not to be limited to the Period of Interruption) through the use of every available means, including surplus machinery, duplicate parts, equipment, supplies, surplus or reserve stock, owned or controlled or obtainable from other sources, and through working extra time or overtime at the specified premises or at such other premises acquired for the purpose. The Company may take such means as will, in the opinion of the Company, reduce or avert interruption of business on the premises or supply the functions of the premises in some other way.

**6. Experience of the Business**

In determining the amount payable under this endorsement, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no interruption of business occurred.

In the event the Insured would have experienced an operating deficit had no Period of Interruption occurred:

a.  the amount of fixed charges included in the Actual Loss Sustained shall be determined by subtracting the operating deficit from the fixed charges that necessarily continue; and

b.  the amount of payroll included in the Actual Loss Sustained shall be determined by subtracting the excess, if any, of the operating deficit over the fixed charges that necessarily continue from such payroll.

**7. Liability**

The Company's total liability under this provision shall be limited to the amount of the Limit or Sublimit of Liability for this endorsement as specified in the Declarations, as more fully described in the Limits and Sublimits of Liability Condition of this policy.

**8. Reports of Values**

Within ninety (90) days of each anniversary, the Insured shall file with this Company a statement of the actual net profits, fixed charges and expenses for the Insured's most recently ended fiscal year and a statement of estimated net profits, fixed charges and expenses for the subsequent fiscal year.

In the event the Insured fails to furnish the above statement(s) of Actual Loss Sustained which are acceptable to this Company, then the Company shall not be liable under this endorsement for the payment of a greater proportion of the amount of Actual Loss Sustained (subject to the Exclusions and Conditions of this endorsement), resulting from any one Occurrence, than the "Annual Values" fixed expressed in the Reported Values endorsement bears to the estimated amount of Net Profits

Charges and Expenses, as referred to in the definition of "Actual Loss Sustained," that would have been earned, had no loss occurred, during the twelve (12) months immediately following the date of the loss. Due consideration shall be given to the experience of the business before the loss and the probable experience thereafter.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

**JW ALUMINUM COMPANY**

## ENDORSEMENT - BRIDGE WORDING

Whenever used in this Policy, the terms, "we", "our", "you", and "your" are hereby changed to "the Company", "the Company's", "the Insured", and "the Insureds".

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

by:

Date: 4/29/2020

## ENDORSEMENT - CONTINGENT BUSINESS INTERRUPTION

**A. INSURING AGREEMENT**

The policy to which this Time Element endorsement is attached is extended to cover loss directly resulting from the necessary interruption of the business incurred by the Insured during the Period of Interruption. This loss must result directly from direct physical loss or damage insured against by this policy. In addition, the loss or damage must be to property not otherwise excluded by this policy, located on the premises of direct suppliers or customer locations as specified in the Schedule of Locations attached to this policy.

**1. Actual Loss Sustained**

The Company agrees to pay the Insured the amount of Actual Loss Sustained resulting directly from the necessary interruption of business caused by direct physical loss or damage insured herein.

The term Actual Loss Sustained shall mean the sum of:

a. loss of net profits on the business prevented, and

b. that part of the following fixed charges and expenses which the business did not earn, but would have earned, had the insured direct physical loss or damage not occurred:

(1) salaries and wages of officers, executives, department managers, employees under contract (except that employees subject to a collective bargaining agreement are not "under contract" as used herein) and other essential employees, pensions and directors' fees, but not including the Insured's ordinary payroll expense; and

(2) manufacturing, selling, administrative expenses and any other item contributing to the overhead expenses of the Insured.

**2. Expenses**

The Company agrees to pay the amount of expense, over and above normal operating expense, which is necessarily incurred by the Insured or the Company to reduce or avert interruption of business, but only to the extent that the total amount which otherwise would have been paid is thereby reduced. All extra expenses so incurred shall be a part of, and not in addition to, the Limit of Liability specified in condition C.7. of this endorsement

**B. EXCLUSIONS**

The Company shall not be liable for any Actual Loss Sustained:

1. For any time during which business would not, or could not, have been conducted had direct physical loss or damage to the Premises Described in the Declarations, as insured against hereunder, not occurred.

2. Resulting from damage to finished products manufactured by the Insured, nor for the time required for their reproduction.

3. Resulting from loss or damage to property in transit or property in the course of construction.

4. Resulting from loss or damages for breach of contract or for late or noncompletion of orders.

by:
Date: 4/29/2020

5. Resulting from the suspension, cancellation or lapse of any contract, license, lease or order except that the Company will be liable under this endorsement for only such loss as affects the Insured's earnings during, and limited to, the Period of Interruption covered under this endorsement.

