

1833 Centre Point Circle, Suite 139
Naperville, IL 60563
Phone (630) 245-7038
Email: BBennett@vericlaim.com

September 30, 2020

JW Aluminum Company
435 Old Mt. Holly Road
Goose Creek, SC 29445
Attn: Mr. Philip Cavatoni

RE:  Insured:           JW Aluminum
     Insurers:          See Attached Schedule of Insurance
     Policy Nos.:       See Attached Schedule of Insurance
     Policy Term:       December 31, 2019 to December 31, 2020
     Date of Loss:      August 4, 2020
     Location of Loss:  435 Old Mt. Holly Road, Goose Creek, SC
     Claim Nos.:        See Attached Schedule of Insurance
     Sedgwick File No.: CHI20421400

Dear Mr. Cavatoni:

As you know, Sedgwick has been retained by the insurers listed on the attached Schedule of Insurance (the "Insurers") to investigate and adjust the fire loss that occurred on August 4, 2020, at JW Aluminum's facility located at 435 Old Mt. Holly Road, Goose Creek, South Carolina ("Insured Location"). This letter is written to: (1) advise you that the Insurers are investigating the loss under a complete reservation of rights; (2) request additional information; and (3) respond to your request for an advance payment of $6 million. This letter has been authorized by the Insurers.

I.  **RESERVATION OF RIGHTS**

The Insurers' investigation is being conducted under a full reservation of rights, without prejudice to the terms and conditions of the Policy, applicable law, or otherwise.

It is the Insurers' understanding that there are multiple insured buildings located at the 435 Old Mount Holly Road, Goose Creek location and that the fire occurred in the building that JW Aluminum refers to as the "legacy" melting, casting and milling building. As discussed in detail below, it is the Insurers understanding that the "legacy" equipment was intended to be scrapped and removed from coverage under the Policies effective July 1, 2020 because the Insured had built a new facility, "boilermaker", which was operational in the beginning of July 2020.

Prior to the loss, on or about June 15, 2020, Lindsay Grimes of Marsh sent separate emails to the respective individual Insurers advising that effective July 1, 2020, "boilermaker" will officially be operational and coming off builder's risk. The respective emails each indicate that the additional

values for boilermaker are $212,294,765 ($23,860,579 building values; $178,434,186 equipment values; $10,000,000 BI values). The email further states that: "At the same time, JW is scraping (sic) $60,000,000 at the existing Mt. Holly building." The emails then advise of the total net TIV impact of $152,294,765. Finally, each of the emails discuss the agreed rates and the pro rata additional premium due to each respective insurer and asks for the respective insurer's agreement.

On June 15, 2020, Louis Panas of Scor responded to the Marsh email he received: "Noted and agreed. We await change endorsement for issuance." On July 17, 2020, Gregory Glaser of Marsh emailed Mr. Panas an endorsement for issuance.

The Endorsement to Scor Policy No. FA0064010-2019-1, effective July 1, 2020, provides as follows:

It is hereby agreed that the following values are added to the below location:
1. Boiler Facility
435 Old Mt. Holly Rd
Mt. Holly, SC 29445
TIV added: $212,294,765

And, it is hereby agreed that the following values are deleted from the below location:
1.  435 Old Mt. Holly Rd
Mt. Holly, SC 29445
TIV removed: $60,000,000
Net TIV Added: $152,294,765
Net Additional Premium: $10,953

This Endorsement to the Scor Policy was signed by Panas on July 27, 2020 and emailed back to Mr. Glaser the same day.

With regard to Swiss Re, on August 10, 2020, Mr. Glaser sent a follow up email to Tracy Green of Swiss Re requesting conformation of the agreement, to which he responded that Swiss Re is in agreement and is processing the endorsement and invoice. Mr. Green also requested from Mr. Glaser an updated Statement of Values. On August 26, 2020, Mr. Glaser provided a copy of the updated Statement of Values and on August 28, 2020, Swiss Re issued the endorsement and invoice.

The Statement of Values presented by Marsh to Swiss Re includes a second row for the 435 Old Mt. Holly Rd. location, listing it as 435 Old Mt. Holly Rd. – Boilermaker, with a second set of values for boilermaker. This Statement of Values drops the Equipment category number from $169,342,392 to $109,342,392 for the 435 Old Mt. Holly Rd. location, showing the deletion of $60,000,000 in equipment referenced in the broker's email.

The Endorsement, effective July 1, 2020, provides:
Effective 7/1/2020, adding Boilermaker Insurable Value of $212,294,765 and deleting $60,000,000 in equipment for a net impact of $152,294,765 at location 435 Old Mt. Holly Road, Goose Creek, SC 29445.

The Premium Invoice shows a net amount due of $27,737.00.

