
# FORAN GLENNON

December 30, 2020

**_VIA EMAIL_**

Peter M. Gillon
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036
peter.gillon@pillsburylaw.com

|       |                   |                                           |
|-------|-------------------|-------------------------------------------|
| RE:   | Insured:          | JW Aluminum                               |
|       | Date of Loss:     | August 4, 2020                            |
|       | Location of Loss: | 435 Old Mt. Holly Road, Goose Creek, SC   |

Dear Mr. Gillon:

      We represent ACE American Insurance Company, General Security Indemnity Company of Arizona and Westport Insurance Corporation (collectively, "Insurers") in response to your December 12, 2020 letter to the Insurers. Contrary to the assertions in your letter, the Insurers have been timely responding to and investigating the claim submitted by JW Aluminum ("JWA") referenced above. In fact, the Insurers advised JWA that they would issue an advance payment as early as September 30, 2020. The Insurers' continued good faith in their adjustment of the claim is described in further detail below.

## I.    Failure to Provide Requested Information Related to Equipment Valuation Issue

      Prior to the loss, on or about June 15, 2020, Marsh sent separate emails to the individual Insurers advising that effective July 1, 2020, "boilermaker" will officially be operational and coming off builder's risk. The respective emails each indicate that the additional values for boilermaker are $212,294,765 ($23,860,579 building values; $178,434,186 equipment values; $10,000,000 BI values). The emails further state that: "At the same time, JW is scraping $60,000,000 at the existing Mt. Holly building." The Insurers understood this to mean that $60 million in equipment at the "legacy" building at the Mt. Holly location was going to be scrapped and taken off of coverage. The Insurers were advised that this was because JWA had built a new facility, "boilermaker," which was to become operational in the beginning of July 2020.

      Upon receipt of notice of loss, the Insurers assigned independent adjuster, Brian Bennett of Sedgwick, to investigate the loss. The Insurers were advised that the fire occurred in the "legacy" building at the Mt. Holly location. The Insurers are looking for information to determine whether any of the equipment damaged in the fire was part of the $60 million in equipment

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC

Charles J. Rocco, Attorney at Law     212.257.7101     crocco@fgppr.com
40 Wall Street, 54th Floor, New York, New York 10005     tel 212.257.7100     www.fgppr.com

Chicago | Irvine | San Francisco | New York | London | Denver | Las Vegas | Phoenix

Mr. Peter M. Gillon
December 30, 2020
Page **2** of **3**

referenced in the Marsh email. In an effort to obtain such information, Mr. Bennett reached out to Marsh. In response, on September 17, 2020, Chris Huskins of Marsh provided an explanation of the differences in valuation. However, Mr. Huskins' explanation did not identify the specific equipment involved in the fire. As such, on September 30, 2020, the Insurers issued a reservation of rights and request for production of documents and information related to this specific issue.[1] On October 30, 2020, Mr. Bennett followed up with Mr. Huskins via email requesting an estimate of time for a response. On November 6, 2020, JWA issued a letter explaining that there were no responsive documents because JWA had no plans to "scrap" any of the equipment. Instead, JWA asserted that the use of the term "scraping" in the email was intentional and, as used, meant to reduce values, not scrap the equipment. Based on this distinction, JWA did not provide any responsive documents. JWA also did not provide any documents to support the explanation contained in its letter.

In a November 12, 2020 letter to JWA, Sedgwick reiterated the request for information set forth in the September 30, 2020 letter. Noting the distinction made between "scrapping" and "scraping" in the correspondence from JWA, the request for information was broadened to include documents related to both "scraping" and scrapping" Rather than provide the documents and information requested in the September 30, 2020 and November 12, 2020 letters, JWA issued another letter on November 23, 2020. By letter dated December 16, 2020, the Insurers followed up again. What Insurers are looking for are correspondence, notes of discussions, e-mail exchanges, and other documents that reflect communications between JW Aluminum and Marsh that led to the issuance by Marsh.

As explained, the Insurers understood that the Marsh June 15, 2020 e-mail to request that $60 million of equipment be removed from coverage. Insurers want to work with JWA as partners to resolve this issue. They are looking for correspondence, notes of discussions, e-mail exchanges, and other documents that reflect communications between JWA and Marsh that led to the issuance by Marsh of its June 15, 2020 e-mail request. The Insurers need this information to resolve this issue and move forward with the adjustment.

