

April 22, 2021

**_VIA EMAIL_**

Peter M. Gillon
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036
peter.gillon@pillsburylaw.com

|       |                   |                                      |
|-------|-------------------|--------------------------------------|
| RE:   | Insured:          | JW Aluminum                          |
|       | Date of Loss:     | August 4, 2020                       |
|       | Location of Loss: | 435 Old Mt. Holly Road, Goose Creek, SC |

Dear Mr. Gillon:

As we previously advised, we represent ACE American Insurance Company, General Security Indemnity Company of Arizona and Westport Insurance Corporation (collectively, "Insurers") in this matter.  This is in response to your March 2, 2021 letter.

As an initial matter, we thank you for the production of over 30,000 pages of documents in response to our previous Requests for Information.  We have now had an opportunity to review the documents and consider the explanations provided during our telephone conference with your firm concerning the outstanding issues.  As further discussed below, based on our review of the documents, the Insurers would like to proceed with the examination under oath.

Questions remain regarding the $60M in equipment that JWA was scraping at the existing Mt. Holly building as referenced in the June 15 Marsh email.  There appear to be two explanations for this reference in the email.  First, it was JWA's intention to remove $60M of equipment from coverage under the Policies.   In its October 2019 Property Coverage presentation to the Insurers during a 2020 renewal meeting, JWA identified an intent to deduct $60M in values for "Out of Service" equipment.  Your production includes an internal May 18, 2020 email exchange between Ryan Grohmann and Stan Brant confirming that, with the exception of equipment to be used as spares or melters in RSV, the remaining Legacy MTH melt/cast equipment should be disposed of in an inoperable state.   That email exchange was less than a month before the June 15 Marsh email to Insurers.  On the other hand, it is your position that the $60M referenced in the June 15 Marsh email was made up of two pieces of equipment for Boilermaker, totaling $47M, which was previously added onto the policy, plus $13M of "bookkeeping adjustments."  You explained that the intent was to prevent such equipment from being double counted when JWA added the

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC

Charles J. Rocco, Attorney at Law    212.257.7101    crocco@fgppr.com
40 Wall Street, 54th Floor, New York, New York 10005    tel 212.257.7100    www.fgppr.com

Chicago | Irvine | San Francisco | New York | London | Denver | Las Vegas | Phoenix

Mr. Peter M. Gillon
April 22, 2021
Page **2** of **2**

Boilermaker values to the Policy.  The Insurers require additional documents and information to resolve this issue.

The JWA production is void of any substantive communications for the time period of April 2020 through June 15, 2020 explaining the intent behind the request to scrape the $60M for Mt. Holly.  The production includes emails between JWA and Marsh leading up to the June 15 email but they simply reference adding Boilermaker and scraping $60M for Mt. Holly, without an explanation as to the composition of the $60M.  An April 24, 2020 email between Lindsay Grimes of Marsh and Phil Cavatoni of JWA references a telephone call wherein this issue may have been discussed, but there are no written communications between JWA and Marsh in the production to clarify the issue.  We further note that JWA did not provide any post-loss communications between JWA and Marsh related to this topic.  We reiterate our previous request for this information as it is relevant to the investigation.  Please also provide: (1) all internal Marsh communications leading up to the June 15 Marsh email; and (2) all subsequent internal Marsh communications on this issue.

Additionally, our Requests for Information contain a request for all documents that refer or relate to the fire, including damage assessments, cause and origin reports, and/or fire safety documents.  During our call, your firm advised that all of these documents were previously produced to our adjustment team during the investigation via a drop box or share site.  We reached out to the adjustment team on this issue and confirmed that all of these documents were not provided to them.  This should include but not be limited to witness statements regarding the August 4, 2020 loss event and any incident reports and/or notes or descriptions of that loss event.  Please provide same. Once we receive the requested documentation, we can evaluate the need to move forward with the examination under oath and as to which topics.

This, as well as all communications with respect to this claim, are without waiver of and/or prejudice to any and all Policy provisions and any and all rights and/or defenses of Insurers whether under the Policies or at law, all of which  continue to be expressly reserved.

If you have any questions, please do not hesitate to contact the undersigned.

Very truly yours,

Foran Glennon Palandech Ponzi & Rudloff PC

By:

Charles J. Rocco

cc:     Brendan Hogan (Pillsbury)
        Wayne Glaubinger
        John Mezzacappa