# EXHIBIT A

# CHUBB

**ACE American Insurance Company**
**436 Walnut Street**
**Philadelphia, PA 19106**

**POLICY NO:** EPRN14338688

| ACE USA PROPERTY | DECLARATIONS |
|---|---|

Service Office: Atlanta, Georgia

**Insured:** JW Aluminum Company
**Address:** 435 Old Mt. Holly Road
Goose Creek, SC  29445

**Policy Period:** From 12/31/2019 at 12:01 A.M., to 12/31/2020 at 12:01 A.M. Standard Time at place of issuance.
To the extent that coverage in this policy replaces coverage in other policies terminating at noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.
The insurance afforded is only with respect to the specific part and coverages therein, the full title of which is set forth below the caption "Form."

| PERILS INSURED | COVERAGE PROVIDED | FORM | LIMIT OF LIABILITY | PREMIUM ANNUAL |
|---|---|---|---|---|
| AS PER FORMS AND ENDORSEMENTS ATTACHED | AS PER FORMS AND ENDORSEMENTS ATTACHED | AS PER FORMS AND ENDORSEMENTS ATTACHED | $112,500,000 per occurrence, that being 45% part of $250,000,000 per occurrence excess of various deductibles. | $450,000.00 |
| | | | CERTIFIED TERRORISM NON-CERTIFIED TERRORISM | $0.00 $0.00 |
| ISSUED: STARR TECHNICAL RISKS AGENCY, INC. | | | **TOTAL** | $450,000.00 |

Forms and endorsements attached to policy at inception:  Common Policy Conditions (IL00171198), Commercial Property Conditions (CP00900788), OFAC Advisory Notice to Policyholders (ILP0010104) SEE SCHEDULE OF FORMS AND ENDORSEMENTS ATTACHED.

Surcharges at inception:

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | **TOTAL SURCHARGES** | |

*Michael C. ᗷ*

Signature of Authorized Agent          Located at Atlanta, Georgia          2/21/2020

UW6033B

Chubb. Insured.℠

This Declaration and Form(s), with Policy Standard Conditions and Endorsements, if any, issued to form a part thereof, completes the above numbered policy.

## PARTICIPATION CLAUSE:

This policy covers for 45% interest in this insurance, and this company shall not be liable for more than 45% of the limit of liability, sublimits of liability, any other limits of insurance or any aggregate limits contained within the form attached to this policy or contained in any endorsements attached to this policy.

Chubb. Insured.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.

2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

 Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

## I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.
2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:
   a. Someone insured by this insurance;
   b. A business firm:
      (1) Owned or controlled by you; or
      (2) That owns or controls you; or
   c. Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

CP 00 90 07 88

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004

# CHUBB'

## U.S. FOREIGN ACCOUNT
## TAX COMPLIANCE ACT ("FATCA")

The U.S. Foreign Account Tax Compliance Act, commonly known as "FATCA", became the law in the U.S. in March of 2010 and becomes effective July 1, 2014.  Pursuant to FATCA, brokers, producers, agents and/or clients may need to obtain withholding certificates from insurance companies.  For information on how to obtain the applicable withholding certificate from CHUBB U.S. insurance companies, please go to the following web site:

http://www.acegroup.com/us-en/businesses/foreign-account-tax-compliance-act-fatca.aspx

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy, pages 1 – 61.

Provided that:

1.  The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.  The liability of each of the Insurers shall not exceed the Participation Limit set against its name with the exception of loss adjustment and professional fees which cost shall be 100% assume by the Insurers on each applicable layer of Insurance.

3.  In the event an occurrence results in liability payable under more than one policy issued to the Named Insured being Insured, coinsured and/or reinsured in whole or in part by the Company or any of its affiliated or agent companies, the maximum amount payable in the aggregate under all such policies shall be the applicable limits of liability indicated in this Policy regardless of the number of coverages, locations or perils involved.

**Insured:** JW Aluminum Company, JW Holding Company, JW Aluminum Jackson Inc. and its affiliated, subsidiary, and associated companies and/or corporations and the insured's interest in partnerships and joint ventures as now exist or may hereafter be constituted or acquired and any party in interest which the insured is responsible to insure

**Policy Period: December 31, 2019 to December 31, 2020**

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurers | Policy No. | Participation | Signature |
|---|---|---|---|
| ACE American Insurance Company | EPRN14338688 | 45% | _Mr f C 152_ |
| Westport Insurance Corporation | NAP045191707 | 27.5% | |
| AIG Specialty Insurance Company | 18257132 | 15% | |
| General Security Indemnity Company of Arizona | FA0064010-2019-1 | 12.5% | |

Producer:
Marsh USA, Inc.
3560 Lenox Road, Suite 2400
Atlanta, GA 30326

## TABLE OF CONTENTS
### (Order In Which They Appear)

DECLARATIONS..................................................................................................4
DEDUCTIBLES (PER OCCURRENCE):.....................................................................6
ALL-RISK POLICY..............................................................................................8
I. INSURING AGREEMENT ..................................................................................8
A. Perils Insured ...............................................................................................8
B. Territorial Limits ...........................................................................................8
C. Property Insured ...........................................................................................8
D. Newly Acquired Locations .............................................................................9
E. Additional Coverages.....................................................................................9
    1.  Debris Removal ......................................................................................9
    2.  Demolition and Increased Cost of Construction......................................9
    3.  Expediting Expense.................................................................................10
    4.  Fire and Police Department Service Charge ............................................10
    5.  Hazardous Substances or Contaminants.................................................10
    6.  Miscellaneous Unnamed Locations .........................................................10
    7.  Pairs and Sets .......................................................................................11
    8.  Transit ..................................................................................................11
II. EXCLUSIONS..................................................................................................12
III.  PREMIUM....................................................................................................15
IV.  CONDITIONS ...............................................................................................16
A. Abandonment ...............................................................................................16
B. Action Against Company ................................................................................16
C. Appraisal ......................................................................................................16
D. Assignment ..................................................................................................16
E. Assistance and Cooperation of the Insured .....................................................16
F. Brands and Labels .........................................................................................16
G. Cancellation..................................................................................................16
H. Company's Options .......................................................................................17
I.  Deductibles ..................................................................................................17
J. Due Diligence ...............................................................................................17
K. Errors in Description .....................................................................................17
L.  Inspection ...................................................................................................17
M.  Limits and Sublimits of Liability....................................................................17
N. Loss Payable ................................................................................................18
O. Misrepresentation .........................................................................................18
P. Other Insurance ...........................................................................................18
Q. Report of Values ..........................................................................................18
R. Requirements In Case of Loss ........................................................................19
S. Salvage and Recovery ...................................................................................19
T. Special State Requirements ...........................................................................19
U. Subrogation .................................................................................................19
V. Suspension ..................................................................................................20
W. Term of Insurance........................................................................................20
X. Vacant/Unoccupied Premises .........................................................................20
Y. Valuation .....................................................................................................20
V. DEFINITIONS.................................................................................................21
A. Earth Movement ...........................................................................................21
B. Flood ...........................................................................................................21
C. Hazardous Substances or Contaminants.........................................................21
D. Insured ........................................................................................................22
E. Occurrence ..................................................................................................22
F. Premises Described........................................................................................22

G. Product Recall ...........................................................................................................................22
H. Time Element.............................................................................................................................22
I.  Valuable Papers and Records....................................................................................................22
ENDORSEMENT - ACCOUNTS RECEIVABLE ............................................................................23
ENDORSEMENT - AUTHORITIES EXCLUSION ..........................................................................24
ENDORSEMENT - BIOLOGICAL OR NUCLEAR EXCLUSION ....................................................25
ENDORSEMENT - BUSINESS INTERRUPTION ACTUAL LOSS SUSTAINED ..........................26
ENDORSEMENT - BRIDGE WORDING.........................................................................................30
ENDORSEMENT - CONTINGENT BUSINESS INTERRUPTION ..................................................31
ENDORSEMENT - CONTROL OF DAMAGED MERCHANDISE....................................................35
ENDORSEMENT - COURSE OF CONSTRUCTION......................................................................36
ENDORSEMENT - DATA DISTORTION / CORRUPTION EXCLUSION ........................................37
ENDORSEMENT - EDP EQUIPMENT & MEDIA...........................................................................38
ENDORSEMENT - EXTENDED PERIOD OF INDEMNITY ...........................................................39
ENDORSEMENT - EXTRA EXPENSE ..........................................................................................40
ENDORSEMENT - FINE ARTS......................................................................................................43
ENDORSEMENT - INGRESS / EGRESS ......................................................................................44
ENDORSEMENT - LEASEHOLD INTEREST ...............................................................................45
ENDORSEMENT - NAMED WINDSTORM DEFINITION ..............................................................46
ENDORSEMENT - POLITICAL RISK EXCLUSION.......................................................................47
ENDORSEMENT - SERVICE INTERRUPTION ENDORSEMENT ................................................48
ENDORSEMENT - TEMPORARY REMOVAL OF PROPERTY.....................................................49
ENDORSEMENT - VALUABLE PAPERS AND RECORDS ENDORSEMENT ...............................50
ENDORSEMENT - NAMED SUPPLIERS AND CUSTOMERS ......................................................51
ENDORSEMENT - PROFESSIONAL FEES...................................................................................52
ENDORSEMENT - REPORTED VALUES ......................................................................................53
ENDORSEMENT - SCHEDULE OF LOCATIONS .........................................................................54
ENDORSEMENT - NAMED ADJUSTER ........................................................................................55
ENDORSEMENT – RADIOACTIVE CONTAMINATION..................................................................56
ENDORSEMENT – MOLTEN MATERIAL.......................................................................................57
ENDORSEMENT – SUE AND LABOR ...........................................................................................58
ENDORSEMENT – CONFLICT IN WORDING ENDORSEMENT ..................................................59
APPENDIX - EARTHMOVEMENT ZONES AND TIER 1 AND TIER 2 WIND AREAS......................................

## DECLARATIONS

**NAMED INSURED:** JW ALUMINUM COMPANY, JW HOLDING COMPANY, JW ALUMINUM JACKSON INC. AND ITS AFFILIATED, SUBSIDIARY, AND ASSOCIATED COMPANIES AND/OR CORPORATIONS AND THE INSURED'S INTEREST IN PARTNERSHIPS AND JOINT VENTURES AS NOW EXIST OR MAY HEREAFTER BE CONSTITUTED OR ACQUIRED AND ANY PARTY IN INTEREST WHICH THE INSURED IS RESPONSIBLE TO INSURE

**MAILING ADDRESS:** 435 OLD MT. HOLLY ROAD
GOOSE CREEK, SC  29445

**LOSS PAYABLE CLAUSE:** LOSS, IF ANY, TO BE ADJUSTED WITH AND PAYABLE TO INSURED, WHOSE RECEIPT SHALL CONSTITUTE A RELEASE IN FULL OF ALL LIABILITY UNDER THIS POLICY AS REGARDS SUCH LOSS.

**TERM OF INSURANCE:** FROM 12/31/2019 TO 12/31/2020 AT 12:01 A.M. STANDARD TIME, AT THE LOCATION OF THE PROPERTY INVOLVED.

**PREMIUM:** **$1,000,000**
*(Being 100% Annual Premium – See Participation Page)*

**LIMIT OF LIABILITY:** THE LIMIT OF LIABILITY UNDER THIS POLICY SHALL IN NO EVENT EXCEED THE AMOUNT SHOWN BELOW FOR ANY ONE ACCIDENT OR DISASTER OR ANY ONE SERIES OF ACCIDENTS OR DISASTERS ARISING OUT OF ANY ONE OCCURRENCE.

**POLICY LIMIT OF LIABILITY:** $250,000,000 ANY ONE OCCURRENCE

**SUBLIMITS: SUBLIMITS ARE PER OCCURRENCE UNLESS SHOWN OTHERWISE.**

THE SUBLIMITS BELOW ARE PART OF AND NOT IN ADDITION TO THE POLICY LIMIT OF LIABILITY. SUBLIMITS ARE 100% AND ARE SUBJECT TO PERCENTAGE PARTICIPATION AS SPECIFIED IN THE PARTICIPATION PAGE.

| | | | |
|---|---|---|---|
| **A.** | Earth Movement in Non High Hazard Zones: | $100,000,000 | Annual Aggregate, except; |
| | Earth Movement in Pacific Northwest Zones: | $ 40,000,000 | Annual Aggregate, except; |
| | Earth Movement in New Madrid Zones: | $ 40,000,000 | Annual Aggregate, except; |
| | Earth Movement in High Hazard Zones and the entire States of California, Alaska, Hawaii and the Island of Puerto Rico: | No Coverage | |
| **B.** | Flood (except locations in Zones A&V): | $100,000,000 | Annual Aggregate, except; |
| | Flood in locations in Zones A&V (including subzones) and Flood in St. Louis, MO, Combined: | $ 20,000,000 | Annual Aggregate |
| **C.** | Named Windstorm: | $200,000,000 | Tier 1 Only |
| **D.** | Accounts Receivable: | $ 5,000,000 | |
| **E.** | Business Interruption: | $ 80,153,418 | |

| F. | Business Interruption Extended Period of Indemnity: | 180 Days | |
|----|---|---|---|
| G. | Civil / Military Authority (Business Interruption Section): | 45 Consecutive Days; 10 Mile Limit | |
| H. | Contingent Business Interruption (Direct Suppliers/ Receivers): | $ 5,000,000 | |
| I. | Contingent Business Interruption (Unnamed Direct Suppliers/Receivers): | $ 2,500,000 | |
| J. | Debris Removal: | $ 25,000,000 | or 25% of adjusted direct property loss, whichever is greater |
| K. | Electronic Data Processing and Media: | $ 50,000,000 | |
| L. | Errors and Omissions: | $ 5,000,000 | |
| M. | Expediting Expense: | $ 5,000,000 | |
| N. | Extra Expense: | $ 10,000,000 | |
| O. | Fine Arts: | $ 1,000,000 | |
| P. | Demolition and Increased Cost of Construction: | $ 25,000,000 | |
| Q. | Impounded Water: | 30 Consecutive Days | |
| R. | Ingress/Egress: | 45 Consecutive Days; 10 Mile Limit | |
| S. | Professional Fees: | $ 1,000,000 | |
| T. | Newly Acquired Property: | $ 25,000,000 | 90 Day Reporting |
| U. | Service Interruption (Combined PD & TE): | $ 25,000,000 | within 5 miles of scheduled plant location |
| V. | Hazardous Substances: | $ 1,000,000 | |
| W. | Property in the Course of Construction: | $ 10,000,000 | |
| X. | Radioactive Contamination: | $ 5,000,000 | |
| Y. | Sue and Labor: | $ 10,000,000 | |
| Z. | Transit: | $ 5,000,000 | |
| AA. | Miscellaneous Unnamed Locations: | $ 5,000,000 | |
| BB. | Valuable Papers and Records: | $ 5,000,000 | |
| CC. | Fire Fighting Expenses: | $ 1,000,000 | |
| DD. | Temporary Removal of Property: | $ 10,000,000 | 90 Days |
| EE. | Royalties: | $ 1,000,000 | |
| FF. | Water, Liquid, Power of Molten Material Damage: | $ 10,000,000 | |

| GG. | Boiler and Machinery: | | $250,000,000 | Per Accident, except; |
|---|---|---|---|---|
| | Ammonia Contamination: | $ | 1,000,000 | Per Accident, except; |
| | Hazardous Materials: | $ | 1,000,000 | Per Accident |

## DEDUCTIBLES (PER OCCURRENCE):

ALL DEDUCTIBLES LISTED BELOW ARE PER OCCURRENCE EXCEPT WITH RESPECT TO COVERAGE PROVIDED UNDER THE BOILER & MACHINERY ENDORSEMENT (IF PROVIDED) WHICH SHALL BE ANY ONE ACCIDENT.

