IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA CHARLESTON DIVISION

| | |
|---|---|
| JW ALUMINUM COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>ACE AMERICAN INSURANCE COMPANY,<br>GENERAL SECURITY INDEMNITY<br>COMPANY OF ARIZONA<br><br>        Defendants. | Case No.: 2:21-cv-1034-BHH |

**DEFENDANTS' RULE 59 MOTION FOR A NEW TRIAL OR TO AMEND THE JUDGMENT REGARDING THE PREVENTION DOCTRINE AND AWARD OF REPLACEMENT COST VALUE**

Defendants ACE American Insurance Company and General Security Indemnity Company of Arizona (collectively, "Defendants") respectfully submit their motion for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure. Even viewing all evidence in the light most favorable to Plaintiff JW Aluminum Company ("JWA" or "Plaintiff"), the jury's verdict concerning the prevention doctrine was against the clear weight of the evidence, was based upon false evidence, and will result in a miscarriage of justice. The jury's verdict was also based on an improper legal standard. Thus, Defendants respectfully request a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. In the alternative, Defendants respectfully request that the Court amend the verdict pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to properly reflect the applicable legal standard.

I.     **LEGAL STANDARD**

Defendants move for a new trial or, a new trial *nisi remittitur*, pursuant to Rule 59. Where a court concludes that verdict is excessive, "it is court's duty to require remittitur or order new

1

trial, and failure to do so constitutes abuse of discretion." *See Cline v Wal-Mart Stores, Inc.*, 144 F3d 294 (4th Cir 1998) (citation omitted). A motion for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure may be granted on all or some of the issues, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). It is well-established in the Fourth Circuit that, pursuant to Rule 59, it is the duty of the Court to set aside the verdict and grant a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Sys. & Servs. Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir.1996) (quoting *Aetna Casualty & Sur. Co. v. Yeatts*, 122 F.2d 350, 352–53 (4th Cir. 1941), *overruled on other grounds by Gasperini v. Ctr. for Human., Inc.*, 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996)). Additionally, a new trial must be granted where an incorrect legal standard was applied. *See, e.g.*, *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 277 (4th Cir. 2021) (reversing the district court's denial of Rule 59 motion and remanding for a new trial consistent with correct legal standard); see also *Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1433 (4th Cir. 1985) (discussing motion for new trial in jury trial context, stating that "the district court had a duty to order a new trial 'if this action [was] required in order to prevent injustice'") (citation omitted). The decision to grant a new trial is "within the sound discretion of the trial court." *Id.* Here, the verdict is excessive and against the clear weight of the evidence introduced by Defendants. Additionally, the jury's verdict applied incorrect legal standards concerning the prevention doctrine, and a new trial or, a new trial *nisi remittitur*, is required in order to prevent injustice. Based on the foregoing, Defendants respectfully request that the Court set aside the verdict and grant a new trial or, a new trial *nisi remittitur*, pursuant to Rule 59.

In the alternative, should the Court not wish to grant a new trial, the verdict must be amended pursuant to Rule 59(e). The Fourth Circuit has recognized that Federal Rule of Civil Procedure 59(e) permits the district court to alter or amend a previous judgment for the following reasons: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). "[T]he rule permits a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.' " *Id*. (citation omitted). Based upon the evidence submitted at the trial in this case, there exists a clear error of law in the verdict and manifest injustice would result if these damages were sustained. Thus, should the Court not wish to grant a new trial, the verdict must be amended pursuant to Rule 59(e).