## C.   CONDITIONS

### 1.   Period of Interruption

The liability of the Company under this endorsement shall be limited to the Period of Interruption.  The term Period of Interruption shall mean:

a.   the length of time as would be required, with the exercise of due diligence and dispatch, to rebuild, repair or replace such described property as has been lost or damaged with materials of like kind, size, capacity and quality.  It shall also include such additional time required to make it ready for operations under the same or equivalent physical operating conditions that existed prior to the direct physical loss or damage, unless otherwise provided in this endorsement.  The Period of Interruption shall not include any additional time required for making changes to buildings, equipment or contents, regardless of the reason(s) for the changes, except as provided for in the Demolition and Increased Cost of Construction provision of the Additional Coverages section, nor does it include any additional time required for restaffing or retraining employees or for delay of any kind caused by labor disputes including strikes; and

b.   such additional time as may be required, with the exercise of due diligence and dispatch, to repair or replace damaged or destroyed valuable papers and records, but not to exceed the time that would be required for transcription from originals or duplicates, whether or not the originals or duplicates are available; and

c.   such additional time as may be required, with the exercise of due diligence and dispatch, to repair or replace damaged or destroyed media, data and programming for electronic and electromechanical data processing and production equipment, but not to exceed the time that would be required for production from duplicates or from the previous generation of the data, whether or not the duplicates or previous generation are available.

The liability of the Company under this endorsement shall not be limited by the expiration of this policy.

### 2.   Deductibles

In addition to the Deductible Condition of this policy, the following may also apply:

If a number of hours/days apply as a Time Element deductible, then this Company shall not be liable for any losses under this Time Element endorsement occurring during the specified number of hours/days immediately following the Occurrence.

If a multiple of the Average Daily Value deductible is indicated for Time Element coverage, then the deductible amount shall be calculated as follows.  With respect to any loss or expense for which the Company would be liable under the Time Element coverage(s), there shall first be deducted the amount obtained by multiplying the Average Daily Value for the affected location(s) at the time of such loss by the factor shown in the Declarations of the policy.  The Average Daily Value will be determined by dividing the actual amount of net profits, fixed charges and expenses that would have been earned had no loss occurred by the actual number of working days, had no loss occurred, during the period of interruption, with due consideration being given to the experience of the business before the loss and the probable experience thereafter.

by:
Date: 4/29/2020

3. **Interruption by Civil or Military Authority**

This policy is also extended to include the Actual Loss Sustained by the Insured, during the length of time not exceeding forty-five (45) consecutive days, when access to or from Premises Described in the Declarations is specifically prohibited by order of civil or military authority. Such prohibition must be as a direct result of a peril not otherwise excluded to property of a type not otherwise excluded.

4. **Impounded Water**

In the event that water used as a raw material or for power or for other manufacturing purpose, stored behind dams or in reservoirs situated on the described premises, is released from storage as the result of damage as insured against hereunder, to such dam or reservoir, or equipment connected therewith, this endorsement covers loss, if any, caused by lack of adequate water supply from such sources. The length of time shall be limited to no more than thirty (30) consecutive days, after such length of time as would be required, with the exercise of due diligence and dispatch, to repair or replace the damaged dam, reservoir or equipment. Nothing herein shall imply that any direct physical loss or damage to any such dam, reservoir or equipment is covered by any other provision of this policy.

5. **Resumption of Operations**

As soon as possible after the direct physical loss or damage, the Insured, with due diligence and dispatch, shall resume business, in whole or in part, and make up lost business within a reasonable period of time (not to be limited to the Period of Interruption) through the use of every available means, including surplus machinery, duplicate parts, equipment, supplies, surplus or reserve stock, owned or controlled or obtainable from other sources, and through working extra time or overtime at the specified premises or at such other premises acquired for the purpose. The Company may take such means as will, in the opinion of the Company, reduce or avert interruption of business on the premises or supply the functions of the premises in some other way.

6. **Experience of the Business**

In determining the amount payable under this endorsement, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no interruption of business occurred.

In the event the Insured would have experienced an operating deficit had no Period of Interruption occurred:

a. the amount of fixed charges included in the Actual Loss Sustained shall be determined by subtracting the operating deficit from the fixed charges that necessarily continue; and

b. the amount of payroll included in the Actual Loss Sustained shall be determined by subtracting the excess, if any, of the operating deficit over the fixed charges that necessarily continue from such payroll.

7. **Liability**

The Company's total liability under this provision shall be limited to the amount of the Limit or Sublimit of Liability for this endorsement as specified in the Declarations, as more fully described in the Limits and Sublimits of Liability Condition of this policy.

**JW ALUMINUM COMPANY**

8. **Reports of Values**

Within ninety (90) days of each anniversary, the Insured shall file with this Company a statement of the actual net profits, fixed charges and expenses for the Insured's most recently ended fiscal year and a statement of estimated net profits, fixed charges and expenses for the subsequent fiscal year.

In the event the Insured fails to furnish the above statement(s) of Actual Loss Sustained which are acceptable to this Company, then the Company shall not be liable under this endorsement for the payment of a greater proportion of the amount of Actual Loss Sustained (subject to the Exclusions and Conditions of this endorsement), resulting from any one Occurrence, than the "Annual Value" expressed in the Reported Values endorsement bears to the estimated amount of Net Profits, Fixed Charges and Expenses, as referred to in the definition of "Actual Loss Sustained," that would have been earned, had no loss occurred, during the twelve (12) months immediately following the date of the loss.  Due consideration shall be given to the experience of the business before the loss and the probable experience thereafter.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

by:

Date: 4/29/2020