Similar communications occurred between Marsh and the underwriters at both Starr Tech and AIG, wherein it was agreed that the boilermaker values would be added to the respective policies, and that $60,000,000 in equipment at the 435 Old Mt. Holly Road, Goose Creek location would be deleted from coverage.

In sum, each of the insurers agreed to the deletion of the $60,000,000 in values for the 435 Old. Mt. Holly Road location and the addition of the boilermaker values.  Further, the Insurers all understood that the "legacy" equipment was being taken off-line to be scrapped as of July 1, 2020, which coincides with when the boilermaker was up and running and being provided coverage under the Policies.  It is the Insurers understanding that the equipment involved in the fire and damaged was the legacy equipment that JW Aluminum was in the process of phasing out.

Recently, however, on September 17, 2020, in response to an inquiry from the Insurers, Chris Huskins of Marsh sent an email advising in relevant part:

You had previously asked about a $60M reduction in equipment values reported at the Mt Holly location.  After speaking with the involved brokers and JWA it is my understanding that the following occurred in 2019 and 2020.

- In late 2019 Property limits were increased by $47M at the legacy plant.  The reason for this increase was that valuable equipment that was to be part of the expansion was stored in the plant.

- In 2020 a separate valuation of equipment to be placed in the expansion was submitted.

- Since the stored equipment had now been accounted for in the expansion's equipment valuation, and after reviewing the value of equipment in the legacy plant a mid-term decrease in the valuation of equipment was submitted in June/July of 2020 of $60M.

This email does not clarify the issue as to coverage for the specific equipment involved in the fire. As such, the Insurers are requesting additional documents and information, as discussed in Section II below.  Accordingly, the Insurers reserve their rights to disclaim coverage for the damage to the equipment as a result of the fire to the extent that such equipment was deleted from coverage under the Policies as of July 1, 2020.

## II.    REQUEST FOR INFORMATION

Based on the above discussed information, the Insurers have requested that you provide:

- Related to the above-discussed June 15, 2020 emails sent by Marsh to each of the insurers, please provide a detailed listing of the equipment JW was scrapping at the existing Mt. Holly building effective 7/1/20, as stated in the emails.

- All correspondence and memoranda including email, whether internal or with Marsh or any other consultant, that refers or relates to the decision to scrap "$60,000,000 of equipment at the existing

Mt. Holly building," together with any attachments to such correspondence, memoranda, and/or email.

- All correspondence and memoranda including email or other communications between the Insured and Marsh related to any increase or decrease in equipment values for use or consideration during the 2019 renewal period.

### III. REQUEST FOR ADVANCE

Based on the information received to date, the Insurers have agreed to advance to JW Aluminum a payment of $1 million toward the building damage aspect of the loss. However, the Insurers do not have sufficient information to determine whether the equipment involved in the loss was the equipment that was removed from coverage under the Policies. Upon receipt of the above requested information and documentation, the Insurers will review it to determine whether any additional amounts are owed under the Policies.

### IV. CONCLUSION

The Insurers do not waive or modify any of the terms, conditions, provisions, or limitations set forth in the Policies, whether or not referenced herein. Due to the continuing nature of the investigation, please take notice that this reservation includes all of the Insurers' rights, whether or not mentioned herein. The Insurers reserve all rights regarding the application of the above-referenced provisions under the terms and conditions of the Policies and applicable law. Additionally, other provisions may be found to be applicable after further investigation or analysis, and no waiver of any provisions, conditions, limitations, or exclusions of the Policies is intended or implied by our citation of the above provisions.

As noted above, the only authorized communications concerning coverage in this matter are those set forth in writing signed by the Insurers or in a letter stating that the Insurers have authorized the coverage communication. As independent adjusters, Sedgwick does not have authority to interpret the Insurers' Policies or to bind them to coverage. Rather, Sedgwick is responsible for gathering and confirming factual information sufficient to permit the Insurers to evaluate whether coverage is afforded under their Policy and to ascertain the amounts that are claimed and can be supported. **The Insurers have authorized this communication.**

We look forward to your continued cooperation in the investigation of this matter. Should you have any questions in the interim, please do not hesitate to contact the undersigned.

Sincerely,

Brian Bennett

**Sr. General Adjuster**

**brian.bennett@sedgwick.com**

# Schedule of Insurance

| Underwriting Company | Policy No. | Claim No. | Written % Participation |
|---|---|---|---|
| Chubb / ACE American Insurance Co. (Starr) | EPRN14338688 | ST 5330 | 45.00% |
| GSINDA / SCOR | FA0064010-2019-1 | 10-383215 | 12.50% |
| Swiss Re / Westport Insurance Co. | NAP 04519170 7 | 020201446173 | 27.50% |
| AIG | 18257132 | 3285566961US | 15.00% |