## II.     Failure to Provide Information Necessary to Make Advance Payment

In response to JWA's request for an advance payment, the Insurers authorized an advance payment of $1 million in the September 30, 2020. October 2, 2020, Sedgwick forwarded draft Proofs of Loss to JWA to complete. JWA did not return the Proofs of Loss until October 22, 2020. The Proofs of Loss that JWA submitted did not include any information on the Titles & Interests sections. This was immediately relayed to Marsh on October 23, 2020. On November 16, 2020, Mr. Huskins advised Mr. Bennett that the Proof of Loss as submitted will not be amended. As such, the Insurers rejected the Proofs of Loss and requested JWA to amend the Proofs of Loss to reflect every entity that has an interest in the subject property. The Insurers further advised that to the extent that any entity listed in the Policy as a Loss Payee should not be included in any payment, written confirmation from such entity is necessary. In response, JWA provided a December 7,

---

[1] The Insurers also agreed to make an advance payment of $1 million in response to JWA's request for an advance payment of $6 million while they awaited the requested information.

Mr. Peter M. Gillon
December 30, 2020
Page **3** of **3**

2020 letter from loss payee JP Morgan directing that payment be made directly JWA. Based upon the information provided, the Insurers are processing the advance payment of $1 million.

### III.  Applicability of Molten Material Sublimit Endorsement

Finally, the Molten Material Endorsement limits coverage for "direct physical loss or damage caused by heat from Molten Material," to $10,000,000 per occurrence. Based upon the description of events contained in your letter, it appears that you agree with the following sequence of events:

1) Workers performing maintenance on equipment drained molten aluminum;
2) Molten aluminum "popped," sending molten metal (over 1400 degrees) 30 feet into air onto a steel beam;
3) Steel beam heated up and ignited fire on composite roof;
4) Workers shut down power to other equipment and, by doing so, caused molten aluminum to solidify in other machines.

Based on this fact pattern, the fire was directly caused by the heat of the Molten Material that was accidentally discharged. This led to the resulting shutdown and damage that is involved in the claim. Accordingly, the Molten Material Endorsement appears to be applicable, and the entirety of the loss would be subject to the limit of liability of $10,000,000 set forth in the endorsement.

### IV.  Cooperation Under the Policy

The Insurers look forward to working in partnership with the Insured to obtain the information previously requested. In order to comply with their obligations to promptly investigate all claims, the Insurers are prepared to proceed with an Examination Under Oath as permitted by the Policies, if we do not receive the previously requested information. Hopefully, this will not be necessary and JWA will promptly provide the information requested.

This, as well as all communications with respect to this claim, are without waiver of and/or prejudice to any and all Policy provisions and any and all rights and/or defenses of Insurers whether under the Policies or at law, all of which continue to be expressly reserved.

If you have any questions, please do not hesitate to contact the undersigned.

Very truly yours,

Foran Glennon Palandech Ponzi & Rudloff PC

By: *[signature]*

Charles J. Rocco

Enclosure

**FG FORAN GLENNON**

December 30, 2020

*Via Email*

Peter M. Gillon
Pillsbury Winthop Show Pittman L.L.P.
1200 Seventeenth Street, NW
Washington, D.C. 20036

| RE: | Insured: | JW Aluminum |
|---|---|---|
| | Policy Nos.: | EPRN14338688; FA0064010-2019-1; NAP045191707 |
| | Policy Term: | December 31, 2019 to December 31, 2020 |
| | Date of Loss: | August 4, 2020 |
| | Location of Loss: | 435 Old Mt. Holly Road, Goose Creek, SC |
| | Claim Nos.: | ST 5330; 10-383215; 02021446173 |

Dear Mr. Gillon:

We write on behalf of ACE American Insurance Company, General Security Indemnity Company of Arizona and Westport Insurance Company (collectively, "Insurers") concerning the above-referenced matter. It is our understanding JW Aluminum ("JWA") has made an insurance claim (the "Claim") for damage reportedly caused by a fire occurring in Mt. Holly, South Carolina on June August 4, 2020 (the "Loss"). We write to you as attorneys for JWA to request that JWA: (a) produce certain information and documents supporting the Claim; and (b) thereafter appear for an examination under oath ("EUO"), pursuant to the terms and conditions of the above-referenced insurance policies (the "Policy").