PROPERTY DAMAGE:                    $1,000,000 EXCEPT

FLOOD ZONE A (INCLUDING SUBZONES) –
PD:                              2% OF THE REPORTED PROPERTY VALUES AT THE
                                 LOCATION(S) INVOLVED IN THE LOSS SUBJECT TO A
                                 MINIMUM OF $1,000,000 PER OCCURRENCE, EXCESS
                                 OF AVAILABLE NFIP PROGRAM LIMITS WHETHER
                                 PURCHASED OR NOT

NAMED WINDSTORM - PD:            2% OF THE REPORTED PROPERTY VALUES AT THE
                                 LOCATION(S) INVOLVED IN THE LOSS SUBJECT TO A
                                 MINIMUM OF $500,000 PER OCCURRENCE AT
                                 LOCATIONS IN TIER 1 COUNTIES PER APPENDIX.

EARTH MOVEMENT – PD:             2% OF THE REPORTED PROPERTY VALUES AT THE
                                 LOCATION(S) INVOLVED IN THE LOSS SUBJECT TO A
                                 MINIMUM OF $1,000,000 PER OCCURRENCE AT
                                 LOCATIONS IN NEW MADRID AND PACIFIC NORTHWEST
                                 ZONES PER APPENDIX.

TRANSIT:                         $250,000 PER CONVEYANCE

TIME ELEMENT:                    10 TIMES 100% AVERAGE DAILY BI VALUE* AT THE TIME
                                 OF LOSS, EXCEPT;

                                 $826,000 APPLIES TO MOUNT HOLLY LOCATION.

SERVICE INTERRUPTION:            48 HOUR WAITING PERIOD AND THE ABOVE
                                 DEDUCTIBLES SHALL APPLY.

*AS RESPECTS BUSINESS INTERRUPTION, WITH RESPECT TO ALL CLAIMS FOR LOSS, DAMAGE, OR EXPENSE ARISING OUT OF ANY ONE OCCURRENCE, FROM THE TOTAL AMOUNT OF ANY LOSS, DAMAGE OR EXPENSE FOR WHICH THE COMPANY WOULD BE LIABLE UNDER BUSINESS INTERRUPTION SECTION, THERE SHALL FIRST BE DEDUCTED THE AMOUNT OBTAINED BY MULTIPLYING "THE 100% PLANT BUSINESS INTERRUPTION DAILY VALUE" DECLARED BY THE INSURED AT THE TIME OF LOSS BY THE FACTOR OF 10 AND THE INSURANCE UNDER SAID ITEM SHALL NOT APPLY TO ANY PART OF SUCH AMOUNT DEDUCTED.

"THE 100% PLANT BUSINESS INTERRUPTION DAILY VALUE" DECLARED BY THE INSURED AT THE TIME OF SUCH LOSS, DAMAGE OR EXPENSE AS DESCRIBED ABOVE SHALL MEAN THE ACTUAL AMOUNT OF GROSS EARNINGS, LESS CHARGES AND EXPENSES WHICH DO NOT NECESSARILY CONTINUE DURING THE INTERRUPTION OF BUSINESS, THAT WOULD HAVE BEEN EARNED HAD NO LOSS OR DAMAGE OCCURRED, DIVIDED BY THE ACTUAL NUMBER OF WORKING DAYS, HAD NO LOSS OCCURRED DURING THE PERIOD OF INTERRUPTION OF THE BUSINESS WITH DUE

CONSIDERATION BEING GIVEN TO THE EXPERIENCE OF THE BUSINESS BEFORE THE DATE OF LOSS OR DAMAGE AND THE PROBABLE EXPERIENCE THEREAFTER HAD NO LOSS OCCURRED.

AS RESPECTS REAL AND PERSONAL PROPERTY , ALL CLAIMS FOR LOSS, DAMAGE OR EXPENSE ARISING OUT OF ANY ONE OCCURRENCE SHALL BE ADJUSTED AS ONE CLAIM AND FROM THE AMOUNT OF EACH SUCH ADJUSTED CLAIM THERE SHALL BE DEDUCTED THE SUM STATED ON THE DECLARATIONS PAGE.

DEDUCTIBLES FOR PROPERTY DAMAGE AND TIME ELEMENT SHALL BE APPLIED SEPARATELY.

**PROPERTY COINSURANCE:**          NOT APPLICABLE

**BUSINESS INTERRUPTION COINSURANCE:**  NOT APPLICABLE

## ALL-RISK POLICY

## I. INSURING AGREEMENT

In consideration of the premium paid, and subject to the terms and conditions of this Policy, the Company (ies) listed on the Participation Page, hereafter referred to as the "Company", agree to pay the Named Insured, as stated in the Declarations, for loss as described in this Policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is, and is not, covered.

Words and phrases which begin with a capital letter, other than those which begin a sentence, have special meaning. Refer to the Definition section or to the applicable section headings of the policy or any endorsements thereto.

A. Perils Insured

This policy insures against all risks of direct physical loss or damage to Property Insured from perils not otherwise excluded, subject to the terms and conditions of this policy.

In the event of such direct physical loss or damage to any Property Insured at the Premises Described in the Declarations, and such damage, without the intervention of any other independent cause, results in a sequence of events which causes physical damage to other Property Insured by this policy, then this policy will cover such resulting loss or damage. Nothing in this clause shall be deemed to extend this insurance to property which is otherwise specifically excluded from coverages by the terms of this policy.

B. Territorial Limits

This policy covers Property Insured within the fifty (50) states of the United States of America, the District of Columbia, Puerto Rico and Canada;

C. Property Insured

This policy covers the following kinds of property at the Premises Described in the Declarations unless otherwise excluded:

1. Real property, including improvements and betterments, owned by the Insured, or in which the Insured has an insurable interest; and

2. Personal property owned by the Insured; and

3. Personal property of others which the Insured, prior to a loss, has agreed to insure against the types of losses covered by this policy; and

4. Personal property of others in the custody of the Insured and for which the Insured is legally liable; but only to the extent of the Insured's legal liability therefore. This Company agrees to defend any suit against the Insured alleging liability for the damage or destruction of such personal property, even if the allegations of the suit are false, fraudulent, or groundless. The Company may make such investigation or settlement of such suit as the Company deems appropriate.

5. Personal property of employees, other than motor vehicles.

This policy also covers the following kinds of property, owned by the Insured or others in the custody of the Insured and for which the Insured is legally liable:

6. electrical transmission and distribution lines, line transformers, towers and poles, cables, pipes and pipelines, and equipment or apparatus connected therewith while situated on or within 1 mile of the Premises Described in the Declarations.

D. Newly Acquired Locations

Subject to its terms and conditions, this policy also covers property at Newly Acquired Locations, rented, purchased or in the course of construction, acquired after the inception date of this policy for a period of ninety (90) days from the date of acquisition. Permanent coverage may be provided subject to notification to and acceptance by the Company at terms to be agreed upon at the time of acceptance. There shall be no liability under this coverage for loss or damage caused by or resulting from the perils of Zone A Flood or Earth Movement in Alaska, California, Hawaii and Puerto Rico.

The Company's total liability under this provision shall be limited to the Sublimit of Liability for Newly Acquired Locations specified in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

E. Additional Coverages

1. Debris Removal

This policy shall also pay the cost of removing debris of Property Insured that is destroyed or damaged by a Peril Insured herein at Premises Described in the Declarations. The Company's total liability for such payment shall not exceed the greater of (1) 25% of the Company's liability, prior to the application of any deductible(s), for the direct physical loss or damage to Property Insured which necessitated the debris removal, or (2) $25,000,000. However, in no event shall the Company's liability exceed the amount actually expended by the Insured for the removal of debris. This provision does not include the cost of removing Hazardous Substances or Contaminants from Property Excluded, nor for the cost to remove, restore or replace such property. The coverage that is provided by this provision is part of, and not in addition to, the limits of liability specified elsewhere in this policy.

No liability shall exist under this provision unless such costs are reported to the Company within one hundred eighty (180) days of the date of the Occurrence or the expiration of this policy, whichever shall be earlier.

2. Demolition and Increased Cost of Construction

If at the time of any direct physical loss or damage insured against by this policy there is in force any law, ordinance, rule or regulation regulating the construction, repair, replacement or use of buildings or structures, then this policy is extended to cover:

a. the additional loss sustained in demolishing any undamaged portion of the buildings or structures necessitated by such law, ordinance, rule or regulation; and

b. the cost incurred in actually rebuilding both the damaged and demolished portions of such buildings or structures in a manner to satisfy such law, ordinance, rule or regulation.

No liability is assumed under this provision for any increase of loss associated with the enforcement of any law or ordinance, which requires the Insured, or others, to:

   a.  test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess, the effects of Hazardous Substances or Contaminants;

The total liability under this provision shall not exceed the actual expenditure incurred in demolishing the undamaged portion of the building(s) or structure(s) involved, plus the lesser of the following:

   a.  the actual expenditure incurred, not including the cost of land, in rebuilding on another site; or

   b.  the cost of rebuilding on the same site.

The Company's total liability under this provision shall not exceed the greater of $25,000,000 or, where specified, the Sublimit of Liability for Demolition and Increased Cost of Construction shown in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

3. Expediting Expense

This policy shall also pay for the reasonable extra cost to make temporary repairs and to expedite the permanent repair or replacement of Property Insured damaged by a Peril Insured, including overtime and the extra cost of express or other rapid means of transportation.

The Company's total liability under this provision shall be limited to the Sublimit of Liability for Expediting Expenses specified in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

4. Fire and Police Department Service Charge

This policy is extended to cover reasonable expenses charged by fire or police departments as a result of a loss as insured hereunder.

5. Hazardous Substances or Contaminants

If, as a result of an Occurrence insured hereunder, any property on the Premises Described in the Declarations is damaged, contaminated or polluted by Hazardous Substances or Contaminants, the Company shall be liable under this policy and any of its endorsements, for the additional expenses incurred for cleanup, repair or replacement, or disposal of that damaged, contaminated or polluted property. As used here, additional expenses shall mean expenses incurred beyond those for which the Company would have been liable if no Hazardous Substances or Contaminants had been involved in the Occurrence.

The Company's total liability under this provision shall be limited to the greater of $1,000,000 or, where specified, the Sublimit of Liability for Hazardous Substances or Contaminants shown in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

6. Miscellaneous Unnamed Locations

This policy is extended to cover Property Insured while at fixed locations not included in the Premises Described in the Declarations. This coverage applies to physical loss or damage and Time Element coverages, excluding Flood Zones A and V (including subzones) and Earth Movement in Alaska, California, Hawaii and Puerto Rico.

The Insured shall, as of the inception date of this policy, and within ninety (90) days of each anniversary thereafter, send to the Company a statement of the insurable values of such locations as of the most recent inception or anniversary date. These statements shall be the basis for premium to be charged for this coverage. Failure to provide such statement in the time required shall void this extension.

Coverage under this extension shall not apply to signs, tracks, trestles, bridges, tunnels, electrical transmission and distribution lines, line transformers, towers and poles, cables, pipes and pipelines, equipment or apparatus connected to any of the preceding, property contained within any vehicle or other conveyance, or property in the due course of transit.

Liability under this provision shall not exceed the greater of $5,000,000 or, where specified, the Sublimit of Liability for Miscellaneous Unnamed Locations shown in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

7. Pairs and Sets

In the event of direct physical loss or damage to any article or articles which are part of a pair or set, this policy is extended to cover the fair and reasonable proportion of the pair or set. Due consideration shall be given to the importance of said article or articles, but in no event shall such loss or damage be construed automatically to mean the total loss of the pair or set, and due consideration shall be given to any remaining value.

8. Transit

This policy is extended to cover direct physical loss or damage not otherwise excluded to Property Insured while in transit within the territorial limits of this policy. This shall include Property Insured while in transit in the coastal waters of the United States or Puerto Rico to a distance of twelve (12) miles, Property Insured while in transit between the continental United States or Alaska and Canada, or Property Insured while in transit between the continental United States and Alaska. This includes any means of conveyance, from the commencement of loading and continuously thereafter, including the location of any repair, temporary storage, consignment or exhibition, including deviation and delay, until unloaded at the place of final destination. This policy shall also pay for direct physical loss or damage to property sold and shipped by the Insured, in which the Insured retains an interest, under terms terminating the shipper's responsibility short of points of delivery, and shall pay for direct physical loss or damage caused by any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery, or resulting from the acceptance by the Insured or by its agents of fraudulent bills of lading, shipping and delivery orders, or similar fraudulent documents.

The Insured may accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting their liability, but this provision shall not inure to the benefit of any carrier, bailee, warehouseman, or processor.

The Insured's rights shall not be prejudiced by any agreements exempting lightermen from liability.

This policy excludes property of others, and the Insured's legal liability therefor, being hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier as defined by either the Interstate Commerce Commission or other regulatory agencies. In addition, this provision shall not include coverage for any conveyance used as the mode of transportation for property in transit.

This policy excludes property on waterborne shipments to and from any point and Hawaii, Alaska and Puerto Rico, except within their 12 miles of coastal waters; but shall not exclude

waterborne shipments between the continental United States and Alaska while within the coastal waters of the United States or Canada to a distance of twelve (12) miles.

The Company's total liability under this provision shall be limited to the Sublimit of Liability for Transit specified in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

## II. EXCLUSIONS

### A. Property Excluded

This policy does not insure against loss or damage to the following property:

1. Accounts, bills, currency, deeds, evidences of debt or title, money, notes, securities, fine arts, jewelry, furs, precious metals, or precious stones.

2. Land, land improvements, water, crops, animals, shrubs, plants, trees or standing timber. This exclusion shall apply to the cost of reclaiming, restoring, or repairing any of the foregoing. "Land Improvements," as used herein, shall mean any alteration in the natural condition of land including, without limitation, grading, and earthen dikes or similar works. "Land Improvements," as used herein, shall also mean open pit or surface mines, including all benches, berms, cuts, walls, roads, and other land structures constituting a part of such mine, including all unmined ore. However, "Land Improvements" shall not mean pavements or sidewalks.

3. Aircraft, watercraft or spacecraft; vehicles, if such vehicles are otherwise insured for physical loss or damage.

4. Underground mines, tunnels, wells or caverns, and any property contained therein.

5. Dams, watershafts, power tunnels, dikes, gates and flumes.

6. Retaining walls not constituting part of a building, docks, piers, or wharves, and property located thereon, all when such loss is caused by ice, water pressure, or collision.

7. Offshore property, except that structures and their contents extending from land or shore, and floating docks permanently moored to a dock, river bank or shore are not to be considered as offshore.

8. Nuclear reactor power plants, including all auxiliary property on the site or any other nuclear reactor installation.

9. Any nuclear fuel or raw materials used in the nuclear fuel process at any point in the fuel cycle.

10. Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers.

11. Raw, in-process, or finished stock or materials when the loss is caused by errors, omissions, or defects in the design or manufacturing process or by defective materials which result in damage to said stock or materials while it is being manufactured, processed, tested, or worked upon.

12. Machinery, equipment or other property when such property is otherwise protected by the contractor's, manufacturer's or supplier's guaranty, obligation or warranty, whether or not such contractor, manufacturer or supplier is included in the name of the Insured or as an additional

Named Insured, but only to the extent of such guaranty, obligation or warranty. However, if Time Element coverage is provided under this policy, such Time Element coverage shall apply as if this exclusion were not present.

## B. Conditions of Property Exclusions

This policy does not insure against:

1. Any defect or fault in material, workmanship, or design or in planning, zoning, surveying, siting, or developing property. However, if such a defect or fault results in direct physical loss or damage otherwise insured by this policy, then this policy shall cover only such resulting loss or damage. The Company shall not be liable for the costs of rectifying or making good such defect or fault.

2. Wear and tear, deterioration, rust, corrosion or erosion, all unless loss by a peril otherwise insured against hereunder ensues, and then the Company shall be liable only for such ensuing loss.

3. Gradual cracking, settling, shrinkage, bulging, expansion or other gradually developing defects, all unless loss by a peril otherwise insured against hereunder ensues, and then the Company shall be liable only for such ensuing loss.