**II.    ARGUMENT**

A. The Court's Instructions and Verdict Form Misstated the Law Governing the Prevention Doctrine

The verdict applied an incorrect legal standard because the jury was not properly instructed to decide whether Defendants' alleged failure to pay actual cash value ("ACV") prevented or hindered Plaintiff from repairing or replacing the equipment within two years. *See, e.g.*, Final Closing Charge 14:1-16:3; ECF No. 273, Final Verdict Form p. 1-2 of 3. The jury was improperly instructed to determine whether the failure to pay replacement cost value ("RCV") prevented or hindered Plaintiff from repairing or replacing the equipment within two years. This flawed instruction was legally erroneous and fundamentally altered the jury's inquiry. Under controlling law, the relevant payment for prevention-doctrine analysis is ACV, not RCV. Courts addressing the prevention doctrine in this context are clear: the relevant question is whether the failure to pay ACV – the amount immediately owed pursuant to the Policy – prevented the insured from

commencing repairs. *See, e.g. D & S Realty, Inc. v. Markel Ins. Co.*, 816 N.W.2d 1, 12 (Neb. 2012) ("If the insured has contracted for replacement cost coverage, the insured will normally be entitled under the policy to an immediate payment representing the actual cash value of the loss, which can be used as seed money to start the repairs"). Indeed, ACV is the default measure of property damage prior to repairs being completed. *Id.* It is the alleged failure to pay ACV, not RCV, which potentially triggers the prevention doctrine. *See, e.g.*, *Utica Mut. Ins. Co. v. Cincinnati Ins. Co.*, 362 F.Supp.3d 265, 270 (E.D. Pa. 2019) ("[A]n insured would be able to recover replacement cost despite non-compliance with a replacement requirement where the insurer's denial of liability and failure to pay actual cash value prevents the insured from replacing the property"). No court across the country holds that an insurer must pay RCV up front and then later "claw back" the amount if the insured fails to repair. Yet the instructions here effectively embraced that legally incorrect theory. Indeed, Plaintiff's counsel argued to the jury that this completely incorrect legal standard should be applied:

> Mr. Brant testified about this. I asked him: Did the insurers' failure to pay the 32 million in property damage affect JWA's ability to operate its business. Yes. Answer. Our safety net was gone, and it prevented us from repairing and replacing the equipment.

*See* November 18, 2025 Trial Transcript 85:18-22. Thus, JWA's prevention argument was expressly premised on its inability to rebuild without the RCV payment of $32,274,670.50, even though Plaintiff was never entitled to the full payment of $32,274,670.50 up front under the plain meaning of the Policy. Though ACV is the only amount relevant to determining whether the failure to pay could have prevented replacement, the jury was not instructed to make an ACV finding. Defendants introduced expert evidence establishing that, depending on the selected analysis, the ACV of the Legacy Equipment was either zero, $6,053,105, or $17,380,170. *See* November 14,

4

2025 Trial Transcript 32:9-35:16. Since the jury was not instructed to decide what the ACV was, and whether the failure to pay this ACV prevented replacement, a new trial or, a new trial *nisi remittitur*, is required on this issue.

### B. The Verdict Form Omitted the Required Intent Element for Prevention

This verdict must also be set aside because the verdict form did not contain the intent element required to establish a violation of the prevention doctrine. Where a verdict form contains the incorrect legal standard and affects the outcome of the trial, it constitutes reversible error. *See, e.g.*, *Reynolds v. Green*, 184 F.3d 589, 595–96 (6th Cir. 1999) (finding reversible error where "the district court's decision not to amend the verdict form caused the jury to deliberate under the wrong legal standard and probably affected the outcome of the trial"). Under South Carolina law, a party invoking the doctrine must prove that the other party *intentionally* hindered the occurrence of the condition precedent; mere delay, inaction, or parallel conduct is insufficient. *The Huffines Co., LLC v. Lockhart*, 617 S.E.2d 125, 134 (S.C. App. 2005) ("*Champion* clearly implies that the prevention of the condition precedent must be intentional or entail wrongdoing"); *see also* November 18, 2025 Trial Transcript 31:21-24 (Court explaining in context of waiver argument that "the evidence presented is going to the question of whether the insurance companies['] delay in payment was made with the intent [] to prevent JWA from complying with the two-year provision"); 37:16-24 (Court concluding that the law of South Carolina is that the prevention doctrine requires intentionality). Thus, the prevention doctrine does not apply without a showing of purposeful interference or conduct undertaken with knowledge that Defendants would prevent the Two-Year Condition from being satisfied. As such, the verdict form should have contained the proper legal standard.