## I. Appearing for Examination Under Oath and Production of Documents is Required under the Policy

In accordance with the terms and conditions of the Policy, JWA is required to cooperate with the Insurers' investigation of the Loss. The Policy requires JWA to both: (a) appear for an EUO; and (b) permit inspection at the examination of any documentation requested by the Insurers. We direct your attention to the following Policy language:

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC

Charles J. Rocco, Attorney at Law     212.257.7101     crocco@fgppr.com
40 Wall Street, 54th Floor, New York, New York 10005     tel 212.257.7100     www.fgppr.com

Chicago | Irvine | San Francisco | New York | London | Denver | Las Vegas | Phoenix

Mr. Peter M. Gillon
December 30, 2020
Page **2** of **4**

### IV.    CONDITIONS

\*\*\*

R.    Requirements in Case of Loss

\*\*\*

The Insured, as often as may be reasonably required, shall produce for examination all books of account, bills, business records, invoices and other vouchers, or any other documents reasonably related to the procurement of this policy or to the scope and extent of the loss at such reasonable time and place as may be designated by this Company, and shall permit extracts and copies thereof to be made.

The Insured, and any officer, director, or employee thereof, shall, as often as may be reasonably requested by this Company, submit to examination under oath by any person named by this Company, while not in the presence of any other Insured, about any matter relating to this insurance or to any claim, and the Insured shall sign and return the original transcript of the examination within thirty (30) days after submission to the Insured.

\*\*\*

Insurers request that JWA provide all documentation requested in the attached **Schedule "A,"** on or before **January 31, 2020**. Insurers further request that JWA thereafter appear for an EUO on **February 17, 2020**. The EUO will be conducted at a mutually convenient location and will commence at **10:00 a.m.** It will be conducted by the undersigned or another attorney from my firm. Please be advised that as part of your ongoing cooperation, you will be required to subscribe to the minutes of the examination and to produce any further information and documentation designated during the EUO. If the date and chosen location is not convenient for JWA, please contact the undersigned to reschedule the EUO to a mutually agreeable time. We take the opportunity to discuss the basis for our request below.

The Insurers request an EUO because of JWA's continued failure to provide documents and other information requested throughout its Loss investigation. By letter dated September 30, 2020, by and through their independent adjuster, Sedgwick, Insurers advised JWA that they were investigating the Loss. The letter further advised that Insurers expressly reserved all of its rights under the Policy and at law while its investigation continued. Finally, the letter requested information necessary to the Insurers' evaluation of the Claim. Thereafter, the Insurers, by and through Sedgwick, followed up on the documents and information requested therein. To date, JWA still has not provided any of the information requested by Insurers. Accordingly, the

Mr. Peter M. Gillon
December 30, 2020
Page **3** of **4**

Insurers request that JWA produce all information as set forth in **Schedule "A,"** and appear for EUO thereafter at the above-referenced time and location.

## II.     Insurers Continue to Investigate the Loss under a Full Reservation of Rights

Finally, please note that Insurers reserve all rights and defenses known or unknown under the Policy or applicable law, regardless of whether they are contained in this document. Nothing contained within this document, nor any act of Insurers or their representatives, is to be construed as a waiver of any known or unknown defenses the Insurers may have under the Policy, applicable law, and at equity. Please contact the undersigned with any questions

Respectfully Submitted,

Foran Glennon Palandech Ponzi & Rudloff PC

By:  *[signature]*

Charles J. Rocco

Enclosure

Mr. Peter M. Gillon
December 30, 2020
Page **4** of **4**

## SCHEDULE A

- All documents that refer or relate to the fire that occurred on August 4, 2020, including, but not limited to, any damage assessments, cause and origin reports and/or fire safety documents;
- All correspondence, notes of discussions, e-mail exchanges, and other documents that reflect communications between JW Aluminum and Marsh that led to the issuance by Marsh of its June 15, 2020 e-mail request attached hereto;
- All email communications between JWA and Marsh pre- and post-Loss discussing the $60,000,000 "scraping" as referenced in the attached email;
- All documents that list the $60,000,000 of equipment that is referred to in the attached email;
- All documents establishing the breakdown of values by equipment for the $169,342,392 for the Legacy equipment/building listed on the 2019 Statement of Values;
- All documents establishing the breakdown of values by equipment for the $212,294,765 for the Boilermaker equipment/building set forth in the attached email;
- All documents, including but not limited to business plans, budgets, forecasts, and lists of potential customers, supporting and/or documenting JWA's pre-Loss intent to use production from Mt. Holly to be sold as "cast coil" directly in the market;
- All documents that support and/or document JWA's intent to run both the boilermaker and legacy facilities simultaneously and each at full capacity, even after the boilermaker was fully operational; and
- All other documents supporting JWA's business interruption claim.