4. The cracking of any part of a gas turbine exposed to the products of combustion, all unless loss by a peril otherwise insured against hereunder ensues, and then the Company shall be liable only for such ensuing loss.

5. Contamination, shrinkage, evaporation, loss of weight, or loss of contents of containers by leakage, all unless loss by a peril otherwise insured against hereunder ensues, and then the Company shall be liable only for such ensuing loss.

6. Insect or vermin damage, unless loss by a peril otherwise insured against hereunder ensues, and then the Company shall be liable only for such ensuing loss.

7. Electrical breakdown of any electrical machine or electrical apparatus while said equipment is undergoing an insulation breakdown test, all unless loss by a peril otherwise insured against hereunder ensues, and then the Company shall be liable only for such ensuing loss.

## C. Perils Excluded

This policy does not insure loss or damage caused by or resulting from any of the following, regardless of any other cause or event that contributes concurrently or in any other sequence to the loss or damage:

1. a. Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack,

   i. by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or

   ii. by military, naval or air forces; or

   iii. by an agent of any such government, power, authority or forces;

   it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such a government, power; authority or forces;

b. insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority.

2. Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this policy. However, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy.

3. Infidelity or dishonesty of the Insured, or any officer, director, proprietor or partner thereof, acting alone or in collusion with others, or the infidelity or dishonesty of any officer, director, proprietor or partner of any proprietorship, partnership, corporation or association engaged by the Insured to perform any service or perform any act in connection with any Property Insured by this policy.

4. Any shortage of property discovered upon the taking of inventory, or any unexplained or mysterious disappearance of property.

5. Accumulated effects of smog, smoke, vapor, or gas from agricultural or industrial operations.

6. Any increase in loss due to:

   a. the enforcement of any law, ordinance, regulation, rule or ruling requiring, restricting, or affecting the repair, alteration, use, occupancy, operation, construction or installation of any property, or requiring the tearing down of any property, including the cost of removing its debris, except as provided under the Demolition and Increased Cost of Construction provision of the Additional Coverages section;

   b. the suspension, lapse, termination or cancellation of any license, contract, lease or permit; or

   c. any injunction or process of any court.

7. Lack of incoming electricity, fuel, water, gas, steam or refrigerant caused by an Occurrence not at the Premises Described in the Declarations; but, if such a lack of service causes direct physical loss or damage not otherwise excluded to property otherwise insured by this policy while located on the Premises Described in the Declarations, then this policy shall cover such resulting loss or damage.

8. The cost of removing any product subject to a Product Recall, whether the removal is voluntarily undertaken by the Insured or mandated by any executive, legislative, administrative or judicial order, and any Time Element losses resulting from such removal.

9. Any act, error, decision, or omission, or the failure to act or decide, whether committed by the Insured or by others in (a) planning, zoning, surveying, siting, or developing property, (b) establishing or enforcing building codes or standards for construction or materials, (c) designing, specifying, furnishing work, materials, parts, or equipment, or constructing, remodeling, grading, compacting, or maintaining: (i) buildings or structures, (ii) improvements, changes in or additions to land or other real or personal property, or (iii) roads, water, sewers, drainage systems, levees, dikes, or other facilities of any kind, all whether such property or facilities are covered by this policy or are away from premises covered by this policy; but this exclusion shall apply only if a cause of loss otherwise excluded by this policy contributes to direct physical loss or damage or is the cause of direct physical loss or damage.

10. a. The failure, malfunction or inadequacy of any of the following, whether belonging to any Insured or to others: computer hardware, including microprocessors; computer application software; computer operating systems and related software; computer networks; microprocessors not part of any computer system; or any other computerized or electronic

equipment or components; or any other products, and any services, data or functions that directly or indirectly use or rely on, in any manner, any of the foregoing due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates, times, or instructions, including, but not limited to, the inability of computer software to recognize, process, distinguish, interpret, or accept the year 2000 or any other year, including a leap year; or

b. any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or for the Insured to determine, rectify or test for any potential or actual problems described in paragraph a. above.

c. In addition, the Company shall not be liable for the repair, replacement or modification of any items listed in paragraph a. above to correct any deficiencies or change any features.

However, if direct physical loss or damage not otherwise excluded ensues, then this Company shall be liable only for such ensuing loss or damage.

11. The release, discharge, or dispersal of toxic or hazardous substances, contaminants or pollutants, all whether direct or indirect, proximate or remote, or in whole or in part caused by, contributed to or aggravated by any physical damage insured against by this policy, except as specifically provided for under the Additional Coverages, Hazardous Substances or Contaminants extension.

### D. Other Exclusions

1. This policy does not insure loss or damage caused by or resulting from any of the following, regardless of any other cause or event that contributes concurrently or in any other sequence to the loss or damage:

    a. Indirect or remote loss or damage.

    b. Delay or loss of market; penalties for noncompletion of, or delay in completion of, any contract or noncompliance with any contract conditions; fines, penalties or punitive damages; or any costs incurred to eliminate or reduce any of the foregoing.

    c. Interruption of business or other Time Element losses, unless specifically endorsed hereon.

    d. Increase in hazard by any means within the control or knowledge of any officer, director, proprietor or partner of the Insured.

2. This policy does not insure against:

    a. Extremes or changes of temperature or changes in relative humidity, all whether atmospheric or not; exposure to light; change in color or flavor or texture or finish; condensation, dampness, depletion, disease, wet or dry rot, inherent vice, latent defect, mildew, mold, spoilage, or decay; unless such damage results directly from other direct physical damage not otherwise excluded by this policy.

## III. PREMIUM

The Premium shown in the Declarations shall be for the first twelve (12) month period commencing with the effective date of this agreement. This amount shall be subject to adjustment for the coverage of newly constructed properties or properties otherwise acquired or sold during that period, at terms to be agreed upon at the time of such acquisition, sale, or commencement of construction.

Premium for subsequent twelve (12) month periods may be adjusted at each anniversary computed at the rates in effect for such period.

## IV. CONDITIONS

### A. Abandonment

There shall be no abandonment to the Company of any property.

### B. Action Against Company

No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, and unless commenced within twelve (12) months from the date of the Occurrence.

### C. Appraisal

If the Insured and this Company fail to agree on the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty (20) days of such demand. The appraisers shall first select a competent and disinterested umpire, and, if failing for fifteen (15) days to agree upon such umpire, then, on the request of the Insured or this Company, such umpire shall be selected by a judge of a state or federal court of record in the state in which the damaged property is located. The appraisers shall then appraise the loss, stating separately the loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of loss and shall be binding and final. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

### D. Assignment

Assignment or transfer of this policy shall not be valid except with the prior written consent of the Company.

### E. Assistance and Cooperation of the Insured

The Insured shall cooperate with the Company, and upon the Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in conducting suits.

### F. Brands and Labels

In case of damage to property that is covered by this policy and bears a brand, trademark, or label that in any way carries or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal of such brands, trademarks or identifying characteristics. The cost of such removal shall be borne by the Insured.

### G. Cancellation

The Company may cancel this insurance by giving the Insured written notice stating when, not less than ninety (90) days thereafter, (ten [10] days for nonpayment of premium) such cancellation shall be effective. This insurance may be canceled at any time by the Insured by surrender of this policy to the Company or by mailing or delivery to the Company written notice stating when thereafter such cancellation shall take effect.

Return premium shall be allowed the Insured on a pro rata basis if the Company cancels and on a short rate basis if the Insured cancels.

Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of Cancellation, but such payment shall be made as soon as practicable.

H. Company's Options

It shall be optional for this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind, size, capacity and quality within a reasonable time, on giving notice of its intention to do so within thirty (30) days after the receipt of proof of loss herein required.

I. Deductibles

There shall be deducted from the amount of each claim for loss or damage arising out of one Occurrence, as defined herein, the amount stated in this policy as Deductible. Except as set forth below or as specifically endorsed hereon, in the event that more than one Deductible amount applies to any one Occurrence, then only the largest Deductible amount for that Occurrence shall be applied.

If this policy insures against both Property Damage and Time Element losses, the deductible amount(s) as shown in this policy shall apply separately to each such coverage, unless otherwise noted herein or endorsed hereon, even if both are involved in a single Occurrence.

If Time Element coverage(s) is endorsed to this policy, the terms of the deductibles applying to such coverage(s) shall be as set forth in such endorsement(s).

J. Due Diligence

The Insured shall, at the Insured's own expense, take all reasonable precautions to prevent imminent loss or damage to the Property Insured. The Insured shall also consider all reasonable recommendations of the Company to prevent direct physical loss or damage to the Property Insured.

K. Errors in Description

Any error in the description of the Premises Described as shown in the Declarations of this policy shall not operate to the prejudice of the Insured.

L. Inspection

The Company shall be permitted, but not obligated, to inspect, at all reasonable times, the property of the Insured. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of, or for the benefit of, the named Insured or others, to determine or warrant that such property is safe or healthful, nor that such property complies with laws, regulations, codes, or engineering or industry standards.

M. Limits and Sublimits of Liability

The Company shall not be liable for more than the amount shown in the Declarations as the Policy Limit of Liability for any one Occurrence. The inclusion of more than one Insured shall not operate to increase the limits of the Company's liability.

This policy may contain Sublimits of Liability applicable to specific coverages, specific causes of loss, specific kinds of loss, or specific locations. Any applicable sublimits are set forth in the

Declarations. The Company shall not be liable for more than the amount of the Sublimit of Liability for any coverage for which there is a Sublimit of Liability specified in the Declarations. Each Sublimit of Liability shown in the Declarations is a part of, but is not in addition to, the Policy Limit of Liability. The Sublimit of Liability specified in the Declarations as applicable to a specific cause of loss shall apply to all losses arising out of any one Occurrence, whether such losses include damage to real or personal property, Time Element loss (if such coverage is separately endorsed hereon), or both.

**EXAMPLES:**

(1) Assume the policy contains a Time Element sublimit of $20,000,000 and a Flood sublimit of $5,000,000. A flood occurs, and the Insured sustains a property damage loss of $10,000,000 and a Business Interruption (Time Element) loss of $10,000,000. The Insured can recover only $5,000,000 (total for both the property damage and for the Time Element losses) because the applicable Sublimit of Liability for Flood is $5,000,000.

(2) Assume the policy contains a Time Element sublimit of $5,000,000 and a Flood sublimit of $15,000,000. A flood occurs, and the Insured sustains an $8,000,000 property damage loss and a Business Interruption (Time Element) loss of $10,000,000. The Insured can recover only $13,000,000 ($8,000,000 for property damage and $5,000,000 for Time Element) because the Time Element sublimit is $5,000,000.

The insurance provided by this policy as respects the perils of Earth Movement and Flood shall be subject to the annual aggregate sublimits as shown in the Declarations. The Company shall not be liable for more than the amount specified in the Declarations as annual aggregate for any one policy year as respects losses caused by the perils of Earth Movement and Flood. However, fire or explosion which occur as a direct result of a Flood or Earth Movement shall not: (1) be limited to the Flood or Earth Movement Sublimit, nor; (2) contribute to the annual aggregate for Flood or Earth Movement.

N. Loss Payable

Loss, if any, shall be adjusted with the Named Insured and shall be payable to the Insured and to any Mortgagee, Loss Payee, or other Named Insured, or as otherwise directed by the Insured.

O. Misrepresentation

This entire policy shall be void if any Insured, whether before or after a loss, has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or has committed any act of fraud, attempted fraud or false swearing touching any matter relating to this insurance or the subject thereof.

P. Other Insurance

The Company shall not be liable for loss under this policy if, at the time of loss, there is any other insurance which would attach if this insurance had not been effected, whether collectible or not. This insurance shall apply only as excess, and in no event as contributory insurance, and then only after all other insurance has been exhausted.

Q. Report of Values

Within ninety (90) days of each anniversary, the Insured shall file with this Company a statement of the 100% replacement cost values compiled as of the Insured's most recently ended fiscal year.

In the event the Insured fails to furnish the above values which are acceptable to this Company, then this Company shall not be liable under this policy for a greater proportion of any loss to

Property Insured than the amount shown on the Reported Values Endorsement bears to the 100% replacement cost at the time of the loss.

R. Requirements in Case of Loss

When any insured loss or damage occurs, written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable. The Insured shall protect the property from further damage and separate the damaged and undamaged personal property. The Company shall have reasonable time and opportunity to examine the property and the premises of the Insured before repairs are undertaken or physical evidence of the loss or damage is removed, except for protection or salvage.

The Insured shall submit a proof of loss statement, signed and sworn to by the Insured, as soon as practicable after a loss, but in no event later than ninety (90) days thereafter. It shall be in such a form as the Company may require, stating the knowledge and belief of the Insured as to the time and origin of the loss, the interest of the Insured and all others in the property, the value of the property involved, and the amount of loss or damage. It shall also show all encumbrances thereon; all other contracts of insurance, whether valid or not, covering any of said property; and any changes in the title, use, occupancy, location, possession, or exposures of said property since the issuance of the policy, and, if required and obtainable, shall furnish verified plans of the buildings, fixtures, and machinery destroyed or damaged.

The Insured, as often as may be reasonably required, shall produce for examination all books of account, bills, business records, invoices and other vouchers, or any other documents reasonably related to the procurement of this policy or to the scope and extent of the loss at such reasonable time and place as may be designated by this Company, and shall permit extracts and copies thereof to be made.

The Insured, and any officer, director, or employee thereof, shall, as often as may be reasonably requested by this Company, submit to examination under oath by any person named by this Company, while not in the presence of any other Insured, about any matter relating to this insurance or to any claim, and the Insured shall sign and return the original transcript of the examination within thirty (30) days after submission to the Insured.

S. Salvage and Recovery

When, in connection with any loss hereunder, any salvage or recovery is received subsequent to the payment of such loss, the loss shall be recalculated on the basis on which it would have been determined had the amount of salvage or recovery been known at the time the loss was originally determined. Any amounts thus found to be due either party from the other shall be paid promptly.

T. Special State Requirements

Any and all provisions of this policy which are in conflict with the statutes of the State wherein this Policy is applicable are understood, declared, and acknowledged by this Company to be amended to conform to such statutes.

U. Subrogation

In the event of any payment under this policy, the Company shall be subrogated to the Insured's rights of recovery therefore against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the Occurrence to prejudice such rights. However, permission is granted the Insured to waive subrogation provided such waiver is entered into by the Insured in writing, prior to the loss insured hereunder. Any recovery as a result of subrogation proceedings shall, after deduction of all expenses of such action, including attorneys' fees, be prorated

between the Insured and the Company in the proportion that the amount of the loss paid by each bears to the total provable loss.

V. Suspension

Upon the discovery of a dangerous condition with respect to any Object insured by this policy, any representative of the Company may immediately suspend the insurance applicable to said Object by written notice mailed or delivered to the Insured at the address of the Insured as specified in the Declarations, or at the location of the Object. The insurance so suspended may be reinstated by the Company, but only by an endorsement issued to form a part of this policy. The Insured shall be allowed the unearned portion of the premium paid for such suspended insurance, pro rata, for the period of suspension.

As used in this policy, Object shall mean any boiler, fired or unfired pressure vessel, refrigerating or air conditioning system, piping and its accessory equipment and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

W. Term of Insurance

"Term of Insurance", as shown in the Declarations of this policy, shall mean that period of time from 12:01 A.M. to 12:01 A.M., Standard Time, as to each of said dates shown, at the place where the loss occurs.

X. Vacant/Unoccupied Premises

Permission is given to cease operations, or for the premises to be vacant or unoccupied for ninety (90) consecutive days and for more than ninety (90) consecutive days provided:

1. the same degree of fire protection and watch service is maintained as existed at the time of the discontinuance of normal operations; and,

2. that written notice is given to the Company prior to the ninetieth (90) consecutive day.