The inconsistency between the Court's jury instructions and the verdict form further exacerbated the risk of prejudice and confusion to the jury. Although the Court's instruction referenced that a party must have "intentionally" prevented the occurrence of a condition precedent to trigger the prevention doctrine, the verdict form failed to require the jury to make that finding. Jurors were thus instructed on one legal standard but asked to render their verdict under another. This disconnect invited the jury to disregard critical elements of the governing law. The fact that the applicable legal standard was not reflected in the verdict form likely caused the jury to deliberate without applying the correct legal standard. Without the correct instructions in the verdict form, the jury could have found for JWA without making the legally required finding of intent, rendering the verdict legally defective and requiring a new trial under Rule 59.

C. The Prevention Doctrine Does Not Apply to Sophisticated Insureds

The jury's verdict that Plaintiff was prevented from repairing the Legacy Equipment within two years (the "Two-Year Condition"), and thus entitled to replacement cost value, should be set aside because the jury was provided a legal standard that does not apply to this case. Courts throughout the country have refused to apply the prevention doctrine to sophisticated insureds. *See, e.g.*, *Dickler v. CIGNA Prop. and Cas. Co.,* 957 F.2d 1088 (3d Cir. 1992) (distinguishing plaintiff's argument that the requirement to repair its equipment within two years should be waived, and explaining that "the equities in *Zaitchick* were far different from the equities in our case: *Zaitchick* involved an elderly couple whose only home was destroyed by fire, whereas our case takes place in a commercial setting and involves relatively sophisticated parties"); *Devonshire Real Est. & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2014 WL 4796967, at *7 (N.D. Tex. Sept. 26, 2014) (concluding that application of the prevention doctrine was inappropriate where both parties were relatively sophisticated);

6

*Kahlig Auto Group v. Affiliated FM Ins. Co.*, No. 5:19-CV-1315-DAE, 2021 WL 5227093, at *8 (W.D. Tex. May 20, 2021) (stating that "courts are especially skeptical of such claims by 'relatively sophisticated' insured parties"). Plaintiff, by its own admission, is a sophisticated commercial entity. *See, e.g.*, ECF No. 131 p. 19 of 50. Because the doctrine does not apply to sophisticated insureds, the Court should not have instructed the jury on it at all. *See, e.g.* November 10, 2025 Trial Transcript 14:17-14:5 (counsel for Defendants explaining that the prevention doctrine is not typically applied to sophisticated parties); November 18, 2025 Trial Transcript 4:22-3 (counsel for Defendants noting his objection for the record that the prevention doctrine should not apply in this situation with sophisticated insureds). By charging the jury that it could excuse Plaintiff's noncompliance with the Two-Year Condition based on prevention, the Court improperly allowed the jury to consider a doctrine legally unavailable to JWA. This error improperly influenced the verdict, requiring a new trial under Rule 59.

D. <u>Even if Prevention Applied, JWA Cannot Receive Immediate Payment of RCV</u>

Finally, even if the Court were to allow the jury's prevention-doctrine finding to stand, JWA still cannot recover full RCV without actually repairing or replacing the property. Courts confronted with this precise issue consistently hold that while prevention may temporarily excuse procedural conditions, such as time restrictions, it does not permanently eliminate the insured's underlying contractual obligation to restore the property before receiving replacement-cost benefits. *See, e.g.*, *Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.*, 180 Cal. Rptr. 3d 683, 695 (Cal. App. 1st Dist. 2014), *as modified on denial of reh'g* (Dec. 17, 2014) (holding that, pursuant to the finding of prevention, the insured was entitled to a judgment requiring the insurer to pay ACV immediately and to pay replacement costs conditionally on the insured's completion of repairs promptly from the date of the judgment) (citations omitted). This approach prevents the

insured from obtaining an unwarranted windfall and enforces the Policy's fundamental structure, which ties RCV coverage to actual restoration of the damaged property. Courts applying this rule emphasize that sophisticated commercial insureds, in particular, cannot obtain full RCV without rebuilding, because awarding replacement cost without replacement improperly grants benefits never contracted for. *See, e.g., Dickler*, 957 F.2d at 1096 (warning that allowing a sophisticated commercial party to recover full RCV without rebuilding would create an inequitable windfall). Thus, even if the prevention doctrine finding stands, the verdict cannot support an award of unconditional replacement-cost benefits and should be amended pursuant to Rule 59(e) to show that Plaintiff is entitled to ACV now, and any RCV upon the completion of repairs and/or replacement of the damaged property.