Y. Valuation

Unless otherwise endorsed hereon, adjustment of loss under this policy shall be:

1. on raw materials, supplies and other merchandise not manufactured by the Insured, the replacement cost; and

2. on stock in process, the value of raw materials and labor expended plus the related proportion of overhead charges; and

3. on finished goods manufactured by the Insured, the regular cash selling price at the location where the loss occurs, less all discounts and charges to which the finished goods would have been subject had no loss occurred; and

4. on Valuable Papers and Records, the value blank plus the cost of transcription from duplicates or from originals, but this policy does not insure against the cost of reconstructing such records, unless endorsed hereon; and

5. on media, data, programs or other software stored on, or for use with, any computer or other electronic and electromechanical data processing and production equipment, the cost of reproducing such media, data, programs or other software from duplicates or backups or from originals of the previous generation of the data, programs or software,

but this policy does not insure against any other cost, including research, engineering, or programming, of restoring or recreating data or programs lost, unless endorsed hereon; and

6. on catalysts or refractory material, the actual cash value of the material which equals the replacement cost at the time of loss or damage times the Remaining Useful Life Factor. The term Remaining Useful Life Factor means the normal useful life of the material in months minus the number of months the material had been in use at the time of the loss or damage, divided by the normal useful life of the material in months; and

7. on all other property covered by this policy, the cost to repair or replace the damaged property with materials of like kind, size, capacity and quality subject to:

   a. liability under these terms shall not exceed the smallest of the following:

      i. the cost to repair, rebuild or replace on the same site with material of like kind, size, capacity and quality, whichever is smallest; or

      ii. the actual expenditure incurred in repairing, rebuilding or replacing on the same or another site but not to exceed size and operating capacity that existed at the time of loss, whichever is smallest.

   b. in the event of direct physical loss or damage to property which is not repaired, rebuilt or replaced within two (2) years from the date of direct physical loss or damage, this Company shall not be liable for more than the actual cash value (with proper deduction for depreciation) of the property destroyed.

All of the above to be computed as of the time and at the place of loss when, with due diligence and dispatch, rebuilding, repairing or replacement of the damaged or destroyed property could be effected.

## V.    DEFINITIONS

### A.    Earth Movement

The term Earth Movement shall mean any natural or man-made earth movement, including, but not limited to, earthquakes, shocks, tremors, landslides, avalanches, subsidence, sinkhole collapse, mud flow, rock fall, volcano, or any other similar earth movement.

### B.    Flood

The term Flood means flood waters, waves, tide or tidal water, storm surge, tsunami, the release of water, the accumulation of rain or surface water, or the rising (including the overflowing or breaking of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams or other natural or man-made bodies of water, whether or not driven by wind.

### C.    Hazardous Substances or Contaminants

The term Hazardous Substances or Contaminants means any solid, liquid, gaseous, or thermal irritant, contaminant, or pollutant, which includes, but is not limited to, smoke, soot, vapor, fumes, acids, alkalis, chemicals, bacteria, fungi, mold, viruses, spores, vaccines, and waste. Waste includes materials to be reconditioned, recycled, or reclaimed.

D.    Insured

The term Insured means any Named Insured and any Additional Insured. The term Named Insured means the entity or entities specified in the Declarations as the Named Insured(s). The term Additional Insured means the entity or entities specified in the Declarations, or in any Endorsements to this policy, as an Additional Insured.

E.    Occurrence

The term Occurrence shall mean any loss or series of losses arising out of one event, regardless of the number of locations affected. However, as respects the perils of Earth Movement and Flood, the term Occurrence shall mean the sum total of all the losses sustained by the Insured as the result of damage from Earth Movement or Flood which arise during a continuous period of seventy-two (72) hours. The Insured may elect the moment from which each of the aforesaid periods of seventy-two (72) hours shall commence; but no two such seventy-two (72) hour periods shall overlap.

Occurrence shall not mean "continuous or repeated exposure to conditions" unless physical loss or damage insured against by this policy ensues, and then this policy shall only cover such ensuing loss or damage; nor shall Occurrence mean "loss of use of tangible property that has not been physically injured or destroyed."

F.    Premises Described

The term Premises Described means any location described in the Declarations of this policy or included as a Miscellaneous Unnamed Location or as a Newly Acquired Location, if applicable.

G.    Product Recall

The term Product Recall means withdrawal of any product of any kind or nature from the market or from use because of known or suspected defect or deficiency therein.

H.    Time Element

The term Time Element means any and all loss due to the interruption of the Insured's normal business operations, including, but not limited to, business interruption, extra expense, loss of rental income, and other similar economic losses, but this definition shall not otherwise expand or modify the coverage, if any, provided by this Policy or its Endorsements.

I.    Valuable Papers and Records

The term Valuable Papers and Records shall mean abstracts, drawings, exposed film, manuscripts, maps, and records. The term Valuable Papers and Records shall not include media, data, programs or other software stored on, or used with, any computer or other electronic or electromechanical data processing and production equipment.

## ENDORSEMENT - ACCOUNTS RECEIVABLE

This policy is extended to cover any shortage in collection of accounts receivable, resulting from direct physical loss or damage insured against by this policy to the Insured's books of account or other records, subject to the following conditions:

**A.** In the event of loss hereunder, the Insured shall use all reasonable diligence and dispatch, including legal action, if necessary, to effect collection of outstanding accounts receivable, the records for which have been destroyed, and the extra cost, if any, incurred thereby shall constitute a claim to the extent that it reduces the loss hereunder. This Company shall also be liable for interest charges on any loan to offset impaired collections pending repayment of such sum uncollectible as the result of such damage or destruction.

**B.** Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

**C.** The settlement of any loss hereunder shall be made within ninety (90) days from the date of such damage or destruction, and all amounts recovered by the Insured on accounts receivable outstanding at the time of such damage or destruction shall belong, and be paid to, this Company by the Insured up to a total not exceeding the amount of loss paid hereunder, but all recoveries in excess of that amount shall belong to the Insured.

**D.** In the event it is possible to reconstruct the Insured's accounts receivable records after they have been damaged or destroyed so that no shortage in collection of accounts receivable is sustained, this Company shall be liable only for the cost of material and time required, with the exercise of due diligence and dispatch, to re-establish or reconstruct such accounts receivable records, but only so far as not covered by any other form of insurance.

**E.** This endorsement does not apply to loss due to bookkeeping, accounting or billing errors or omissions, or errors or omissions in machine programming or instructions to machines, or computer error or malfunction of any kind or nature.

**F.** This endorsement does not apply to loss due to alteration, falsification, manipulation, concealment, destruction or disposal of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

**G.** The Insured agrees to use any suitable property or service owned or controlled by the Insured or obtainable from other sources in reducing the loss under this endorsement.

The Company's total liability under this provision shall be limited to the amount of the Sublimit of Liability for Accounts Receivable specified in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - AUTHORITIES EXCLUSION

It is hereby understood and agreed that with respect to the property section only:

Except as specifically stated in this policy or endorsement attached thereto, the company shall not be liable for loss, damage, costs, expenses, fines, or penalties incurred, sustained by or imposed on the Insured at the order of any Government Agency, Court, or other Authority arising from any cause whatsoever.

However, if any time element coverage is afforded by this policy or endorsements thereto, the coverage is extended to include any increase in the actual loss sustained by the Insured, resulting directly from an interruption of business covered hereunder, during the length of time not exceeding forty-five (45) consecutive days, when as a direct result of damage to or destruction of covered property by the peril(s) insured against, access to the premises or commencement of repairs is delayed at the order of any Government Agency, Court, or other Authority.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - BIOLOGICAL OR NUCLEAR EXCLUSION

This policy does not insure against any loss, damage, cost or expense caused by or resulting from any of the following, regardless of any other cause or event contributing concurrently or in any sequence thereto:

1. The unlawful possession, use, release, discharge, dispersal or disposal of any bacteriological, viral, radioactive or similar agents or matter regardless of who is responsible for the act and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

2. The unlawful possession, use, release, discharge, detonation, dispersal or disposal of any device or material capable of producing a nuclear reaction or the spread of radioactivity, regardless of who is responsible for the act and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - BUSINESS INTERRUPTION ACTUAL LOSS SUSTAINED

### A. INSURING AGREEMENT

The policy to which this Time Element endorsement is attached is extended to cover loss directly resulting from the necessary interruption of the business incurred by the Insured during the Period of Interruption. This loss must result directly from direct physical loss or damage insured against by this policy. In addition, the loss or damage must be to property not otherwise excluded by this policy, utilized by the Insured, and located at Premises Described in the Declarations.

#### 1. Actual Loss Sustained

The Company agrees to pay the Insured the amount of Actual Loss Sustained resulting directly from the necessary interruption of business caused by direct physical loss or damage insured herein.

The term Actual Loss Sustained shall mean the sum of:

a.  loss of net profits on the business prevented, and

b.  that part of the following fixed charges and expenses which the business did not earn, but would have earned, had the insured direct physical loss or damage not occurred:

   (1) salaries and wages of officers, executives, department managers, employees under contract (except that employees subject to a collective bargaining agreement are not "under contract" as used herein) and other essential employees, pensions and directors' fees, but not including the Insured's ordinary payroll expense; and

   (2) manufacturing, selling, administrative expenses and any other item contributing to the overhead expenses of the Insured.

#### 2. Expenses

The Company agrees to pay the amount of expense, over and above normal operating expense, which is necessarily incurred by the Insured or the Company to reduce or avert interruption of business, but only to the extent that the total amount which otherwise would have been paid is thereby reduced. All extra expenses so incurred shall be a part of, and not in addition to, the Limit of Liability specified in condition C.7. of this endorsement.

### B. EXCLUSIONS

The Company shall not be liable for any Actual Loss Sustained:

1.  For any time during which business would not, or could not, have been conducted had direct physical loss or damage to the Premises Described in the Declarations, as insured against hereunder, not occurred.

2.  Resulting from damage to finished products manufactured by the Insured, nor for the time required for their reproduction.

3.  Resulting from loss or damage to property in transit or property in the course of construction.

4.  Resulting from loss or damages for breach of contract or for late or noncompletion of orders.

5.  Resulting from the suspension, cancellation or lapse of any contract, license, lease or order except that the Company will be liable under this endorsement for only such loss as affects the Insured's earnings during, and limited to, the Period of Interruption covered under this endorsement.

## C. CONDITIONS

### 1. Period of Interruption

The liability of the Company under this endorsement shall be limited to the Period of Interruption. The term Period of Interruption shall mean:

**a.** the length of time as would be required, with the exercise of due diligence and dispatch, to rebuild, repair or replace such described property as has been lost or damaged with materials of like kind, size, capacity and quality. It shall also include such additional time required to make it ready for operations under the same or equivalent physical operating conditions that existed prior to the direct physical loss or damage, unless otherwise provided in this endorsement. The Period of Interruption shall not include any additional time required for making changes to buildings, equipment or contents, regardless of the reason(s) for the changes, except as provided for in the Demolition and Increased Cost of Construction provision of the Additional Coverages section, nor does it include any additional time required for restaffing or retraining employees or for delay of any kind caused by labor disputes including strikes; and

**b.** such additional time as may be required, with the exercise of due diligence and dispatch, to repair or replace damaged or destroyed valuable papers and records, but not to exceed the time that would be required for transcription from originals or duplicates, whether or not the originals or duplicates are available; and

**c.** such additional time as may be required, with the exercise of due diligence and dispatch, to repair or replace damaged or destroyed media, data and programming for electronic and electromechanical data processing and production equipment, but not to exceed the time that would be required for reproduction from duplicates or from the previous generation of the data, whether or not the duplicates or previous generation are available.

The liability of the Company under this endorsement shall not be limited by the expiration of this policy.

### 2. Deductibles

In addition to the Deductible Condition of this policy, the following may also apply:

If a number of hours/days apply as a Time Element deductible, then this Company shall not be liable for any losses under this Time Element endorsement occurring during the specified number of hours/days immediately following the Occurrence.

If a multiple of the Average Daily Value deductible is indicated for Time Element coverage, then the deductible amount shall be calculated as follows. With respect to any loss or expense for which the Company would be liable under the Time Element coverage(s), there shall first be deducted the amount obtained by multiplying the Average Daily Value for the affected location(s) at the time of such loss by the factor shown in the Declarations of the policy. The Average Daily Value will be determined by dividing the actual amount of net profits, fixed charges and expenses that would have been earned had no loss occurred by the actual number of working days, had no loss occurred, during the period of interruption, with due consideration being given to the experience of the business before the loss and the probable experience thereafter.

### 3. Interruption by Civil or Military Authority

This policy is also extended to include the Actual Loss Sustained by the Insured, during the length of time not exceeding forty-five (45) consecutive days, when access to or from Premises Described in the Declarations is specifically prohibited by order of civil or military authority. Such prohibition must be as a direct result of a peril not otherwise excluded to property of a type not otherwise excluded.

## 4. Impounded Water

In the event that water used as a raw material or for power or for other manufacturing purpose, stored behind dams or in reservoirs situated on the described premises, is released from storage as the result of damage as insured against hereunder, to such dam or reservoir, or equipment connected therewith, this endorsement covers loss, if any, caused by lack of adequate water supply from such sources. The length of time shall be limited to no more than thirty (30) consecutive days, after such length of time as would be required, with the exercise of due diligence and dispatch, to repair or replace the damaged dam, reservoir or equipment. Nothing herein shall imply that any direct physical loss or damage to any such dam, reservoir or equipment is covered by any other provision of this policy.

## 5. Resumption of Operations

As soon as possible after the direct physical loss or damage, the Insured, with due diligence and dispatch, shall resume business, in whole or in part, and make up lost business within a reasonable period of time (not to be limited to the Period of Interruption) through the use of every available means, including surplus machinery, duplicate parts, equipment, supplies, surplus or reserve stock, owned or controlled or obtainable from other sources, and through working extra time or overtime at the specified premises or at such other premises acquired for the purpose. The Company may take such means as will, in the opinion of the Company, reduce or avert interruption of business on the premises or supply the functions of the premises in some other way.

## 6. Experience of the Business

In determining the amount payable under this endorsement, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no interruption of business occurred.

In the event the Insured would have experienced an operating deficit had no Period of Interruption occurred:

a. the amount of fixed charges included in the Actual Loss Sustained shall be determined by subtracting the operating deficit from the fixed charges that necessarily continue; and

b. the amount of payroll included in the Actual Loss Sustained shall be determined by subtracting the excess, if any, of the operating deficit over the fixed charges that necessarily continue from such payroll.

## 7. Liability

The Company's total liability under this provision shall be limited to the amount of the Limit or Sublimit of Liability for this endorsement as specified in the Declarations, as more fully described in the Limits and Sublimits of Liability Condition of this policy.

## 8. Reports of Values

Within ninety (90) days of each anniversary, the Insured shall file with this Company a statement of the actual net profits, fixed charges and expenses for the Insured's most recently ended fiscal year and a statement of estimated net profits, fixed charges and expenses for the subsequent fiscal year.

In the event the Insured fails to furnish the above statement(s) of Actual Loss Sustained which are acceptable to this Company, then the Company shall not be liable under this endorsement for the payment of a greater proportion of the amount of Actual Loss Sustained (subject to the Exclusions and Conditions of this endorsement), resulting from any one Occurrence, than the "Annual Value" expressed in the Reported Values endorsement bears to the estimated amount of Net Profits, Fixed

Charges and Expenses, as referred to in the definition of "Actual Loss Sustained," that would have been earned, had no loss occurred, during the twelve (12) months immediately following the date of the loss. Due consideration shall be given to the experience of the business before the loss and the probable experience thereafter.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

### ENDORSEMENT - BRIDGE WORDING

Whenever used in this Policy, the terms, "we", "our", "you", and "your" are hereby changed to "the Company", "the Company's", "the Insured", and "the Insureds".