   E.  <u>A New Trial is Further Warranted Because the Court's Clarification Order Improperly Prevented Defendants From Presenting Their Theory at Trial</u>

A new trial is further warranted because the Court's Clarification Order (ECF No. 216) effectively decided, as a matter of law on the eve of trial, a key coverage issue that the Fourth Circuit expressly left for the district court to address in the first instance. Although the Fourth Circuit held that the Molten Material Endorsement was ambiguous, it refused to grant summary judgment to Plaintiff as a matter of law. Clearly, the Fourth Circuit intended that Defendants would be permitted to introduce evidence to the jury that the damage caused by heat from molten material encompasses fire damage, hardened metal damage, water damage, other types of damage, or some combination thereof, and thus, recovery of those damages (and related business interruption) are limited to $10 million. ECF No. 193 at 9. The district court seemed to agree, and issued the following text order:

> In its opinion, the Fourth Circuit found that the molten material endorsement does not limit coverage and that the language of this

8

> endorsement is ambiguous. Accordingly, as a matter of law, this Court now construes this ambiguous endorsement in favor of JWA. The Court further holds that there is a question of fact regarding which property was damaged by heat from molten material; therefore, **this issue will be for the jury to decide at trial**. IT IS SO ORDERED.

*See* ECF No. 208 (the "Text Order") (emphasis added). Plaintiff then filed a motion for clarification concerning the Court's Text Order. Though the Court acknowledged that "the concluding sentence of the Fourth Circuit's opinion is indeed perplexing," it *sua sponte* vacated the Text Order, and held that the Endorsement "does not apply to limit JWA's claimed damages" as a matter of law. Thus, the Court foreclosed Defendants' ability to present a core trial theory that certain categories of damage (including fire, hardened metal, water, and resulting business interruption) fall within the $10 million sublimit. This ruling deprived Defendants of the opportunity to develop and argue their interpretation before the factfinder, substantially prejudiced Defendants and warrants a new trial under Rule 59.

## III.  CONCLUSION

For all of the foregoing reasons, the jury's verdict concerning the prevention doctrine cannot stand. Defendants therefore respectfully request that the Court:

1. Grant a new trial or, a new trial *nisi remittitur*, under Rule 59; or, in the alternative,

2. Alter or amend the judgment under Rule 59(e) to reflect the correct ACV-based framework and require actual repair or replacement before any RCV obligation arises; and,

3. Grant such other and further relief as the Court deems just and proper.

Dated: December 15, 2025

                                                                 **DUFFY & YOUNG, LLC**

                                        By:    s/ Brian C. Duffy
                                                  Brian C. Duffy

        J. Rutledge Young, Jr.
        DUFFY & YOUNG, LLC
        96 Broad Street
        Charleston, South Carolina 29401
        (843) 720-2044 (phone)
        (843) 720-2047 (fax)
        bduffy@duffyandyoung.com
        jry@duffyandyoung.com

*Attorneys for Defendants*
*ACE American Insurance Company*
*General Security Indemnity Company of Arizona*


**FORAN GLENNON PALANDECH PONZI & RUDLOFF PC**

By:   s/ *Charles J. Rocco*
      Charles J. Rocco
      Dawn Brehony
      Ashley Vicere
      40 Wall Street, 54th Floor
      New York, NY 10005
      (212) 257-7100
      crocco@fgppr.com
      dbrehony@fgppr.com
      avicere@fgppr.com