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - CONTINGENT BUSINESS INTERRUPTION

### A. INSURING AGREEMENT

The policy to which this Time Element endorsement is attached is extended to cover loss directly resulting from the necessary interruption of the business incurred by the Insured during the Period of Interruption. This loss must result directly from direct physical loss or damage insured against by this policy. In addition, the loss or damage must be to property not otherwise excluded by this policy, located on the premises of direct suppliers or customer locations as specified in the Schedule of Locations attached to this policy.

#### 1. Actual Loss Sustained

The Company agrees to pay the Insured the amount of Actual Loss Sustained resulting directly from the necessary interruption of business caused by direct physical loss or damage insured herein.

The term Actual Loss Sustained shall mean the sum of:

a. loss of net profits on the business prevented, and

b. that part of the following fixed charges and expenses which the business did not earn, but would have earned, had the insured direct physical loss or damage not occurred:

   (1) salaries and wages of officers, executives, department managers, employees under contract (except that employees subject to a collective bargaining agreement are not "under contract" as used herein) and other essential employees, pensions and directors' fees, but not including the insured's ordinary payroll expense; and

   (2) manufacturing, selling, administrative expenses and any other item contributing to the overhead expenses of the insured.

#### 2. Expenses

The Company agrees to pay the amount of expense, over and above normal operating expense, which is necessarily incurred by the Insured or the Company to reduce or avert interruption of business, but only to the extent that the total amount which otherwise would have been paid is thereby reduced. All extra expenses so incurred shall be a part of, and not in addition to, the Limit of Liability specified in condition C.7. of this endorsement

### B. EXCLUSIONS

The Company shall not be liable for any Actual Loss Sustained:

1. For any time during which business would not, or could not, have been conducted had direct physical loss or damage to the Premises Described in the Declarations, as insured against hereunder, not occurred.

2. Resulting from damage to finished products manufactured by the Insured, nor for the time required for their reproduction.

3. Resulting from loss or damage to property in transit or property in the course of construction.

4. Resulting from loss or damages for breach of contract or for late or noncompletion of orders.

5. Resulting from the suspension, cancellation or lapse of any contract, license, lease or order except that the Company will be liable under this endorsement for only such loss as affects the Insured's earnings during, and limited to, the Period of Interruption covered under this endorsement.

## C. CONDITIONS

### 1. Period of Interruption

The liability of the Company under this endorsement shall be limited to the Period of Interruption. The term Period of Interruption shall mean:

a. the length of time as would be required, with the exercise of due diligence and dispatch, to rebuild, repair or replace such described property as has been lost or damaged with materials of like kind, size, capacity and quality. It shall also include such additional time required to make it ready for operations under the same or equivalent physical operating conditions that existed prior to the direct physical loss or damage, unless otherwise provided in this endorsement. The Period of Interruption shall not include any additional time required for making changes to buildings, equipment or contents, regardless of the reason(s) for the changes, except as provided for in the Demolition and Increased Cost of Construction provision of the Additional Coverages section, nor does it include any additional time required for restaffing or retraining employees or for delay of any kind caused by labor disputes including strikes; and

b. such additional time as may be required, with the exercise of due diligence and dispatch, to repair or replace damaged or destroyed valuable papers and records, but not to exceed the time that would be required for transcription from originals or duplicates, whether or not the originals or duplicates are available; and

c. such additional time as may be required, with the exercise of due diligence and dispatch, to repair or replace damaged or destroyed media, data and programming for electronic and electromechanical data processing and production equipment, but not to exceed the time that would be required for production from duplicates or from the previous generation of the data, whether or not the duplicates or previous generation are available.

The liability of the Company under this endorsement shall not be limited by the expiration of this policy.

### 2. Deductibles

In addition to the Deductible Condition of this policy, the following may also apply:

If a number of hours/days apply as a Time Element deductible, then this Company shall not be liable for any losses under this Time Element endorsement occurring during the specified number of hours/days immediately following the Occurrence.

If a multiple of the Average Daily Value deductible is indicated for Time Element coverage, then the deductible amount shall be calculated as follows. With respect to any loss or expense for which the Company would be liable under the Time Element coverage(s), there shall first be deducted the amount obtained by multiplying the Average Daily Value for the affected location(s) at the time of such loss by the factor shown in the Declarations of the policy. The Average Daily Value will be determined by dividing the actual amount of net profits, fixed charges and expenses that would have been earned had no loss occurred by the actual number of working days, had no loss occurred, during the period of interruption, with due consideration being given to the experience of the business before the loss and the probable experience thereafter.

### 3. Interruption by Civil or Military Authority

This policy is also extended to include the Actual Loss Sustained by the Insured, during the length of time not exceeding forty-five (45) consecutive days, when access to or from Premises Described in the Declarations is specifically prohibited by order of civil or military authority. Such prohibition must be as a direct result of a peril not otherwise excluded to property of a type not otherwise excluded.

### 4. Impounded Water

In the event that water used as a raw material or for power or for other manufacturing purpose, stored behind dams or in reservoirs situated on the described premises, is released from storage as the result of damage as insured against hereunder, to such dam or reservoir, or equipment connected therewith, this endorsement covers loss, if any, caused by lack of adequate water supply from such sources. The length of time shall be limited to no more than thirty (30) consecutive days, after such length of time as would be required, with the exercise of due diligence and dispatch, to repair or replace the damaged dam, reservoir or equipment. Nothing herein shall imply that any direct physical loss or damage to any such dam, reservoir or equipment is covered by any other provision of this policy.

### 5. Resumption of Operations

As soon as possible after the direct physical loss or damage, the Insured, with due diligence and dispatch, shall resume business, in whole or in part, and make up lost business within a reasonable period of time (not to be limited to the Period of Interruption) through the use of every available means, including surplus machinery, duplicate parts, equipment, supplies, surplus or reserve stock, owned or controlled or obtainable from other sources, and through working extra time or overtime at the specified premises or at such other premises acquired for the purpose. The Company may take such means as will, in the opinion of the Company, reduce or avert interruption of business on the premises or supply the functions of the premises in some other way.

### 6. Experience of the Business

In determining the amount payable under this endorsement, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no interruption of business occurred.

In the event the Insured would have experienced an operating deficit had no Period of Interruption occurred:

a.  the amount of fixed charges included in the Actual Loss Sustained shall be determined by subtracting the operating deficit from the fixed charges that necessarily continue; and

b.  the amount of payroll included in the Actual Loss Sustained shall be determined by subtracting the excess, if any, of the operating deficit over the fixed charges that necessarily continue from such payroll.

### 7. Liability

The Company's total liability under this provision shall be limited to the amount of the Limit or Sublimit of Liability for this endorsement as specified in the Declarations, as more fully described in the Limits and Sublimits of Liability Condition of this policy.

**8. Reports of Values**

Within ninety (90) days of each anniversary, the Insured shall file with this Company a statement of the actual net profits, fixed charges and expenses for the Insured's most recently ended fiscal year and a statement of estimated net profits, fixed charges and expenses for the subsequent fiscal year.

In the event the Insured fails to furnish the above statement(s) of Actual Loss Sustained which are acceptable to this Company, then the Company shall not be liable under this endorsement for the payment of a greater proportion of the amount of Actual Loss Sustained (subject to the Exclusions and Conditions of this endorsement), resulting from any one Occurrence, than the "Annual Value" expressed in the Reported Values endorsement bears to the estimated amount of Net Profits, Fixed Charges and Expenses, as referred to in the definition of "Actual Loss Sustained," that would have been earned, had no loss occurred, during the twelve (12) months immediately following the date of the loss. Due consideration shall be given to the experience of the business before the loss and the probable experience thereafter.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

## ENDORSEMENT - CONTROL OF DAMAGED MERCHANDISE

In consideration of additional premium, the policy to which this endorsement is attached is amended to provide that in the case of loss or damage to:

The Insured shall have full right to the possession and control of all such damaged goods.

It is further agreed that after suitable tests have indicated which goods have been damaged, the Insured, exercising a reasonable discretion, shall be the sole judge as to whether such damaged goods are suitable for reprocessing or for marketing, and no such damaged goods deemed by the Insured to be unfit for reprocessing or for marketing shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained on any sale or other disposition of such goods.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - COURSE OF CONSTRUCTION

### ALTERATIONS AND NEW CONSTRUCTION:

Permission is granted to make alterations in or to construct additions to any facility and to construct new facilities at the location described under the property section and this INSURING AGREEMENT is extended to cover, subject otherwise to all its provisions and stipulations, loss resulting from damage to or destruction of such alterations, additions and new facilities (including building materials, supplies, machinery or equipment incident to such construction or occupancy while on the described locations or within one thousand (1,000) feet thereof), while in the course of construction and when completed and/or occupied. This coverage is subject to a limit of liability of $10,000,000.

### SPECIAL EXCLUSIONS:

This Endorsement does not insure:

(1) Contractor's or subcontractor's equipment; machinery, tools, equipment and property of a similar nature not destined to become a permanent part of the completed project or structure;

(2) Loss of use, interruption of business, delay, loss of markets, penalties for noncompletion, noncompliance with contract conditions, consequential loss of any kind;

(3) Loss caused by frost, falling of ice or freezing, unless resulting from damage caused by fire, lighting, explosion, windstorm, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke;

(4) Loss or damage covered under any guarantee or warranty (expressed or implied) by any contractor, manufacturer or supplier whether or not such contractor, manufacturer or supplier is an insured under this policy;

(5) Loss or damage directly or indirectly caused by fault, defect error or omission in design, plan or specification;

(6) Loss or damage occasioned directly or indirectly by any ordinance of law, any order of governmental or municipal authority; by suspension, lapse termination or cancellation of any license, lease or permit, and any injunction or process of any court.

### SUBROGATION:

(A) In the event of any payment made hereunder, the Company shall be subrogated to all the Insured's rights of recovery therefore against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

(B) Unless otherwise endorsed, it is a condition of this insurance that the Company shall be subrogated, to the extent of payment, to all the Insured's rights of recovery against any subcontractor, architect, or design engineer, whether a named insured or not, for any loss or damage for which the aforesaid subcontractor, architect, or design engineer would otherwise be legally liable.

### OTHER INSURANCE:

This Endorsement shall not cover to the extent of any other insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly covering the same property against the same perils; and this Company shall be liable for loss or damage only for the excess value beyond the amount due from such other insurance.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - DATA DISTORTION / CORRUPTION EXCLUSION

It is noted and agreed this policy is hereby amended as follows:

The Insurer will not pay for Damage or Consequential loss directly or indirectly caused by, consisting of, or arising from:

(A) Any functioning or malfunctioning of the Internet or similar facility, or of any intranet or private network or similar facility,

(B) Any corruption, destruction, distortion, erasure or other loss or damage to data, software or any kind of programming or instruction set,

(C) Loss of use or functionality whether partial or entire of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing inability or failure of the Insured to conduct business.

This endorsement shall not exclude subsequent Damage or Consequential loss, not otherwise excluded, which itself results from a Defined Peril not otherwise excluded. Defined Peril shall mean: Fire, Lightning, Earthquake, Explosion, Falling Aircraft, Flood, Smoke, Vehicle Impact, Windstorm or Tempest, Accidental Breakdown of an Object including Mechanical and Electrical Breakdown.

This Endorsement shall not act to increase or broaden coverage afforded by this policy.

Such Damage or Consequential Loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

In consequence of all the foregoing the Annual Premium remains unaltered.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - EDP EQUIPMENT & MEDIA

It is agreed that Item No. 5 of the Valuation Clause of the policy is hereby deleted and replaced by the following:

> on media, data, programs or other software stored on, or for use with, any computer or other electronic and electromechanical data processing and production equipment, the cost of reproducing such media, data, programs or other software.

The Company's total liability under this provision shall be limited to the amount of the Limit or Sublimit of Liability for this endorsement as specified in the Declarations, as more fully described in the Limits and Sublimits of Liability Condition of this policy.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - EXTENDED PERIOD OF INDEMNITY

The policy to which this endorsement is attached is extended to cover the actual loss sustained by the Insured due to consequential reduction in sales resulting directly from the interruption of business, as covered by this policy, for such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the date on which the liability of this Company for loss resulting from interruption of business would terminate if this endorsement had not been attached to this policy, but in no event for more than 180 consecutive days from said commencement date.

The liability of the Company under this endorsement:

1.    Shall not be limited by the expiration of this policy, and

2.    Shall be part of and not in addition to the Limit or Sublimit of Liability specified in the Declarations.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - EXTRA EXPENSE

### A.  INSURING AGREEMENT

The policy to which this Time Element endorsement is attached is extended to cover the Extra Expense incurred by the Insured during a Period of Restoration. This Extra Expense must be caused by direct physical loss or damage insured against by this policy. In addition, the loss or damage must be to property not otherwise excluded by this policy, utilized by the Insured, and located at the Premises Described in the Declarations.

### B.  DEFINITIONS

The following terms, wherever used in the endorsement, shall be defined as follows:

#### 1.  Extra Expense

The term Extra Expense shall mean:

a.  the reasonable and necessary extra expenses incurred to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and

b.  the reasonable and necessary extra costs of temporarily using property or facilities of the Insured or others.

At the end of the Period of Restoration specified elsewhere in this endorsement, any value remaining in property obtained in connection with a. or b. above shall be taken into consideration in the determination of the actual loss sustained.

In no event shall these expenses include loss of income, normal costs which would have been incurred in conducting the business during the Period of Restoration had no damage insured against occurred, or the cost of permanent repair or replacement of property that has been damaged or destroyed.

#### 2.  Normal

The term Normal shall mean the condition that would have existed had no damage of the type insured against occurred. In determining the indemnity payable under this endorsement, due consideration shall be given to the experience of the business before the loss and the probable experience thereafter had no loss occurred.

#### 3.  Period of Restoration

The term Period of Restoration shall mean the length of time as would be required, with the exercise of due diligence and dispatch, to rebuild, repair or replace such described property as has been lost or damaged with materials of like kind, size, capacity, and quality. It also includes such additional time required to make such property ready for operations under the same or equivalent physical operating conditions that existed prior to the direct physical loss or damage, unless otherwise provided in this endorsement. The Period of Restoration shall not include any additional time required for making changes to buildings, equipment or contents, regardless of the reason(s) for the changes, except as provided for in the Demolition and Increased Cost of Construction provision of the Additional Coverages section; nor does it include any additional time required for restaffing or retraining employees or for delay of any kind caused by labor disputes, including strikes.

The liability of the Company under this endorsement shall not be limited by the expiration of this policy.

## C. EXCLUSIONS

This endorsement does not cover:

1.  Any period during which business would not, or could not, have been conducted had direct physical damage to the Premises Described in the Declarations, as insured hereunder, not occurred.

2.  Any Extra Expense incurred as a result of damage to finished products manufactured by the Insured, nor the time required for their reproduction.

3.  Any Extra Expense incurred due to the suspension, cancellation or lapse of any lease, contract, license or order, nor any loss due to fines or damage for breach of contract or for late or non-completion of orders or penalties of whatever nature; nor shall the Company be liable for any Extra Expense incurred due to any other consequential or remote loss.

4.  Any Extra Expense resulting from loss or damage to property in transit or property in the course of construction.

5.  Any loss or damage caused by or resulting from errors or omissions in machine programming or instructions to machines; or computer error or malfunction of any kind or nature.

## D. DEDUCTIBLES

In addition to the Deductible Condition of this policy, the following may also apply:

If a number of hours/days apply as a Time Element deductible, then this Company shall not be liable for any losses under this Time Element endorsement occurring during the specified number of hours/days immediately following the Occurrence.

If a multiple of the Average Daily Value deductible is indicated for Time Element coverage, then the deductible amount shall be calculated as follows. With respect to any loss or expense for which the Company would be liable under the Time Element coverage(s), there shall first be deducted the amount obtained by multiplying the Average Daily Value for the affected location(s) at the time of such loss by the factor shown in the Declarations of the policy.

1.  If Time Element coverage is also provided under the Business Interruption Gross Earnings endorsement, the following shall apply.

    The Average Daily Value will be determined by dividing the actual Gross Earnings less costs that would have been earned had no loss occurred by the actual number of working days, had no loss occurred, during the period of interruption, with due consideration being given to the experience of the business before the loss and the probable experience thereafter.

2.  If Time Element coverage is also provided under the Business Interruption Actual Loss Sustained endorsement, the following shall apply.

    The Average Daily Value will be determined by dividing the actual amount of net profits, fixed charges and expenses that would have been earned had no loss occurred by the actual number of working days, had no loss occurred, during the period of interruption, with due consideration being given to the experience of the business before the loss and the probable experience thereafter.

### E. INTERRUPTION BY CIVIL OR MILITARY AUTHORITY

This policy is also extended to include the Extra Expense incurred by the Insured, during the length of time, not exceeding forty-five (45) consecutive days, when access to or from such Premises Described in the Declarations is specifically prohibited by order of civil or military authority. Such prohibition must be as a direct result of a peril not otherwise excluded to property of a type not otherwise excluded.

### F. USE OF OTHER PROPERTY

The Insured shall use any suitable property or service owned or controlled by the Insured or obtainable from other sources in reducing the Extra Expense incurred under this endorsement.

### G. LIABILITY

The Company's total liability under this provision shall be limited to the amount of the Sublimit of Liability for Extra Expense specified in the Declarations, as more fully described in the Limits and Sublimits of Liability Condition of this policy.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

## ENDORSEMENT - FINE ARTS

The policy to which this endorsement is attached is extended to cover Fine Arts as described herein, except as otherwise excluded by this policy.

**Property Insured**

Fine Arts as described on the schedule of Fine Arts on file with this Company.

**Exclusions**

In addition to all other Exclusions found in this policy, this endorsement does not insure against:

1.  Loss or damage from any repairing, restoration or retouching process;

2.  Loss to property on exhibition at fairgrounds or premises of national or international expositions unless the premises are specifically described in this policy; and

3.  Loss or damage to property while in transit.

**Valuation**

The following is hereby added to the Valuation Condition of the policy.

In the event of loss or damage covered under this endorsement, the Liability of the Company shall not exceed the lesser of the following:

1.  The cost to repair or restore the article to the condition that existed immediately prior to the insured event; or

2.  The value designated for the article on the schedule of Fine Arts.

**Liability**

The Company's total liability under this provision shall be limited to the amount of the Limit or Sublimit of Liability for this endorsement as specified in the Declarations, as more fully described in the Limits and Sublimits of Liability Condition of this policy.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - INGRESS / EGRESS

As respects the Business Interruption section, this policy is extended to include the Actual Loss Sustained by the Insured due to the necessary Interruption of the Insured's business due to prevention of ingress to or egress from the Insured, whether or not the premises or property of the Insured is damaged, provided that such prevention is a direct result of physical loss of the type insured by this policy, to the kind of property not excluded by this policy. This coverage extension is limited to forty-five (45) consecutive days of interruption and ten (10) statute miles.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - LEASEHOLD INTEREST

In consideration of increased premium and subject to all terms, conditions and stipulations of the policy to which this endorsement is attached, not in conflict herewith, this policy is extended to cover, subject to the following terms and conditions, and if caused by physical loss or damage of the type insured against by this policy to real property of the type covered by this policy located on Described Premises:

    1.   the actual rent which remains payable for the unexpired term of the lease if such property becomes wholly untenantable or unusable and the lease agreement requires continuation of the rent payment; or

    2.   the proportion of rent which remains payable for the unexpired term of the lease if such property becomes partially untenantable or unusable and the lease agreement requires continuation of the rent payment; or

    3.   the Leasehold Interest for the first three (3) months following loss or damage and the Net Leasehold Interest for the remaining unexpired term of the lease if the lease is canceled by the lessor pursuant to the lease agreement or by the operation of law.

**B.**    **EXCLUSIONS** - This endorsement does not insure against any loss or expense resulting from:

    1.   the suspension, lapse or cancellation of any license; or

    2.   the insured exercising an option to cancel the lease; or

    3.   any act or omission of or by the Insured which constitutes a default under the lease.

**C.**    **ADDITIONAL CONDITION** - It is a condition of this endorsement that the Insured shall use any suitable property or service owned or controlled by the Insured or obtainable from another source to reduce the amount of loss hereunder.

**D.**    **DEFINITIONS** - The following terms wherever used in this endorsement shall mean:

    1.   "Leasehold Interest": The excess rent paid for either the same or similar replacement property over the amount of rent and other charges which would have been payable under the unexpired lease plus bonuses or advance rent paid (including any maintenance, operating charges or taxes) for each month during the unexpired term of the Insured's lease.

    2.   "Net Leasehold Interest": The present value of the amount which placed at eight percent (8%) annual interest would equal the Leasehold Interest (less any amounts otherwise payable hereunder).

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - NAMED WINDSTORM DEFINITION

For the purposes of this deductible, windstorm is defined as a tropical storm or hurricane as designated by the National Oceanic and Atmospheric Administration, including any tornadoes spawned by such designated storms. NOAA defines tropical storms and hurricanes according to the Saffir/Simpson Scale which measures windspeeds at 32.9 feet above sea level for a 60 second duration reaching minimum windspeeds of 39 mph.

As respects Wind, the term Occurrence shall mean the sum total of all the losses sustained by the Insured as the result of damage from Wind and any resulting damage, which arise during a continuous period of seventy-two (72) hours. The Insured may elect the moment from which each of the aforesaid periods of seventy-two (72) hours shall commence; but no two such seventy-two (72) hour periods shall overlap.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - POLITICAL RISK EXCLUSION

Loss of property due to Political Risks is hereby excluded. Political Risks are defined as follows:

"Confiscation, expropriation, nationalization, commandeering, requisition or destruction of or damage to property by order of the Government de jure or de facto or any public, municipal or local authority of the country or area in which the property is situated; seizure or destruction under quarantine or customs regulation"

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - SERVICE INTERRUPTION ENDORSEMENT

This policy, and any Time Element endorsement(s) attached hereto, is (are) extended to cover:

1.   the direct physical loss or damage, not otherwise excluded, to Property Insured hereunder; and

2.   the necessary interruption of business conducted by the Insured as defined in any attached Time Element endorsement(s),

resulting from the lack of incoming electricity, fuel, water, gas, steam, refrigerant or from the lack of sewage disposal caused by a peril not otherwise excluded herein to property of a type not otherwise excluded herein, provided the duration of such interruption of service is in excess of forty-eight (48) hours.

It is further agreed that solely as respects the coverage provided by this endorsement, the following Conditions of Property Exclusions and Other Exclusions are deleted: contamination; shrinkage; evaporation; loss of weight; loss of contents of containers by leakage; extremes or changes of temperature or changes in relative humidity; all whether atmospheric or not; exposure to light; change in color or flavor or texture or finish; condensation; dampness; or depletion.

In addition, coverage under this endorsement shall apply to loss resulting from damage to tracks; trestles; bridges; tunnels; electrical transmission and distribution lines; line transformers; towers and poles; cables; pipes and pipelines; and equipment or apparatus connected therewith within 5 miles of the Insured's premises.

The Company's total liability under this endorsement shall be limited to the amount of the Sublimit of Liability for Service Interruption specified in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - TEMPORARY REMOVAL OF PROPERTY

A.  Subject to all terms, conditions and stipulations of the Policy to which this endorsement is attached, not in conflict herewith, this Policy is extended to cover personal property of the Insured while removed from Described Premises for repairs, for servicing, or to avoid threatened damage by flood, for a period of Ninety (90) days from the date of removal, subject to a limit of liability of $10,000,000 for loss or damage arising out of any one Occurrence; but this provision shall not apply to personal property removed from Described Premises for normal storage or for processing nor to property covered by other insurance.

B.  This endorsement does not increase any amounts or limits of insurance provided by this Policy.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

### ENDORSEMENT - VALUABLE PAPERS AND RECORDS ENDORSEMENT

It is agreed that Item 4 of the Valuation clause of the Conditions section of the policy is hereby deleted and replaced by the following:

4.    on Valuable Papers and Records, the value blank, plus the cost of transcription from duplicates or from originals, including the cost of labor incurred by the Insured for reconstructing such Valuable Papers and Records.

   A.    This endorsement does not insure against loss or damage to:

      1.    property covered under this endorsement, if such property cannot be replaced with other(s) of like kind, size, capacity and quality, or restored to usable condition; or

      2.    property held as samples or for sale or for delivery after sale.

   B.    This endorsement does not insure against loss:

      1.    resulting from errors or omissions in processing or copying; or errors or omissions in machine programming or instructions to machines; or computer error or malfunction of any kind or nature; or

      2.    resulting from unauthorized instructions to transfer property to any person or to any place; or

      3.    resulting from voluntary parting with any property by the Insured or any associate, proprietor, partner, director, trustee, or officer of any Insured, if induced to do so by any fraudulent scheme, tricks, device or false pretense.

The Company's total liability under this provision shall be limited to the amount of the Sublimit of Liability for Valuable Papers and Records specified in the Declarations, as more fully explained in the Limits and Sublimits of Liability Condition of this policy.

Any loss hereunder that exceeds the Sublimit of Liability for Valuable Papers and Records specified in the Declarations shall be paid on the basis of the value blank plus the cost of transcription from duplicates or from originals of said valuable papers and records.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## ENDORSEMENT - NAMED SUPPLIERS AND CUSTOMERS

RUSAL AMERICA CORP.
JB COMMODITIES (OVERSEAS) LTD
METAL EXCHANGE (MO)
ALCOA KOFEM (CSL)
SERVICE ALUMINUM
BRIDGNORTH ALUMINUM LTD (CSL)
SCANA ENERGY MARKETING, INC.
MITSUBISHI INTERNATIONAL CORPORATION
ALERIS ROLLED PRODUCTS (CSL)
CMC RECYLING
NEWELL RECYCLING
METAL MANAGEMENT MISSISSIPPI
CAROLINAS RECYCLING GROUP LLC
CENTERPOINT ENERGY GAS SERVICES, INC.
CONCORD INC
ALCAN AT RIO TINTO
ARCONIC (LANCASTER AND KOFEM LOCATIONS)
J. ARON
HINDALCO
DAVID JOSEPH (DJJ)
ARG INTERNATIONAL

## ENDORSEMENT - PROFESSIONAL FEES

In consideration of the Policy premium and subject to the limit of liability in the Declaration Section, this Policy covers the actual costs incurred by the Insured, of reasonable fees payable to the Insured's accountants, architects, auditors, engineers, or other professionals and the cost of using the Insured's employees, for producing and certifying any particulars or details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from insured loss payable under this Policy for which the Company has accepted liability.

1) This Additional Coverage will not include the fees and costs of attorneys, public adjusters, and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them nor the fees and costs of loss consultants who provide consultation on coverage or negotiate claims.

2) This Additional Coverage is subject to the deductible that applies to the loss.

## ENDORSEMENT - REPORTED VALUES

This endorsement applies from 12/31/2019 and expires as of 12/31/2020.

| | |
|---|---|
| 100% Replacement Cost Value: | $461,140,235 |
| Business Interruption Annual Value: | $ 80,153,418 |
| Total: | $541,293,653 |

## ENDORSEMENT - SCHEDULE OF LOCATIONS

Location No 1
6100 S. Broadway
St. Louis, MO 63111

Location No 2
777 Tyler Road
Russellville, AR 72802

Location No 3
2475 Trenton Ave
Williamsport, PA 17701

## ENDORSEMENT - NAMED ADJUSTER

Mr. Brian Bennett
Executive General Adjuster
VeriClaim (Sedgwick)
1833 Centre Point Circle
Suite 139
Naperville, IL 60563-1484

Office: 630-245-7038
Cell:    708-267-7644

bbennett@vericlaiminc.com

This assignment may be changed by mutual consent of the Insured and the Company.

## ENDORSEMENT – RADIOACTIVE CONTAMINATION

It is agreed that the following is hereby added to the Additional Coverages section of the policy:

This policy is extended to cover loss or damage not otherwise excluded, to Property Insured herein due to sudden and accidental radioactive contamination, including resultant radiation damage from material used or stored or from processes conducted on the described premises, provided that at the time of such loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the described premises.

The Company's total liability under this provision shall be limited to the amount of the Limit or Sublimit of Liability for this endorsement as specified in the Declarations, as more fully described in the Limits and Sublimits of Liability Condition of this policy.

## ENDORSEMENT – MOLTEN MATERIAL

It is hereby understood and agreed this policy does insure against direct physical loss or damage cause by heat from Molten Material, which has been accidentally discharged from equipment, subject to a limit of $10,000,000 per occurrence. This policy does not insured against the following types of loss or damage.

1. Loss or damage to such discharged material unless caused by a peril not otherwise excluded.

2. The cost of repairing any fault which permitted such accidental discharge unless caused by a peril not otherwise excluded.

### ENDORSEMENT – SUE AND LABOR

In case of actual physical loss or damage of the type insured against by this policy, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Property Insured hereunder shall be added to the total direct physical loss or damage otherwise recoverable under this policy and be subject to the applicable Deductible.

The Company's total liability under this provision shall be limited to the amount of the Limit or Sublimit of Liability for this endorsement as specified in the Declarations, as more fully described in the Limits and Sublimits of Liability Condition of this policy.

## ENDORSEMENT – CONFLICT IN WORDING ENDORSEMENT

It is hereby noted and agreed that the following clause is added to coverage hereon effective from inception:

The conditions contained in this form shall supersede those of any policy jacket to which this form may be attached except as required by law.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

## APPENDIX - EARTHMOVEMENT ZONES AND TIER 1 AND TIER 2 WIND AREAS

**High Hazard Zones Earth Movement Zones**
California, Hawaii, Alaska and the Commonwealth of Puerto Rico.

**New Madrid Earth Movement Seismic Zone**
**Arkansas:** Counties of Arkansas, Ashley, Chicot, Clay, Craighead, Crittenden, Cross, Desha, Drew, Fulton, Grant, Greene, Independence, Izard, Jackson, Jefferson, Lawrence, Lee, Lincoln, Lonoke, Mississippi, Monroe, Phillips, Poinsett, Prairie, Pulaski, Randolph, Saline, Sharp, St. Francis, White, Woodruff
**Illinois:** Counties of Alexander, Bond, Calhoun, Christian, Clark, Clay, Clinton, Coles, Crawford, Cumberland, Edwards, Effingham, Fayette, Franklin, Gallatin, Greene, Hamilton, Hardin, Jackson, Jasper, Jefferson, Jersey, Johnson, Lawrence, Macoupin, Madison, Marion, Massac, Monroe, Montgomery, Morgan, Perry, Pike, Pope, Pulaski, Randolph, Richland, Saline, Sangamon, Scott, Shelby, St. Clair, Union, Wabash, Washington, Wayne, White, Williamson
**Indiana:** Counties of Crawford, Daviess, Dubois, Gibson, Greene, Knox, Lawrence, Martin, Orange, Perry, Pike, Posey, Spencer, Sullivan, Vanderburgh, Warrick
**Kentucky:** Counties of Ballard, Breckinridge, Butler, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Hancock, Henderson, Hickman, Hopkins, Livingston, Logan, Lyon, Marshall, McCracken, McLean, Muhlenberg, Ohio, Simpson, Todd, Trigg, Union, Warren, Webster
**Mississippi:** Counties of Alcorn, Benton, Bolivar, Calhoun, Carroll, Chickasaw, Choctaw, Clay, Coahoma, De Soto, Grenada, Holmes, Humphreys, Issaquena, Itawamba, Lafayette, Lee, Leflore, Lowndes, Marshall, Monroe, Montgomery, Oktibbeha, Panola, Pontotoc, Prentiss, Quitman, Sharkey, Sunflower, Tallahatchie, Tate, Tippah, Tishomingo, Tunica, Union, Warren, Washington, Webster, Yalobusha, Yazoo
**Missouri:** Counties of Audrain, Bollinger, Butler, Callaway, Cape Girardeau, Carter, Cole, Crawford, Dent, Dunklin, Franklin, Gasconade, Howell, Iron, Jefferson, Lincoln, Madison, Maries, Marion, Mississippi, Montgomery, New Madrid, Oregon, Osage, Pemiscot, Perry, Phelps, Pike, Pulaski, Ralls, Reynolds, Ripley, Scott, Shannon, St. Charles, St. Francois, St. Louis, St. Louis City, Ste. Genevieve, Stoddard, Texas, Warren, Washington, Wayne
**Tennessee:** Counties of Benton, Carroll, Cheatham, Chester, Crockett, Decatur, Dickson, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Hickman, Houston, Humphreys, Lake, Lauderdale, Lawrence, Lewis, Madison, McNairy, Montgomery, Obion, Perry, Robertson, Shelby, Stewart, Tipton, Wayne, Weakley

**Pacific Northwest Earth Movement Seismic Zone**
**Oregon:** Counties of Benton, Clackamas, Clatsop, Columbia, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington and Yamhill

**Washington:** Counties of Clark, Cowlitz, Pacific, San Juan and Wahkiakum

**Tier I Wind Area:**
**Alabama:** Counties of Baldwin, Mobile
**Commonwealth of Puerto Rico:** Entire Island
**Florida:** All Counties in the entire state
**Hawaii:** All Islands
**Louisiana:** Parishes of Assumption, Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John Baptist, St. Mary, St. Tammany, St. Martin (southern portion), Terrebonne, Vermilion
**Mississippi:** Counties of Hancock, Harrison, Jackson
**North Carolina:** Counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Craven, Currituck, Dare, Gates, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrell, Washington
**South Carolina:** Counties of Beaufort, Berkeley, Charleston, Georgetown, Horry, Jasper
**Texas:** Counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Orange, Refugio, San Patricio, Willacy

**Tier II Wind Area:**
**Alabama:** Counties of Covington, Escambia, Geneva, Houston
**Georgia:** Counties of Brantley, Charlton, Effingham, Long, Wayne
**Louisiana:** Parishes of Acadia, Ascension, Calcasieu, East Baton Rouge, Iberville, Jefferson Davis, Lafayette, Livingston, St. Martin (northern portion), Tangipahoa, Washington, West Baton Rouge
**Mississippi:** Counties of George, Pearl River, Stone
**North Carolina:** Counties of Bladen, Columbus, Duplin, Hertford, Lenoir, Martin, Pitt
**South Carolina:** Counties of Colleton, Dorchester, Williamsburg
**Texas:** Counties of Bee, Brooks, Fort Bend, Goliad, Hardin, Harris, Hidalgo, Jackson, Jasper, Jim Wells, Liberty, Newton, Victoria, Wharton

# Errors and Omissions

Named Insured...............JW Aluminum Company

Policy Number...............See Participation Page                    Endorsement No...A

Effective Date...............12/31/2019

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

It is agreed that the following is hereby added to the Additional Coverages section of the policy:

Any unintentional error or omission made by the Insured on the description or location of Property Insured or any failure through unintentional error to include any location owned or occupied at inception shall not void or impair coverage provided by this policy. It is a condition of this coverage that any error or omission shall be reported and corrected when discovered.

The Company's total liability under this provision shall be limited to the amount of the Limit or Sublimit of Liability for this endorsement as specified in the Declarations, as more fully described in the Limits and Sublimits of Liability Condition of this policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

# Lender's Loss Payable

Named Insured.............. JW Aluminum Company

Policy Number......................... See Participation Page             Endorsement No...B

Effective Date. ................. 12/31/2019

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

Loss, if any, under this policy shall be payable to:

**Century Aluminum of South Carolina, Inc.**
**Attn: General Counsel**
**1 South Wacker Drive, Suite 1000**
**Chicago, IL 60606**

As lender, mortgagee, or trustee, as interest may appear;

It is understood that the lender, mortgagee or trustee now has or will acquire from time to time an insurable interest in certain property insured under this policy as established by warehouse receipts, bills of lading, documentary or other written evidence.

This insurance, solely as to the interest therein of the lender, mortgagee or trustee, shall not be impaired or invalidated by any act or neglect of the borrower, mortgagor or owner of the within described property except as provided in the last paragraph hereof, nor by any change in the title or ownership of the property, nor by the occupation of the premises wherein such property is located for purposes more hazardous than are permitted by this policy; provided that in case the borrower, mortgagor or owner shall neglect to pay any premium due under this policy the lender, mortgagee or trustee shall, on demand, pay the same.

Provided, also, that the lender, mortgagee or trustee shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said lender, mortgagee or trustee, and unless permitted by this policy, it shall be noted thereon and the lender, mortgagee or trustee shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the lender, mortgagee or trustee for thirty days after notice to the lender, mortgagee or trustee of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

Whenever this Company shall pay the lender, mortgagee or trustee any sum for loss or damage under this policy and shall claim that, as to the borrower, mortgagor or owner, no liability therefore existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may, at its option, pay the lender, mortgagee or trustee, the whole principal due or to grow due on the debt with interest, and shall thereupon receive a full assignment and transfer of the debt and of the mortgage and of all such other securities as evidence the interest of the lender, mortgagee or trustee in the within described property; but no subrogation shall impair the right of the lender, mortgagee or trustee to recover the full amount of its claim against the borrower, mortgagor or owner.

All the other terms and conditions of the policy to which this Endorsement is attached and of which it is a part, remain unchanged, which other terms and conditions include the limit(s) of liability named in the policy and the conditions of any Value Reporting, Full Reporting, Total insurance, Coinsurance, Reduced Rate Contribution or Average Clauses incorporated therein or attached thereto.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

# Lender's Loss Payable

Named Insured.............. JW Aluminum Company

Policy Number. ................ See Participation Page          Endorsement No...C

Effective Date. ................ 12/31/2019

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

Loss, if any, under this policy shall be payable to:

**Regions Bank, and its successors and assigns, as agent:**
**Attention: JW Aluminum Loan Administration**
**1180 West Peachtree Street NW, Suite 1000**
**Atlanta, GA 30309**

**Regions Bank as Additional Insured.**

As lender, mortgagee, or trustee, as interest may appear;

It is understood that the lender, mortgagee or trustee now has or will acquire from time to time an insurable interest in certain property insured under this policy as established by warehouse receipts, bills of lading, documentary or other written evidence.

This insurance, solely as to the interest therein of the lender, mortgagee or trustee, shall not be impaired or invalidated by any act or neglect of the borrower, mortgagor or owner of the within described property except as provided in the last paragraph hereof, nor by any change in the title or ownership of the property, nor by the occupation of the premises wherein such property is located for purposes more hazardous than are permitted by this policy; provided that in case the borrower, mortgagor or owner shall neglect to pay any premium due under this policy the lender, mortgagee or trustee shall, on demand, pay the same.

Provided, also, that the lender, mortgagee or trustee shall notify this Company of any change of ownership or occupancy or substantial increase, as reasonably determined by the lender, of hazard which shall come to the knowledge of said lender, mortgagee or trustee, and unless permitted by this policy, it shall be noted thereon and the lender, mortgagee or trustee shall on demand, to the extent the borrower, mortgagor or owner shall have neglected to pay any such premium on demand from this Company, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the lender, mortgagee or trustee for thirty days after notice to the lender, mortgagee or trustee of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

Whenever this Company shall pay the lender, mortgagee or trustee any sum for loss or damage under this policy and shall claim that, as to the borrower, mortgagor or owner, no liability therefore existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may, at its option, pay the lender, mortgagee or trustee, the whole principal due or to grow due on the debt with interest, and shall thereupon receive a full assignment and transfer of the debt and of the mortgage and of all such other securities as evidence the interest of the lender, mortgagee or trustee in the within described property; but no subrogation shall impair the right of the lender, mortgagee or trustee to recover the full amount of its claim against the borrower, mortgagor or owner.

All the other terms and conditions of the policy to which this Endorsement is attached and of which it is a part, remain unchanged, which other terms and conditions include the limit(s) of liability named in the policy and the conditions of any Value Reporting, Full Reporting, Total insurance, Coinsurance, Reduced Rate Contribution or Average Clauses incorporated therein or attached thereto.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

# Lender's Loss Payable

Named Insured.............. JW Aluminum Company

Policy Number. ................ See Participation Page          Endorsement No...D

Effective Date. ................. 12/31/2019

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

Loss, if any, under this policy shall be payable to:

**U.S. Bank National Association, as Collateral Agent for the secured parties**
**150 Fourth Avenue North**
**Nashville, TN 37219**

**U.S. Bank National Association, as additional insured and loss payee, in its capacity as trustee and collateral agent for the secured parties under the Indenture dated as of November 26, 2012.**

As lender, mortgagee, or trustee, as interest may appear;

It is understood that the lender, mortgagee or trustee now has or will acquire from time to time an insurable interest in certain property insured under this policy as established by warehouse receipts, bills of lading, documentary or other written evidence.

This insurance, solely as to the interest therein of the lender, mortgagee or trustee, shall not be impaired or invalidated by any act or neglect of the borrower, mortgagor or owner of the within described property except as provided in the last paragraph hereof, nor by any change in the title or ownership of the property, nor by the occupation of the premises wherein such property is located for purposes more hazardous than are permitted by this policy; provided that in case the borrower, mortgagor or owner shall neglect to pay any premium due under this policy the lender, mortgagee or trustee shall, on demand, pay the same.

Provided, also, that the lender, mortgagee or trustee shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said lender, mortgagee or trustee, and unless permitted by this policy, it shall be noted thereon and the lender, mortgagee or trustee shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the lender, mortgagee or trustee for thirty days after notice to the lender, mortgagee or trustee of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

Whenever this Company shall pay the lender, mortgagee or trustee any sum for loss or damage under this policy and shall claim that, as to the borrower, mortgagor or owner, no liability therefore existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may, at its option, pay the lender, mortgagee or trustee, the whole principal due or to grow due on the debt with interest, and shall thereupon receive a full assignment and transfer of the debt and of the mortgage and of all such other securities as evidence the interest of the lender, mortgagee or trustee in the within described property; but no subrogation shall impair the right of the lender, mortgagee or trustee to recover the full amount of its claim against the borrower, mortgagor or owner.

All the other terms and conditions of the policy to which this Endorsement is attached and of which it is a part, remain unchanged, which other terms and conditions include the limit(s) of liability named in the policy and the conditions of any Value Reporting, Full Reporting, Total insurance, Coinsurance, Reduced Rate Contribution or Average Clauses incorporated therein or attached thereto.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

# Lender's Loss Payable

Named Insured.............. JW Aluminum Company

Policy Number. ................ See Participation Page          Endorsement No...E

Effective Date. ................ 12/31/2019

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

Loss, if any, under this policy shall be payable to:

**Wilmington Trust, National Association, as collateral trustee, as its interest may appear**
**15950 N. Dallas Parkway, Suite 550**
**Dallas, TX  75248**
**Attention:  JW Aluminum Administrator**
**Fax No. (888) 316-6238**

**Wilmington Trust as Additional Insured.**

As lender, mortgagee, or trustee, as interest may appear;

It is understood that the lender, mortgagee or trustee now has or will acquire from time to time an insurable interest in certain property insured under this policy as established by warehouse receipts, bills of lading, documentary or other written evidence.

This insurance, solely as to the interest therein of the lender, mortgagee or trustee, shall not be impaired or invalidated by any act or neglect of the borrower, mortgagor or owner of the within described property except as provided in the last paragraph hereof, nor by any change in the title or ownership of the property, nor by the occupation of the premises wherein such property is located for purposes more hazardous than are permitted by this policy; provided that in case the borrower, mortgagor or owner shall neglect to pay any premium due under this policy the lender, mortgagee or trustee shall, on demand, pay the same.

Provided, also, that the lender, mortgagee or trustee shall notify this Company of any change of ownership or occupancy or substantial increase, as reasonably determined by the lender, of hazard which shall come to the knowledge of said lender, mortgagee or trustee, and unless permitted by this policy, it shall be noted thereon and the lender, mortgagee or trustee shall on demand, to the extent the borrower, mortgagor or owner shall have neglected to pay any such premium on demand from this Company, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the lender, mortgagee or trustee for thirty days after notice to the lender, mortgagee or trustee of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

Whenever this Company shall pay the lender, mortgagee or trustee any sum for loss or damage under this policy and shall claim that, as to the borrower, mortgagor or owner, no liability therefore existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may, at its option, pay the lender, mortgagee or trustee, the whole principal due or to grow due on the debt with interest, and shall thereupon receive a full assignment and transfer of the debt and of the mortgage and of all such other securities as evidence the interest of the lender, mortgagee or trustee in the within described property; but no subrogation shall impair the right of the lender, mortgagee or trustee to recover the full amount of its claim against the borrower, mortgagor or owner.

All the other terms and conditions of the policy to which this Endorsement is attached and of which it is a part, remain unchanged, which other terms and conditions include the limit(s) of liability named in the policy and the conditions of any Value Reporting, Full Reporting, Total insurance, Coinsurance, Reduced Rate Contribution or Average Clauses incorporated therein or attached thereto.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

# Named Insured

Named Insured.............. JW Aluminum Company

Policy Number. ................ See Participation Page                    Endorsement No...F

Effective Date. ................. 12/31/2019

## THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

The following are hereby added as Named Insured's to the Policy:

JW Aluminum Company
JW Aluminum Holding Corporation
JW Aluminum Continuous Cast Company
JWA Cast House, LLC

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

# Standard Mortgagee
## (This Endorsement Applies Only to Real Property)

Named Insured............... JW Aluminum Company

Policy Number. ................ See Participation Page          Endorsement No...G

Effective Date. ................ 12/31/2019

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

It is hereby understood and agreed that **Regions Bank, and its successors and assigns**, as agent whose address is **Attention: JW Aluminum Loan Administration, 1180 West Peachtree Street NW, Suite 1000, Atlanta, GA 30309** is mortgagee (or trustee) as their interest may appear.

Loss or damage, if any, under this Policy, shall be payable to the mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this Policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this Policy, the mortgagee (or trustee) shall, on demand, pay the same.

Further, the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or substantial increase, as reasonably determined by the mortgagee (or trustee), of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, to the extent the mortgagor or owner shall have neglected to pay any such premium on demand from this Company, pay the premium for such increased hazard for the term of the use thereof; otherwise this Policy shall be null and void.

This Company reserves the right to cancel this Policy at any time as provided by its terms, but in such case this Policy shall continue in force for the benefit only of the mortgagee (or trustee) for thirty (30) days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

Whenever this Company shall pay the mortgagee (or trustee) any sum for loss or damage under this Policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

# Standard Mortgagee
## (This Endorsement Applies Only to Real Property)

Named Insured............... JW Aluminum Company

Policy Number. ................ See Participation Page          Endorsement No...H

Effective Date. ................. 12/31/2019

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

It is hereby understood and agreed that **Wilmington Trust, National Association, as collateral trustee, as its interest may appear,** as agent whose address is **Attention: JW Aluminum Administrator, 15950 N. Dallas Parkway, Suite 550, Dallas, TX 75248** is mortgagee (or trustee) as their interest may appear.

Loss or damage, if any, under this Policy, shall be payable to the mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this Policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this Policy, the mortgagee (or trustee) shall, on demand, pay the same.

Further, the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or substantial increase, as reasonably determined by the mortgagee (or trustee), of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, to the extent the mortgagor or owner shall have neglected to pay any such premium on demand from this Company, pay the premium for such increased hazard for the term of the use thereof; otherwise this Policy shall be null and void.

This Company reserves the right to cancel this Policy at any time as provided by its terms, but in such case this Policy shall continue in force for the benefit only of the mortgagee (or trustee) for thirty (30) days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

Whenever this Company shall pay the mortgagee (or trustee) any sum for loss or damage under this Policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

# Terrorism Exclusion

## (FOR CERTIFIED ACTS OF TERRORISM UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED)

Named Insured................ JW Aluminum Company

Policy Number. ................ See Participation Page        Endorsement No...I

Effective Date. ................ 12/31/2019

## THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

This Policy excludes loss, damage, cost or expense, arising directly or indirectly as a result of a "certified act of terrorism" as defined by the Terrorism Risk Insurance Act of 2002, as amended ("the Act"), and any revisions or amendments thereto, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For purposes of this endorsement and in compliance with the Act, "certified act of terrorism" shall mean an act that is certified by the Secretary of the Treasury in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the Act. The criteria contained in that Act for a "certified act of terrorism" include the following:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

However, if an act of terrorism results in a fire and the direct physical loss or damage to property insured hereunder located in any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands and any territory or possession of the United States, that, either pursuant to the Standard Fire Policy or otherwise, prohibits exclusions for acts of terrorism that result in fire, this Company will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage to property insured hereunder and may be limited, in accordance with the Standard Fire Policy to the lesser of the actual cash value of the property at the time of the loss, or the amount which it would cost to repair or replace the property, without allowance for any increased cost of repair or replacement by reason of any ordinance or law, and without any compensation for business interruption, extra expense to continue business activities, or any other coverage for loss or damage other than direct physical loss or damage to the property insured hereunder.

With respect to fire resulting from any one or more acts of terrorism, this Company will not pay any amounts for which this Company is not responsible under the terms of the Act (including subsequent Congressional action pursuant to the Act) due to the application of Section 103 of the Act or any clause that results in a cap on our liability for payments for terrorism losses.

**THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, COVERAGE MAY BE REDUCED.**

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Form #61330 (1/15)

# Total Terrorism Exclusion

Named Insured.............. JW Aluminum Company

Policy Number. ............... See Participation Page          Endorsement No...J

Effective Date. ................. 12/31/2019

## THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

This Endorsement only applies in the United States of America and its Territories and Possessions.

Notwithstanding any provision to the contrary within this Policy or any endorsement thereto, it is agreed that this Policy excludes loss, damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from, or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement, an "act of terrorism" means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from, or in connection with any action taken in controlling, preventing, suppressing, or in any way relating to any act of terrorism.

However, if an act of terrorism results in a fire and the direct physical loss or damage to property insured hereunder located in any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands and any territory or possession of the United States, that, either pursuant to the Standard Fire Policy or otherwise, prohibits exclusions for acts of terrorism that result in fire, this Company will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage to property insured hereunder and may be limited, in accordance with the Standard Fire Policy to the lesser of the actual cash value of the property at the time of the loss, or the amount which it would cost to repair or replace the property, without allowance for any increased cost of repair or replacement by reason of any ordinance or law, and without any compensation for business interruption, extra expense to continue business activities, or any other coverage for loss or damage other than direct physical loss or damage to the property insured hereunder.

With respect to fire resulting from any one or more "certified acts of terrorism" as defined under the Federal Terrorism Risk Insurance Act of 2002, as amended ("the Act"), this Company will not pay any amounts for which this Company is not responsible under the terms of the Act (including subsequent Congressional action pursuant to the Act) due to the application of Section 103 of the Act or any clause that results in a cap on our liability for payments for terrorism losses.

**THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABIITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, COVERAGE MAY BE REDUCED.**

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Form #61331 (1/15)

# Trade or Economic Sanctions

Named Insured............. JW Aluminum Company

Policy Number. ............... See Participation Page          Endorsement No...K

Effective Date. ................ 12/31/2019

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

# Policy Change

Named Insured............... JW Aluminum Company

Policy Number. ................ See Participation Page          Endorsement No...L

Effective Date. ................. 12/31/2019

## THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

It is hereby understood and agreed this policy is amended as follows:

1. Business Interruption coverage shall only apply to those locations where Business Interruption values have been declared. Ordinary Payroll to be included if payroll has been included in updated Business Interruption values that have been reported.

2. Flood Zones A & V shall include Special Flood Hazard Areas A, A1-A30, AE, AH, AO AR, A99, AOVEL, V, V1-V30 and VE as defined by the Federal Emergency Management Agency.

3. Railroad Rolling Stock is covered only while located on the Insured's premises.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

# Signature Page

Named Insured............. JW Aluminum Company

Policy Number. ............... See Participation Page

Endorsement No...M

Effective Date. ................ 12/31/2019

**By signing and delivering the policy to you, we state that it is a valid contract.**

ACE AMERICAN INSURANCE COMPANY
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

Authorized Agent

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ARKANSAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

    **5.a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

      **b.** We will refund the pro rata unearned premium if the policy is:

        **(1)** Cancelled by us or at our request;

        **(2)** Cancelled but rewritten with us or in our company group;

        **(3)** Cancelled because you no longer have an insurable interest in the property or business operation that is the subject of this insurance; or

        **(4)** Cancelled after the first year of a prepaid policy that was written for a term of more than one year.

      **c.** If the policy is cancelled at the request of the first Named Insured, other than a cancellation described in **b.(2)**, **(3)** or **(4)** above, we will refund 90% of the pro rata unearned premium. However, the refund will be less than 90% of the pro rata unearned premium if the refund of such amount would reduce the premium retained by us to an amount less than the minimum premium for this policy.

      **d.** The cancellation will be effective even if we have not made or offered a refund.

      **e.** If the first Named Insured cancels the policy, we will retain no less than $100 of the premium, subject to the following:

        **(1)** We will retain no less than $250 of the premium for the Boiler And Machinery Coverage Part.

        **(2)** We will retain the premium developed for any annual policy period for the General Liability Classifications, if any, shown in the Declarations.

        **(3)** If the Commercial Auto Coverage Part covers only snowmobiles or golfmobiles, we will retain $100 or the premium shown in the Declarations, whichever is greater.

 © ISO Properties, Inc., 2001

(4) If the Commercial Auto Coverage Part covers an "auto" with a mounted amusement device, we will retain the premium shown in the Declarations for the amusement device and not less than $100 for the auto to which it is attached.

B. The following is added to the **Cancellation** Common Policy Condition:

7. **Cancellation Of Policies In Effect More Than 60 Days**

a. If this policy has been in effect more than 60 days or is a renewal policy, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

(3) The occurrence of a material change in the risk which substantially increases any hazard insured against after policy issuance;

(4) Violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or its occupancy which substantially increases any hazard insured against under the policy;

(5) Nonpayment of membership dues in those cases where our by-laws, agreements or other legal instruments require payment as a condition of the issuance and maintenance of the policy; or

(6) A material violation of a material provision of the policy.

b. Subject to Paragraph **7.c.**, if we cancel for:

(1) Nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy at least 10 days before the effective date of cancellation.

(2) Any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy at least 20 days before the effective date of cancellation.

c. The following applies to the Farm Umbrella Liability Policy, Commercial Liability Umbrella Coverage Part and the Commercial Automobile Coverage Part:

(1) If we cancel for nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 10 days before the effective date of cancellation;

(2) If we cancel for any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 20 days before the effective date of cancellation.

C. The following Condition is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail to the first Named Insured shown in the Declarations written notice of nonrenewal at least 60 days before:

a. Its expiration date; or

b. Its anniversary date, if it is a policy written for a term of more than one year and with no fixed expiration date.

However, we are not required to send this notice if nonrenewal is due to your failure to pay any premium required for renewal.

2. We will mail our notice to the first Named Insured's mailing address last known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

 © ISO Properties, Inc., 2001 ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MISSOURI CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99** the term Commercial Property Coverage Part in this endorsement also refers to the Standard Property Policy.

**B.** With respect to the:

Boiler And Machinery Coverage Part
Commercial General Liability Coverage Part
Commercial Property – Legal Liability Coverage Form **CP 00 40**
Commercial Property – Mortgage Holders Errors And Omissions Coverage Form **CP 00 70**
Crime and Fidelity Coverage Part
Employment-Related Practices Liability Coverage Part
Farm Liability Coverage Form
Liquor Liability Coverage Part
Pollution Liability Coverage Part
Products/Completed Operations Liability Coverage Part
Professional Liability Coverage Part;

the following Cancellation and Nonrenewal Provisions apply:

**1.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the actual reason for cancellation, at least:

  **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

  **b.** 30 days before the effective date of cancellation if cancellation is for one or more of the following reasons:

    **(1)** Fraud or material misrepresentation affecting this policy or a claim filed under this policy or a violation of any of the terms or conditions of this policy;

    **(2)** Changes in conditions after the effective date of this policy which have materially increased the risk assumed;

    **(3)** We become insolvent; or

    **(4)** We involuntarily lose reinsurance for this policy.

 © ISO Properties, Inc., 2001 ☐

c. 60 days before the effective date of cancellation if we cancel for any other reason.

**NONRENEWAL**

2. The following is added and supersedes any provision to the contrary:

   a. We may elect not to renew this policy by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the actual reason for nonrenewal, at least sixty days prior to the effective date of the nonrenewal.

   b. If notice is mailed, proof of mailing will be sufficient proof of notice.

C. With respect to the:

   Capital Assets Program (Output Policy) Coverage Part

   Commercial Property Coverage Part

   Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions Coverage Form

   Farm – Livestock Coverage Form

   Farm – Mobile Agricultural Machinery And Equipment Coverage Form;

   the **Cancellation** Common Policy Condition is replaced by the following:

   **CANCELLATION, NONRENEWAL AND DECREASES IN COVERAGE**

   1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel, nonrenew, reduce in amount or adversely modify this policy by mailing or delivering to the first Named Insured written notice of this action at least:

   a. 10 days before the effective date of this action if due to nonpayment of premium or evidence of incendiarism; or

   b. 30 days before the effective date of this action if for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of:

   a. Cancellation will state the effective date of cancellation. The policy period will end on that date.

   b. Any other action will state the effective date of that action.

5. If this policy is cancelled, not renewed, reduced in amount or adversely modified, we will send the first Named Insured any premium refund due. If we take this action, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. This action will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

  © ISO Properties, Inc., 2001  IL 02 74 07 02  ▫

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

 © ISO Properties, Inc., 2001

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
FARM COVERAGE PART

**A.** For insurance provided under the:

Boiler and Machinery Coverage Part
Capital Assets Program (Output Policy) Coverage Part
Commercial Inland Marine Coverage Part
Commercial Crime Coverage Part
Commercial Property Coverage Part

The **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY** Common Policy Condition is replaced by the following:

**F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

If you die, this Coverage Part will remain in effect as provided in **1.** or **2.** below, whichever is later:

**1.** For 180 days after your death regardless of the policy period shown in the Declarations, unless the insured property is sold prior to that date; or

**2.** Until the end of the policy period shown in the Declarations, unless the insured property is sold prior to that date.

Coverage during the period of time after your death is subject to all provisions of this policy including payment of any premium due for the policy period shown in the Declarations and any extension of that period.

**B.** For insurance provided under the:

Capital Assets Program (Output Policy) Coverage Part

Commercial Inland Marine Coverage Part
Commercial Property Coverage Part
Farm Coverage Part

The following is added to the **LOSS PAYMENT** Loss Condition and supersedes any provision to the contrary:

**NOTICE OF ACCEPTANCE OR DENIAL OF CLAIM**

**1.** Except as provided in **3.** below, we will give you notice, within 15 working days after we receive a properly executed proof of loss, that we:

**a.** Accept your claim;

**b.** Deny your claim; or

**c.** Need more time to determine whether your claim should be accepted or denied.

If we deny your claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

If we need more time to determine whether your claim should be accepted or denied, the written notice will state the reason why more time is required.

 © ISO Properties, Inc., 2001

2. If we have not completed our investigation, we will notify you again in writing, within 30 days after the date of the initial notice as provided in **1.c.** above, and thereafter every 45 days. The written notice will state why more time is needed to investigate your claim and when you may expect us to reach a decision on your claim.

3. The notice procedures in **1.** and **2.** above do not apply if we have a reasonable basis, supported by specific information, to suspect that an insured has fraudulently caused or contributed to the loss by arson or other illegal activity. Under such circumstances, we will notify you of the disposition of your claim within a period of time reasonable to allow full investigation of the claim, after we receive a properly executed proof of loss.

© ISO Properties, Inc., 2001

IL 01 72 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES —
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **Cancellation Of Policies In Effect For Less Than 60 Days**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **Cancellation Of Policies In Effect For 60 Days Or More**

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

 © ISO Properties, Inc., 2001

f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. **Nonrenewal**

   If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2. **Increase Of Premium**

   If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2001
IL 02 46 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH CAROLINA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. Paragraphs **2.** and **3.** of **Cancellation** Common Policy Condition are replaced by the following:

  **2.** We may cancel this policy by mailing or delivering to the first Named Insured and the agent, if any, written notice of cancellation at least:

    **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **3.** We will mail or deliver our notice to the first Named Insured's and agent's last known address.

B. The following is added to the **Cancellation** Common Policy Condition:

  **7. Cancellation Of Policies In Effect For 90 Days Or More**

    If this policy has been in effect for 90 days or more, or is a renewal or continuation of a policy we issued, we may cancel this policy only for one or more of the following reasons:

    **a.** Nonpayment of premium;

    **b.** Material misrepresentation of fact which, if known to us, would have caused us not to issue the policy;

    **c.** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the policy;

    **d.** Substantial breaches of contractual duties, conditions or warranties; or

    **e.** Loss of our reinsurance covering all or a significant portion of the particular policy insured, or where continuation of the policy would imperil our solvency or place us in violation of the insurance laws of South Carolina.

    Prior to cancellation for reasons permitted in this Item **e.**, we will notify the Commissioner, in writing, at least sixty days prior to such cancellation and the Commissioner will, within thirty days of such notification, approve or disapprove such action.

    Any notice of cancellation will state the precise reason for cancellation.

C. The following is added and supersedes any provisions to the contrary:

  **Nonrenewal**

  **1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, if any, at least 30 days before:

    **a.** The expiration date of this policy, if the policy is written for a term of one year or less; or

 © ISO Properties, Inc., 2001

b. An anniversary date of this policy, if the policy is written for a term of more than one year or for an indefinite term.

However, we will not refuse to renew a policy issued for a term of more than one year, until expiration of its full term, if anniversary renewal has been guaranteed by additional premium consideration.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's last known addresses. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. Any notice of nonrenewal will state the precise reason for nonrenewal.

 © ISO Properties, Inc., 2001 ☐



# STARR TECHNICAL RISKS AGENCY, INC.

## TO OUR BROKERS/AGENTS

## <u>IMPORTANT</u> <u>NOTICE</u> - TO BE KEPT WITH POLICY

## <u>WHAT TO DO WHEN A LOSS OCCURS</u>

1. Report as soon as practicable, every incident, loss or damage which may become a claim to:

> Mr. Jim Jezewski, Vice President and Claims Manager
> Starr Technical Risks Agency, Inc.
> Property Claims Department
> 399 Park Avenue, 9th Floor
> New York, NY 10016
> TEL:   (646) 227-6348
> FAX:   (631) 685-3061
> e-mail: <u>Jim.Jezewski@starrcompanies.com</u>

(AND)

| | |
|---|---|
| Mr. Michael C. LeDuc, VP | Mr. Derrick Bell, AVP |
| Starr Technical Risks Agency, Inc. | Starr Technical Risks Agency, Inc. |
| 3353 Peachtree Road, NE | 3353 Peachtree Road, NE |
| Suite 1000 | Suite 1000 |
| Atlanta, GA 30326 | Atlanta, GA 30326 |
| TEL:   (404) 260-1361 | TEL:   (404) 946-1438 |
| FAX:   (404) 946-1498 | FAX:   (404) 946-1498 |
| e-mail:  <u>Michael.LeDuc@starrcompanies.com</u> | e-mail:  <u>Derrick.Bell@starrcompanies.com</u> |

2. Starr Technical Risks Agency, Inc. claims **CANNOT** be processed through any other facility and must be reported as indicated above.

3. Adjusters can **ONLY** be assigned by Starr Technical Risks Agency, Inc. Property Claims Department.